UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALFRED DEL RIO A/K/A ALFREDO DEL RIO and OLIVIA DEL RIO,<br><br>                    Plaintiff,<br><br>     v.<br><br><br>McCABE, WEISBERG & CONWAY, LLC; NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING; and THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT INC., ALTERNATIVE LOAN TRUST 2007-11T1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-11T1,<br><br>                    Defendants. | Case No. 1:19-CV-10312-VSB |

**SHELLPOINT'S AND BONYM'S
MEMORANDUM OF LAW SUPPORTING THEIR MOTION TO DISMISS AND TO
STRIKE CLASS ALLEGATIONS**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................... 1

II.  STATEMENT OF FACTS ..................................................................................... 2

III.  ARGUMENT SUPPORTING DISMISSAL ........................................................ 4

    A.  Section 1692e Claim Fails as a Matter of Law ............................................. 4

        1.  BoNYM Not a Debt Collector. ............................................................ 4

        2.  Subject Foreclosure is Security Enforcement Only. ........................... 5

        3.  Claim Fails on the Merits. ................................................................... 7

        4.  The Del Rios Failed to Comply with Conditions Precedent. ............ 13

    B.  Section 1692g Claim Fails as a Matter of Law ........................................... 13

    C.  GBL § 349 Claim Fails as a Matter of Law ................................................ 14

IV.  ARGUMENT SUPPORTING STRIKING CLASS ALLEGATIONS ........................ 16

    A.  Pled Class Lacks Standing .......................................................................... 17

    B.  Pled Class Exceeds GBL Limitations ......................................................... 18

    C.  Class Not Ascertainable on its Face ............................................................ 18

        1.  Vague Class Not Certifiable. ............................................................. 18

        2.  Shellpoint "Letter" Class Overbroad. ............................................... 20

    D.  Rule 23(b)(2) Class Necessarily Fails ........................................................ 21

V.  CONCLUSION .................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Almand v. Reynolds & Robin, P.C.*,
    485 F. Supp. 2d 1361 (M.D. Ga. 2007) ...........................................................................9, 13

*Anthony v. Fein, Such & Crane, LLC*,
    2015 WL 3419140 (N.D.N.Y. May 27, 2015) ...........................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................4

*Bank of N.Y. Mellon, etc. v. Henderson*,
    862 F.3d 29 (D.C. Cir. 2017) ...........................................................................5

*Bank of N.Y. Mellon v. Kantrow*,
    66 N.Y.S.3d 652 (N.Y. Sup. Ct. 2017) ...........................................................................12

*Bank of N.Y. Mellon v. Peterson*,
    442 P.3d 1006 (Col. 2018) ...........................................................................19

*Bartram v. U.S. Bank, NA*,
    211 So. 3d 1009 (Fla. 2016) ...........................................................................19

*Beattie v. DM Collections, Inc.*,
    754 F. Supp. 383 (D. Del. 1991) ...........................................................................9

*Beaulieu v. Bank of Am., N.A.*,
    2014 WL 4843809 (D. Me. Sept. 29, 2014) ...........................................................................16

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................4

*Boren v. U.S. Nat'l Bank Ass'n*,
    807 F.3d 99 (5th Cir. 2015) ...........................................................................19

*Brecher v. Republic of Argentina*,
    806 F.3d 22 (2d Cir. 2015) ...........................................................................18

*Bristol-Myers Squibb Co. Superior Ct. of California*,
    137 S. Ct. 1773, 1781 (2017) ...........................................................................19

*Calvo v. City of New York*,
    2017 WL 4231431 (S.D.N.Y. Sept. 21, 2017) ...........................................................................17

*Caplan v. Winslett*,
    218 A.D.2d 148 (N.Y. 1st Dep't 1996) ...........................................................................15, 16

*Carlin v. Davidson Fink LLP,*
    852 F.3d 207 (2d Cir. 2017)................................................................................14

*Charles v. Deutsche Bank Nat'l Trust Co.,*
    2016 WL 950968 (S.D. Fla. Mar. 14, 2016) ......................................................13

*Cohen v. Rosicki, Rosicki & Assocs.,*
    897 F.3d 75 (2d Cir. 2018)...........................................................................5, 6, 7

*Crawford v. Franklin Credit Mgmt. Corp.,*
    758 F.3d 473 (2d Cir. 2014)................................................................................14

*Daniel v. Mondelez Int'l, Inc.,*
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ...............................................................14

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006)................................................................................17

*Dhanasar v. JPMorgan Chase Bank, N.A.,*
    201 So. 3d 825 (Fla. 3d DCA 2016) ..................................................................19

*Drossin v. Nat'l Action Fin. Servs., Inc.,*
    255 F.R.D. 608 (S.D. Fla. 2009) ........................................................................20

*Eades v. Kennedy, PC Law Offices,*
    799 F.3d 161 (2d Cir. 2015)..................................................................................8

*Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole,*
    950 So. 2d 380 (Fla. 2007).................................................................................16

*EMC Mortg. Corp. v. Smith,*
    18 A.D.3d 602 (N.Y.A.D. 2d Dep't 2005) ........................................................10

*In re Failla,*
    838 F.3d 1170 (11th Cir. 2016) ..........................................................................12

*Fait v. Regions Fin. Corp.,*
    655 F.3d 105 (2d Cir. 2011)..................................................................................4

*Frechtman v. Gutterman,*
    115 A.D.3d 102, 979 N.Y.S.2d 58, (N.Y.A.D. 1st Dep't 2014) .....................15, 16

*Freedom Mortgage Corp. v. Engel,*
    APL-2019-00114, Orange County Clerk's Index. No. 001139/15 (NY) ................11

*Garrison v. Caliber Home Loans, Inc.,*
    233 F. Supp. 3d 1282 (M.D. Fla. 2017).........................................................9, 13

*Gesualdi v. Fazio*,
  2017 WL 8794775 (2017)...................................................................................................2

*Giles v. Phelan, Hallinan & Schmieg, L.L.P.*,
  901 F. Supp. 2d 509 (D.N.J. 2012) ...................................................................................16

*Gizzi v. Hall*,
  309 A.D.2d 1140 (N.Y.A.D. 3d Dep't 2003) .....................................................................20

*Gold v. Shapiro, Dicaro & Barak, LLC*,
  2019 WL 4752093 (20 E.D.N.Y. Sept. 30, 201919) ......................................................5, 10

*Goldberg v. Winston & Morrone, P.C.*,
  1997 WL 139526 (S.D.N.Y. March 26, 1997) ...................................................................21

*Goshen v. Mutual Life Ins. Co. of N.Y.*,
  98 N.Y.2d 314 (N.Y. 2002) ...............................................................................................18

*Grasso v. Mathew*,
  164 A.D.2d 476, 564 N.Y.S.2d 576 (N.Y.A.D. 3d Dep't 1991) .........................................15

*Hackett v. Midland Funding LLC*,
  2019 WL 1902750 (W.D.N.Y. Apr. 29, 2019) ....................................................................8

*Hanks v. Lincoln Life & Annuity Co. of N.Y.*,
  330 F.R.D. 374 (S.D.N.Y. 2019) .......................................................................................19

*Henson v. Santander Consumer USA Inc.*,
  137 S. Ct. 1718 (2017)........................................................................................................5

*Ho v. ReconTrust Company, NA*,
  858 F.3d 568, 573 (9th Cir. 2016) ......................................................................................6

*Int'l Publ'g Concepts, LLC v. Locatelli*,
  9 N.Y.S.3d 593 (Sup. Ct. 2015).........................................................................................15

*In re Initial Pub. Offering Sec. Litig.*,
  2008 WL 2050781 (S.D.N.Y. May 13, 2008) .....................................................................17

*Jaffe v. Capital One Bank*,
  2010 WL 691639 (S.D.N.Y. Mar. 1, 2010) ..................................................................16, 17

*Johnson v. Home State Bank*,
  501 U.S. 78 (1991)...............................................................................................................7

*Kaufman v. Sirius XM Radio, Inc.*,
  474 F. App'x 5 (2d Cir. 2012)............................................................................................18

*Kurzban v. Specialized Loan Servicing, LLC*,
2018 WL 1570370 (S.D.Fla. Mar. 30, 2018) ........................................................13

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
897 F.3d 88 (2d Cir. 2018)....................................................................................20

*Larsen v. JBC Legal Grp., P.C.*,
235 F.R.D. 191 (E.D.N.Y. 2006) ..........................................................................21

*Lena v. Cach, LLC*,
2015 WL 4692443 (N.D. Ill. Aug. 6, 2015) ...........................................................8

*Lubonty v. U.S. Bank, N.A.*,
2019 WL 6255790  (N.Y. Nov. 25, 2019) .......................................................10, 11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................................................17

*Mahmoud v. De Moss Owners Ass'n Inc.*,
865 F.3d 322 (5th Cir. 2017) ..................................................................................9

*Mayfield v. Asta Funding*,
95 F.Supp.3d 685 (S.D.N.Y. 2015) ......................................................................16

*Midland Funding, LLC v. Johnson*,
137 S. Ct. 1407 (2017)............................................................................................8

*Miljkovic v. Shafritz & Dinkin, P.A.*,
791 F.3d 12 (11th Cir. 2015) ..................................................................................8

*Miller v. Carrington Mortg. Servs., LLC*,
607 BR 1 (D.Me. 2019) ..........................................................................................5

*Obduskey v. McCarthy & Holthus LLP*,
139 S. Ct. 1029 (2019).............................................................................5, 6, 7, 18

*Paggen v. Bank of America, N.A.*,
781 F. App'x 779 (10th Cir. 2019)........................................................................19

*Pantoja v. Portfolio Recovery Assocs., LLC*,
852 F.3d 679 (7th Cir. 2017) ................................................................................10

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017)...................................................................................20

*Plaia v. Safonte*,
45 A.D.3d 747 (N.Y.A.D. 2d Dep't 2007) ............................................................10

*In re Pratt*,
    462 F.3d 14 (1st Cir. 2006) .................................................................12

*Rahman v. Smith & Wollensky Rest. Group, Inc.*,
    2008 WL 161230 (S.D.N.Y. Jan. 16, 2008) .........................................17

*Simmons v. Miller*,
    970 F. Supp. 661 (S.D. Ind. 1997) ...............................................9, 12

*Singh v. NYCTL 2009-A Trust*,
    683 F. App'x 76 (2d Cir. 2017) ...............................................14, 15

*Sparkman v. Zwicker & Assocs., P.C.*,
    374 F. Supp. 2d 293 (E.D.N.Y. 2005) ..................................................21

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ....................................................................17

*T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*,
    312 F.3d 90 (2d Cir. 2002) ..............................................................14

*Uche v. North Star Capital Acquisition, LLC*,
    2011 WL 978240 (D. Neb. Mar. 17, 2011) .......................................9, 13

*U.S. Bank Trust, NA, etc. v. Adhami*,
    2019 WL 486086 (E.D.N.Y. Feb. 6, 2019) ............................................11

*Vega v. Credit Bureau Enters.*,
    2005 WL 711657 (E.D.N.Y. Mar. 29, 2005) ..........................................21

*Wortman v. Rushmore Loan Mgmt. Servs. LLC*,
    2019 WL 5208893 (N.D. Ill. Oct. 16, 2019) .........................................13

**Statutes**

11 U.S.C. § 524 .........................................................................................7

15 U.S.C. § 1692 ...................................................................................1, 13

15 U.S.C. § 1692a ......................................................................................6

15 U.S.C. § 1692e ................................................................................4, 7, 13

15 U.S.C. § 1692g ..................................................................................13, 14

NY GBL § 349 ........................................................................................14, 16

NY RPAPL § 1301 ........................................................................................20

NY RPAPL § 1304 ........................................................................................................................3, 7

**Rules**

Fed R. Civ. P. 12 ...............................................................................................................1, 4, 16

Fed R. Civ. P. 23 .......................................................................................................1, 3, 4, 17, 21

# I.      <u>INTRODUCTION</u>

The Del Rios do not have an "ironclad" statute of limitations defense to the pending foreclosure that can sustain a Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (**FDCPA**) claim.  There are multiple bases supporting Shellpoint's alleged "threats" to foreclose and BoNYM's actual foreclosure action.[1]  Most prominently, through their publicly filed bankruptcy petition, the Del Rios informed movants of their intent to surrender the property to the creditor.  The Del Rios are estopped from defending BoNYM's foreclosure of the lien, which, because of the bankruptcy discharge, is security enforcement activity only rather than FDCPA-covered debt collection.

Any past acceleration also was revoked when the prior foreclosure was voluntarily discontinued <u>within</u> the statute of limitations.  The Del Rios' own pleadings confirm that, following the discontinuance, rather than requiring payment of the accelerated balance, the pre-suit letters told the Del Rios that to avoid foreclosure they needed to cure the default only.

As a matter of law there can be no FDCPA claim—or New York General Business Law (**GBL**) claim either—based on pursuing alleged time-barred claims when there is a genuine dispute as to whether the claim is actually time-barred. For these reasons and more discussed below, movants seek prejudicial dismissal.

In addition to failing to state a claim, the Del Rios' putative class is hopelessly vague, includes putative members with no standing, and is overbroad.  It should be stricken pursuant to rule 12(f) or, minimally, amended pursuant to rule 23(d)(1)(D).

---

[1] "Shellpoint" refers to defendant NewRez LLC D/B/A Shellpoint Mortgage Servicing, and "BoNYM" refers to defendant The Bank of New York Mellon F/K/A The Bank of New York, as Trustee for the Certificateholders of CWALT Inc., Alternative Loan Trust 2007-11T1, Mortgage Pass-Through Certificates, Series 2007-11T1.

## II.       STATEMENT OF FACTS[2]

The Del Rios executed a $536,000.00 mortgage loan in February 2007, which is secured by real property located in Bronx, New York.  (Doc. 1 (**Compl.**) ¶ 17.)  The mortgage loan consolidated two prior loans.  (*Id.*)  BoNYM is the note holder, and Shellpoint services the loan for BoNYM.  (*Id.* ¶¶ 32, 37.)

The Del Rios defaulted in their loan payments, and, on August 24, 2009, BoNYM instituted foreclosure proceedings.  (*Id.* ¶ 18.)  The filed and served complaint does not name the Del Rios and refers to the incorrect mortgage.  (*See* Smith Decl., Ex. A.)

BoNYM filed an amended complaint on October 23, 2009.  (Compl. ¶ 18.)  This complaint named the Del Rios and accelerated the amounts due under the subject note and mortgage.  (*See* Smith Decl., Ex. B.)

The Del Rios filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code on March 7, 2011.  (*See* Smith Decl., Ex. C.)  The Del Rios' statement of intention confirmed they would surrender the property to the creditor BAC Home Loans Servicing. (*Id.* at 39.)  The Del Rios received a discharge on June 14, 2011.  (*See* Smith Decl., Ex. D.)

BoNYM filed a stipulated discontinuance in the foreclosure on August 25, 2015.  (Compl. ¶ 19; *see also* Smith Decl., Ex. E.)  The court entered an order on the discontinuance on September 14, 2015.  (Compl. ¶ 19.)

BoNYM, through its counsel, McCabe, Weisberg & Conway, LLC (**McCabe**), filed a new foreclosure case on August 29, 2019.  (Compl. ¶¶ 21, 38; *see also* Smith Decl., Ex. F.)  The complaint does not contain a warning that the "debt" is "time-barred."  (Compl. ¶ 26; *see also*

---

[2] The facts as stated within the complaint are taken as true for purposes of this motion only except where contradicted by the publicly available documents movants have attached as EXHIBITS A-F to the Declaration of Jordan M. Smith (**Smith Decl.**). When ruling on a motion to dismiss, the court may consider them. *See, e.g., Gesualdi v. Fazio*, No. 16-cv-5209, 2017 WL 8794775, at *3 (E.D.N.Y. Dec. 12, 2017).

Smith Decl., Ex. F.)  Attached to the complaint was an additional notice from McCabe that the Del Rios were at risk of foreclosure.  (*Id.* ¶¶ 39-40; *see also* Smith Decl., Ex. F.)

Ahead of filing the 2019 foreclosure complaint, Shellpoint allegedly sent the Del Rios monthly mortgage statements, reflecting various amounts due.  (Compl. ¶¶ 29-30.)

On March 29, 2019, Shellpoint sent the Del Rios a letter titled "notice of default and intent to accelerate."  (*Id.* ¶ 31.)  This is the "breach letter."  The breach letter informed the Del Rios that "the total amount necessary to bring the Loan current [wa]s $288.321.24."  (*Id.* ¶ 33.)  The Del Rios were given 90 days to cure the default.  (*Id.* ¶ 34.)  The Del Rios were warned that a failure to cure the default could lead to acceleration and foreclosure of the lien.  (*Id.*)

Also on March 29, 2019, Shellpoint sent the Del Rios a letter pursuant to New York State law RPAPL § 1304.  (*Id.* ¶¶ 35-36.)  This letter is the "90 day pre-foreclosure notice."  The letter stated the default amount and warned the Del Rios that "[u]nder New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home."  (*Id.* ¶ 36.)

On October 21, 2019, the Del Rios served an answer and counterclaim in the foreclosure, seeking "an order cancelling and discharging the mortgage as time-barred."  (*Id.* ¶ 27.)

On November 6, 2019, the Del Rios also filed the instant case against McCabe, Shellpoint, and BoNYM.  (*See generally id.*)  They generally claim that defendants violated FDCPA and GBL by threatening them with foreclosure and actually instituting a foreclosure when—they claim— any foreclosure action was barred by the statute of limitations.  (*Id.* ¶ 56.)  The Del Rios cannot state a claim on these facts, and movants request prejudicial dismissal.

The Del Rios also seek to certify the following class under rule 23(b)(2) and 23(b)(3): "all persons who were potentially subjected to letters from Shellpoint and time-barred foreclosure actions from Bank of New York and McCabe."  (Compl. ¶ 41.)  This putative class is hopelessly

vague, unascertainable, and cannot satisfy the requirements of rules 23(b)(2) or 23(b)(3).  If the case survives dismissal, the putative class claim should be stricken as uncertifiable on its face, or, minimally, the Del Rios should be required to amend to more clearly state the New York-based statute of limitations class they seek to represent.

## III.   ARGUMENT SUPPORTING DISMISSAL

To survive a rule 12(b)(6) dismissal motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Mere "labels and conclusions or formulaic recitations of the elements of a cause of action" are insufficient.  *Id*. (quoting *Twombly*, 550 U.S. at 555).  And where the complaint permits the Court to infer only a possible—but not a plausible—claim for relief, it fails to meet the minimum standard.  *Id*. at 679.

In assessing a rule 12(b)(6) motion, courts must take as true the allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See Fait v. Regions Fin. Corp.*, 655 F.3d 105, 109 (2d Cir. 2011).  Legal conclusions (even those "couched as [ ] factual allegation[s]"), however, do not merit this regard.  *Iqbal*, 556 U.S. at 678.

## A.   Section 1692e Claim Fails as a Matter of Law

The Del Rios claim movants violated FDCPA §§ 1692e and 1692e(2)(A) "by using false and deceptive representation in connection with the collection of the debt" and "by misrepresenting the character, amount, or legal status of the asserted debt."  (Compl. ¶ 55.)  It appears the claims against Shellpoint relate to the March 29 letters only.  (*Id.* ¶ 57.)  And the claims against BoNYM are based on filing the 2019 foreclosure action only.  (*Id.* ¶¶ 58, 60.)

### 1.   BoNYM Not a Debt Collector.

The Del Rios confusingly plead both that Shellpoint controls BoNYM's collection activities and BoNYM controls Shellpoint's collection activities such that Shellpoint and BoNYM

are principals and agents for each other.  (Compl. ¶¶ 15-16.)  More accurately, the Del Rios later clarify Shellpoint is the loan servicer for BoNYM as creditor.  (*Id.* ¶¶ 32, 37.)  This is consistent with the 2019 foreclosure complaint.  (*See* Smith Decl., Ex. F at 6.)

A creditor collecting for itself—even when that account is (allegedly) acquired when the account was in default—is not a debt collector subject to FDCPA.  *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721-22 (2017) (creditors may collect own accounts without triggering FDCPA); *Bank of N.Y. Mellon, etc. v. Henderson*, 862 F.3d 29, 34 (D.C. Cir. 2017) (BoNYM not a debt collector).

While the Del Rios conclude BoNYM's principal purpose is debt collection (Compl. ¶ 9), such conclusory pleading is insufficient to allege BoNYM is a debt collector.  *See Gold v. Shapiro, Dicaro & Barak, LLC*, No. 18-cv-6787, 2019 WL 4752093, at *5 (E.D.N.Y. Sept. 30, 2019).  BoNYM should be dismissed.[3]

### 2.     Subject Foreclosure is Security Enforcement Only.

Even if the Del Rios adequately alleged BoNYM was a "debt collector," the only alleged debt collection activity basing their claim against BoNYM is the foreclosure filing (Compl. ¶¶ 58, 60), which is excepted as a matter of law as security enforcement activity only.

Whether foreclosing in New York when a deficiency judgment is not "permitted" can be actionable debt collection under the FDCPA has not been expressly decided by the Second Circuit.  But, based on prior precedent, *Cohen v. Rosicki, Rosicki & Associates*, 897 F.3d 75 (2d Cir. 2018), as well as the Supreme Court's *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038

---

[3] It does not appear the Del Rios are seeking to hold Shellpoint liable for the foreclosure filing.  Even if construed as such, BoNYM—not Shellpoint—is the foreclosure plaintiff, and Shellpoint cannot be liable for an FDCPA claim allegedly arising out of the complaint filing.  *See Gold*, 2019 WL 4752093, at *7 & n.11; *see also Miller v. Carrington Mortg. Servs., LLC*, 607 BR 1, 12 (D.Me. 2019) (same).

(2019), opinion, movants submit the Court would hold BoNYM's foreclosure is security enforcement activity only.

In *Cohen*, the Second Circuit held "a foreclosure action is an 'attempt to collect a debt' as defined by the FDCPA" because the purpose of the foreclosure was to "obtain payment of the underlying mortgage note." *Cohen*, 897 F.3d at 82-83. The Court grounded this finding, in part, on the mortgagee's right to obtain a deficiency judgment in the foreclosure action. *Id.* The Court even distinguished its holding from the Ninth Circuit's *Ho v. ReconTrust Company, NA*, 858 F.3d 568, 573 (9th Cir. 2016), opinion, which held the non-judicial foreclosure in that case was not debt collection, because New York's judicial foreclosure scheme "permits" deficiency judgments while the non-judicial foreclosure scheme in *Ho* did not. *Id.* at 82 n.7.

After *Cohen* was decided, the United States Supreme Court analyzed the § 1692a(6) definition of debt collector, holding non-judicial foreclosure activity is security enforcement only and excepted from FDCPA liability.[4] *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038 (2019). In reaching this conclusion, the Court first found foreclosing—whether judicial or nonjudicial—is at least indirect debt collection subject to the general definition of "debt collector" and to FDCPA. *Id.* at 1036. Nevertheless, because Congress expressly chose to exclude "security enforcement activity" from the general definition, *id.* at 1036-37, entities engaged in security enforcement activity only—such as a non-judicial foreclosure—are not debt collectors subject to FDCPA. *Id.* The Court also held "antecedent steps required" by state law to enforce the security instrument—which in *Obduskey* included notice and an opportunity for the borrower to cure the non-payment default—are part of security enforcement and not debt collection as well. *Id.* at 1039. The Court left open the question of whether judicial foreclosures are debt collection, indicating

---

[4] Except as to §1692f(6), which is not at issue here.

through a parenthetical that the ability to get a deficiency judgment is a "potentially relevant distinction" between judicial and non-judicial foreclosures. *Id.*

The bottom line is that in both *Cohen* and *Obduskey*, the ability to obtain a deficiency judgment—not the fact that security enforcement is achieved through a court system or not—was material to whether a mortgagee was engaged in security enforcement activity only and excepted from the FDCPA's reach.

Because of the bankruptcy discharge, BoNYM cannot seek—and did not seek (*see* Smith Decl., Ex. F)—a deficiency judgment. *See* 11 U.S.C. § 524(a)(2) (A discharge is "an injunction" prohibiting a creditor from taking any act "to collect, recover or offset any [discharged] debt as a personal liability of the debtor."). As explained in the discharge order, BoNYM only has "the right to enforce a valid lien, such as a mortgage or security interest against the debtor's property." (*See* Smith Decl., Ex. D); *see also Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) ("[T]he mortgage survives or passes through the bankruptcy."). So, while BoNYM must file a lawsuit to enforce its security instrument—as did the mortgagee in *Obduskey*, *see* 139 S.Ct. at 1034—the process is security enforcement activity only. In other words, in light of the discharge injunction, the subject foreclosure is more analogous to the non-judicial foreclosure at issue in *Obduskey* than the typical judicial foreclosure at issue in *Cohen*.

Because BoNYM's foreclosure is not debt collection, the preliminary steps required to institute that proceeding are also not debt collection. *See Obduskey*, 139 S.Ct. at 1039. This means both the breach letter, required by mortgage ¶ 22, and the New York 90 day pre-foreclosure notice, required by NY RPAPL § 1304, are not debt collection either.

### 3. Claim Fails on the Merits.

Though not well pled, it appears the basic premise of the Del Rios' complaint is that defendants violated FDCPA § 1692e by threatening to and initiating a foreclosure allegedly outside

New York's foreclosure statute of limitations.  (Compl. ¶ 56.)  This claim fails as a matter of law because:  **(1)** there is no law or binding appellate precedent holding the foreclosure is time barred; and **(2)** the Del Rios are barred from raising a statute of limitations affirmative defense (or any defense for that matter) due to their prior bankruptcy surrender.

<strong><em>a.    The Statute of Limitations Has Not Run.</em></strong>

"An . . . objective of the FDCPA is the preservation of creditors' judicial remedies.  If judicial proceedings are to accurately resolve disputes, including debt collection disputes, debt-collector attorneys must be permitted to present legal arguments in the clients' favor and to invoke the remedies available to them."  *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1307 (11th Cir. 2015) (quotations and citations omitted).  Accordingly, "[t]o state an FDCPA claim against a debt collector for filing a collection case, a plaintiff must plausibly allege that the debt collector filed its collection case without 'a good faith belief in its validity.'"  *Hackett v. Midland Funding LLC*, No. 18-cv-6421, 2019 WL 1902750, at *3 (W.D.N.Y. Apr. 29, 2019) (citing *Lena v. Cach, LLC*, No. 14-cv-01805, 2015 WL 4692443, at *3 (N.D. Ill. Aug. 6, 2015); *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 172 (2d Cir. 2015) (plaintiffs failed to state a FDCPA claim where there was no allegation the lawsuit was without a good faith basis).

Building upon the lack of a good faith belief, "[e]very court to have considered the question has held that a debt collector that <u>knowingly</u> files suit in court to collect a time-barred debt violates the FDCPA."  *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1417 (2017) (Sotomayor, J., dissenting) (emphasis added); *see also id.* at 1413 (noting non-binding precedent finding a FDCPA violation was limited to a debt collector's assertion of a "known" stale claim within a civil suit);[5]

---

[5] Whether a debt collector violates FDPCA by instituting a legal action on known time-barred debt is not a settled point of statutory construction by the Second Circuit or United States Supreme Court.  For purposes of this motion only, however, movants will assume the Second Circuit would agree with the majority precedent as stated by both Justices Breyer and Sotomayor in *Midland Funding*, *supra*.

*Beattie v. DM Collections, Inc.*, 754 F. Supp. 383, 393 (D. Del. 1991) (merely because a consumer may have an available defense is insufficient to state a FDCPA violation; instead, only "the threatening of a lawsuit which the debt collector <u>knows or should know</u> is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate") (emphasis added).  This extends to threatened litigation also.  *See Beattie*, 754 F. Supp. at 393; *Anthony v. Fein, Such & Crane, LLC*, No. 5:15-cv-452, 2015 WL 3419140, at *4 (N.D.N.Y. May 27, 2015) ("Threatening to, and the filing of, a lawsuit which a debt collector <u>knows or should have known</u> is time-barred have been found to be actionable under the FDCPA.") (emphasis added).

But, when the debt collector has a good faith argument that its debt is not time barred—for example when the law is unsettled—a FDCPA claim cannot stand.  *See Simmons v. Miller*, 970 F. Supp. 661, 664 (S.D. Ind. 1997) (with no definitive ruling from Indiana's highest court, defendants did not "knowingly" file a time-barred suit in violation of FDCPA); *Uche v. North Star Capital Acquisition, LLC*, No. 4:09-cv-3123, 2011 WL 978240, at *2 (D. Neb. Mar. 17, 2011) (no FDCPA claim because law was unsettled on the appropriate statute of limitations); *Almand v. Reynolds & Robin, P.C.*, 485 F. Supp. 2d 1361, 1364 (M.D. Ga. 2007) (no FDCPA violation where there was uncertainty on which statute of limitation applied); *cf. Mahmoud v. De Moss Owners Ass'n Inc.*, 865 F.3d 322, 334 & 332 n.2 (5th Cir. 2017) (no potential FDCPA liability for threatening foreclosure on at best a partially time barred debt, in part, because it was disputed whether the debt was time-barred); *Garrison v. Caliber Home Loans, Inc.*, 233 F. Supp. 3d 1282, 1294 (M.D. Fla. 2017) (having a potential statute of limitations affirmative defense did not provide a "plausible

basis" for FDCPA claims).[6]  In other words, for liability to stand, the consumer must have an "ironclad" statute of limitations defense.  *See, e.g., Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017).

As an initial matter, while the Del Rios generally allege defendants were barred from foreclosing 6 years after the 2009 foreclosure was filed (Compl. ¶ 23), other than a single incorporated sentence that Shellpoint allegedly knew the mortgage was uncollectable (*id.*), the Del Rios do not adequately allege BoNYM "knew" that foreclosing the mortgage was time barred.

But even if knowledge was adequately pled, the Del Rios oversimplify the issue, ignoring New York law and the publicly available records show as a matter of law a good faith basis for Shellpoint threatening to and for BoNYM to actually file a foreclosure against the Del Rios.

The statute of limitations for mortgage foreclosures in New York is 6 years, running from the date the mortgage debt was accelerated.  *Plaia v. Safonte*, 45 A.D.3d 747, 748 (N.Y.A.D. 2d Dep't 2007).  Acceleration must be unequivocal and is typically accomplished through a foreclosure filing expressly declaring the loan is accelerated.  *See EMC Mortg. Corp. v. Smith*, 18 A.D.3d 602, 603 (N.Y.A.D. 2d Dep't 2005).  Acceleration, however, can be revoked before the statute of limitations runs, and certain actions—like a bankruptcy proceeding—can toll the statute of limitations.  *Lubonty v. U.S. Bank, N.A.*, 2019 NY Slip Op. 08520, 2019 WL 6255790 (N.Y. Nov. 25, 2019).

---

[6] In *Gold*, the court recognized that "courts in this Circuit have generally found that filing a civil action knowing that it was time barred is a violation of the FDCPA."  2019 WL 4752093, at *7 (emphasis added). But, in a footnote, the *Gold* court appears to conclude this is a product of FDCPA's statutory bona fide error defense.  *Id.* at *7 n.11.  That is incorrect. Instead, case law supports that as a part of *plaintiff's* burden, the consumer must establish an "ironclad" statute of limitations defense.  Only *if* a plaintiff first meets this burden, does the burden switch to a defendant to establish a bona fide error defense if available.

The Del Rios allege the loan was accelerated by the filing of the prior foreclosure complaint on August 24, 2009. (Compl. ¶ 18.)  If true, absent any other facts,[7] the statute of limitations would have run August 24, 2015.

But incontrovertible record facts, *i.e.*, the Del Rios' intervening bankruptcy, make it clear the statute of limitations had not run before the parties stipulated to the discontinuance of the foreclosure and affirmatively decelerated the mortgage.  (*See* Smith Decl., Ex. C.)  In particular, after the loan was allegedly accelerated, the Del Rios filed a bankruptcy, which was pending for 3 months.  (*See* Exs. C-D.)  The 3 month bankruptcy stay acted to toll the foreclosure statute of limitations at least until November 2015.  *See Lubonty*, 2019 WL 6255790.  And, before November 2015, BoNYM filed a stipulated discontinuance, which at least creates an issue of fact as to whether acceleration was timely revoked.  *See, e.g.*, *U.S. Bank Trust, NA, etc. v. Adhami*, 18-cv-530, 2019 WL 486086, at *5-6 (E.D.N.Y. Feb. 6, 2019) (prior voluntary discontinuance created issue of fact as to whether acceleration was revoked).

The Del Rios' own pleading supports that the discontinuance decelerated the loan because after the discontinuance, movants did not seek the accelerated balance.  Instead, consistent with deceleration, only the amount to cure the default was identified in future correspondence.  (Compl. ¶¶ 31-36.)  While the issue of deceleration through a voluntary discontinuance is now before the New York Court of Appeals, *see Freedom Mortgage Corp. v. Engel,* APL-2019-00114, Orange County Clerk's Index. No. 001139/15 (NY), there is currently no binding authority from the Legislature or the New York Court of Appeals in the Del Rios favor.  There is a good faith

---

[7] Among other things, BoNYM disputes the loan was accelerated when the initial foreclosure complaint was filed.  As the publicly available foreclosure pleadings confirm, the initial complaint named the wrong borrowers and purported to accelerate that mortgage (rather than the Del Rios' mortgage), which was not corrected until the supplemental complaint.  (*See* Exs. A & B.)  The statute of limitations did not begin to run—at the earliest—until October 2009.

argument the statute of limitations has not run in this case.  BoNYM is entitled pursue a foreclosure and have these issues determined by a court without being subject to FDCPA (or GBL) liability in the event it does not ultimately prevail.

      **b.**      ***The Del Rios Are Barred From Defending the Foreclosure.***

Not only does BoNYM have a good faith argument the 2019 foreclosure is not time barred, but, by stating their intention to surrender the property to the creditor in their bankruptcy, the Del Rios also expressly agreed BoNYM may foreclose the lien and take possession of the property.

A borrower's bankruptcy surrender "requires that debtors relinquish their right to possess the property" such that "debtors who surrender their property can no longer contest a foreclosure action."  *In re Failla*, 838 F.3d 1170, 1177 (11th Cir. 2016).  The Del Rios are estopped from contesting the foreclosure altogether.  *See id.* (debtor who surrenders property in bankruptcy may not oppose subsequent foreclosure); *In re Pratt*, 462 F.3d 14, 18-19 (1st Cir. 2006) ("The most sensible connotation of 'surrender' in the Chapter 7 context is that the debtor agreed to make the collateral available to the secured creditor"); *Bank of New York Mellon v. Kantrow*, 57 Misc. 3d 1204(A), 66 N.Y.S.3d 652 (N.Y. Sup. Ct. 2017) ("Because defendants secured the bankruptcy Plan by adopting one position [(surrendering the property)] and now take a contrary position by contesting the action and moving for dismissal, the doctrine of estoppel against inconsistent positions bars defendants from raising any issue with regards to the secured lien and from contesting the foreclosure action.").  Because the Del Rios represented they were surrendering the property to the creditor and received a bankruptcy discharge based on that representation, BoNYM rightly filed the foreclosure, which the Del Rios are estopped from defending.

Because the Del Rios cannot establish as a matter of law that the 2019 foreclosure is barred by the statute of limitations, there can be no FDCPA claim.  *See Simmons*, 970 F. Supp. at 664;

*Uche*, 2011 WL 978240, at *2; *Almond*, 485 F. Supp. 2d at 1364.  Instead, the Del Rios should raise this defense within the foreclosure for the state court judge to decide.  *See Garrison*, 233 F. Supp. 3d at 1294 (given changes to Florida's foreclosure statute of limitations law, a potential statute of limitations affirmative defense did not provide a "plausible basis" for FDCPA claims).

       **4.**       **The Del Rios Failed to Comply with Conditions Precedent.**

Mortgage paragraph 20 provides the borrower may not commence an action "that arises from the other party's actions pursuant to this Security Instrument" without first notifying the lender and providing a "reasonable time period to take corrective action."  (Smith Decl., Ex. F at 80-81.)  This provision has been extended to FDCPA claims where the claims arise from a lender's or servicer's actions performed pursuant to the mortgage.  *See Wortman v. Rushmore Loan Mgmt. Servs. LLC*, No. 19-cv-2860, 2019 WL 5208893, at *3 (N.D. Ill. Oct. 16, 2019);  *Charles v. Deutsche Bank Nat'l Trust Co.*, No. 15-cv-21826, 2016 WL 950968, at *3 (S.D. Fla. Mar. 14, 2016) (dismissing statutory claims, including FDCPA, for lack of pre-suit notice); *see also Kurzban v. Specialized Loan Servicing, LLC*, No. 17-cv-20713, 2018 WL 1570370 (S.D.Fla. Mar. 30, 2018) (dismissing RESPA and FDCPA claims for failing to give pre-suit notice).  To the extent the § 1692e claims are premised on the breach letter and/or foreclosure action—both of which arise out of actions taken pursuant to the mortgage—the claims should be dismissed for failure to provide notice under mortgage paragraph 20.

**B.**      **<u>Section 1692g Claim Fails as a Matter of Law</u>**

The Del Rios vaguely complain Shellpoint failed to include certain § 1692g notices within its "notices, statements, and letters."  (Compl. ¶ 62.)  But § 1692g notices are only required within 5 days of the "initial communication."  15 U.S.C. § 1692(a).  A § 1692g(a) claim requires "three determinations: **(1)** whether any of the communications between the parties were 'initial communications' within the meaning of § 1692g, **(2)** whether any of the communications between

the parties were 'in connection with the collection of any debt,' and **(3)** whether [the debt collector] provided the [§ 1692g disclosures] within five days of such a communication." *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017).  The Del Rios do not plead what they consider to be the "initial communication" or when it was received.  This count should be dismissed.

## C.   <u>GBL § 349 Claim Fails as a Matter of Law</u>

The Del Rios claim defendants' threats to foreclose and foreclosure filing were deceptive because the foreclosure was barred by the statute of limitations.  (Compl. ¶¶ 72-77.)

To state a GBL claim, a plaintiff must show:   **(1)** the challenged act or practice was consumer-oriented; **(2)** the act was misleading in a material way; and **(3)** plaintiff suffered an injury as a result of the deceptive act.  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014).  In reviewing whether the act was deceptive or misleading, § 349 requires a finding "that a reasonable consumer in like circumstances would consider the misrepresentation <u>material</u>." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 189-90 (E.D.N.Y. 2018).

For the reasons explained in Part A.3., *supra*, the "challenged acts," *i.e.*, the breach notice, New York 90-day notice, and foreclosure filing, were not misleading or deceptive because movants have a good faith basis to argue the statute of limitations did not run and/or that the Del Rios themselves are estopped from contesting foreclosure due to their bankruptcy surrender.

The GBL claim is also barred by the *Noerr-Pennington* doctrine, which "generally immunizes from liability a party's commencement of a prior court proceeding." *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002).  While traditionally arising in the antitrust context, the doctrine has been applied to bar GBL claims based on a defendant's demand and default letter arising from a good faith foreclosure suit.  *See Singh v. NYCTL 2009-A Trust*,

683 F. App'x 76, 77-78 (2d Cir. 2017) (summary order).  It should be similarly applied here to bar the Del Rios' GBL claim.

While there is an exception for "sham" activities, *i.e.*, where the litigation is "objectively baseless," *Singh*, 683 F. App'x at 78, that exception is not applicable here because there is a good faith basis to seek to foreclose.  *See* Part A(3), *supra*.

In addition to the *Noerr-Pennington* doctrine, the alleged improper acts also enjoy absolute litigation privilege.  "In the context of a legal proceeding, statements made by parties and their attorneys in the context of litigation are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation." *Grasso v. Mathew*, 164 A.D.2d 476, 479, 564 N.Y.S.2d 576, 578 (N.Y.A.D. 3d Dep't 1991); *see also Frechtman v. Gutterman*, 115 A.D.3d 102, 106, 979 N.Y.S.2d 58, 63 (N.Y.A.D. 1st Dep't 2014).  The privilege applies to statements made in "pending or contemplated litigation," *Caplan v. Winslett*, 218 A.D.2d 148, 153 (N.Y.A.D. 1st Dep't 1996), and "extend[s] to all pertinent communications among the parties, counsel, witnesses, and the court." *Frechtman*, 115 A.D.3d at 107.

New York courts prescribe a "fairly broad and encompassing standard for determining whether absolute privilege exists." *Int'l Publ'g Concepts, LLC v. Locatelli*, 9 N.Y.S.3d 593 (Sup. Ct. 2015).  It applies equally "[w]hether a statement was made in or out of court, was on or off the record, or was made orally or in writing." *Id.* at 107.  "As long as the subject of an out-of-court communication relates to pending or contemplated litigation, and is made in connection with a judicial proceeding . . . it furthers an interest of social importance and should be protected." *Caplan*, 218 A.D.2d at 153 (internal citations omitted).

The policy behind the litigation privilege—allowing attorneys to vigorously represent their clients without the threat of civil liability for statements made in a judicial proceeding—is not

unique to defamation or tort claims.  Other courts agree and apply the privilege to bar statutory claims, including claims under state consumer protection statutes.  *See e.g.*, *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 524 (D.N.J. 2012) (applying litigation privilege to bar plaintiff's claims for violation of New Jersey Consumer Fraud Act); *Beaulieu v. Bank of Am., N.A.*, No. 1:14-cv-00023, 2014 WL 4843809, at *9 (D. Me. Sept. 29, 2014) ("Maine recognizes an absolute common law privilege to attorneys and witnesses for relevant communications and testimony made preliminary to and during the course of litigation."); *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) ("We hold that the litigation privilege applies in all causes of action, whether for common-law torts or statutory violations.").

The litigation privilege precludes the Del Rios from basing their § 349 claims on any allegations made in the prior foreclosure complaint, which plainly is made in a court pleading and relevant to the lawsuit.  The privilege extends to the breach letter and the 90 day pre-foreclosure notice too because those letters were required pre-foreclosure steps and pertinent to the foreclosure.  *See Caplan v*, 218 A.D.2d at 153; *Frechtman*, 115 A.D.3d at 107.

## IV.   ARGUMENT SUPPORTING STRIKING CLASS ALLEGATIONS

The Del Rios' class certification allegations should be stricken pursuant to rule 12(f). Striking class allegations is appropriate where a defendant "demonstrate[s] from the face of the [c]omplaint that it would be impossible to certify the alleged class regardless of the facts the [p]laintiffs may be able to obtain during discovery." *Mayfield v. Asta Funding*, 95 F.Supp. 3d 685, 696 (S.D.N.Y. 2015).  While often denied as premature, "[c]ourts in this district have held that a motion to strike class allegations . . . may be addressed 'prior to the certification of the class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear.'" *Jaffe v. Capital One Bank*, No. 09 CIV. 4106 (PGG), 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1,

2010) (quoting *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92(SAS), 2008 WL 2050781, at *2 (S.D.N.Y. May 13, 2008)); *see also Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 Civ. 6198(LAK)(JCF), 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008).  As shown below, striking the allegations now rather than wasting this court's and the parties' time and resources is appropriate.  *See Jaffe*, 2010 WL 691639, at *10.

Alternatively, pursuant to rule 23(d)(1)D), this Court should require the Del Rios to amend their pleadings for the class allegations to conform to the points raised below.

**A.    Pled Class Lacks Standing**

Putative class members are subject to the same Article III standing requirements as the named plaintiff, *i.e.*, they must have suffered an "'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  "[N]o class may be certified that contains members lacking Article III standing."  *Id.* at 264; *see also Calvo v. City of New York*, No. 14-CV-7246 (VEC), 2017 WL 4231431, at *3 (S.D.N.Y. Sept. 21, 2017) (same).

The Del Rios define a putative class of "all persons who were <u>potentially</u> subjected to letters from Shellpoint and time-barred foreclosure actions from [BoNYM] and McCabe."  (Compl. ¶ 41 (emphasis added).)  By including as class members those "potentially subjected to" the alleged improper acts, the Del Rios have necessarily included class members who may not have received or been parties to the threatened litigation.  Such people clearly have suffered no "injury in fact" traceable to the challenged actions in this case.  The class action allegations should be stricken. *See Denney*, 443 F.3d 253.

**B.     Pled Class Exceeds GBL Limitations**

To qualify as an act prohibited by GBL "'the deception of a consumer must occur in New York.'" *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5 (2d Cir. 2012) (summary order) (quoting *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325 (N.Y. 2002)).  Although they purport to seek class certification under their GBL claim (Compl. at 15), the Del Rios' purported class is not sufficiently limited to "deception" occurring in New York and must be stricken.  *See, e.g.*, *Kaufman*, 474 F. App'x at 5.

**C.     Class Not Ascertainable on its Face**

To certify a class in this Circuit, it must be ascertainable, which means it must be "defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Brecher v. Republic of Argentina*, 806 F.3d 22, 25 (2d Cir. 2015).

**1.     Vague Class Not Certifiable.**

The Del Rios claims are premised on New York statute of limitations, and it appears the putative class was intended to be equally limited.  (*See* Compl. ¶ 47.)  Nevertheless, as pled, the putative class is not limited to New York and could conceivably include all loans serviced and/or subject to foreclosure in the United States.  At a minimum, this Court should require the Del Rios to amend to clarify the limits of the class to New York as would be consistent with their claim.

Going further, if the Del Rios did intend to state a nationwide class, it would fail on its face as a matter of law.  Foreclosures are state law driven, and states across the country have different foreclosure schemes, including statute of limitations.  *See, e.g.*, *Obduskey*, 139 S. Ct. at 1034 (describing same).  The Del Rios' complaints are particular to New York, and resolving the merits of their claim will have no impact on whether any other putative class member in a different state has a meritorious claim.  For example, in Florida, a dismissal (of any type) decelerates the loan,

and, regardless of a prior filing, a mortgage foreclosure action is not barred by the statute of limitations so long as the foreclosing plaintiff pleads the default continues to a date within five years of complaint filing. *See, e.g.*, *Bartram v. U.S. Bank, NA*, 211 So. 3d 1009 (Fla. 2016) (dismissal returns parties to pre-acceleration status quo); *Dhanasar v. JPMorgan Chase Bank, N.A.*, 201 So. 3d 825, 826 (Fla. 3d DCA 2016) (alleging a continuous statement of default means the case was filed within five years of "a default payment" and timely). As another example, in Texas, acceleration, *i.e.*, claim accrual for statute of limitations purposes, can be abandoned by a mortgagee's conduct, such as sending letters seeking less than the full loan balance, which resets the statute of limitations upon the next acceleration. *See, e.g.*, *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 105 (5th Cir. 2015). Colorado too has its own laws, confirming acceleration (also claim accrual), can be abandoned and reasserted multiple times upon the filing and withdrawal of the notice of election and demand for sale. *See, e.g., Bank of N.Y. Mellon, etc. v. Peterson*, 442 P.3d 1006, 1010-11 (Col. 2018); *Paggen v. Bank of Am., N.A.*, 781 F. App'x 779, 785 (10th Cir. 2019). These are just 4 examples among 50+ variances. Given the huge differences among states with respect to foreclosing, the unlimited class as pled—if that is what is pled—is simply not certifiable as a matter of law. *See Hanks v. Lincoln Life & Annuity Co. of N.Y.*, 330 F.R.D. 374, 385 (S.D.N.Y. 2019) ("there are serious reasons to question the predominance of common legal issues for the proposed class" when states differed in law on a critical issue to the class action).[8]

The legal requirement that defendants "knew" the foreclosure was time barred will also involve an individual loan-by-loan analysis, including the analysis of state law. There is no way a "complete" determination can be made on class-wide proof, and individualized issues will

---

[8] A nationwide class is also likely unavailable in this case following the Supreme Court's holding in *Bristol-Myers Squibb Co. Superior Ct. of California*, 137 S. Ct. 1773, 1781 (2017).

predominate.  *See Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 618-19 (S.D. Fla. 2009) (declining to certify a class requiring individual knowledge determinations).

Not only that but, the Del Rios' purported class is also not limited in time to the statute of limitations of the claims they purport to raise, requiring amendment.

### 2.      Shellpoint "Letter" Class Overbroad.

As to Shellpoint, the Del Rios seek a proposed class of "all persons potentially subjected to letters from Shellpoint."  (Compl. ¶ 41.)  It is clear from the face of the complaint that such a boundless class—of essentially every person who has a loan serviced by Shellpoint—is not ascertainable because it would require mini-trial to determine whether any person had a meritorious case against Shellpoint.  Shellpoint services hundreds of thousands of loans, the vast majority of which are current and have no statute of limitations concerns, which means there will be hundreds of thousands of mini-trials to determine merits.  Even as to New York loans with potentially time-barred mortgage foreclosures, Shellpoint's ability to pursue an action on the note for the note holders may remain.  *See, e.g.*, *Gizzi v. Hall*, 309 A.D.2d 1140, 1141 (N.Y.A.D. 3d Dep't 2003) (under RPAPL § 1301 "[t]he holder of a note and mortgage may proceed at law to recover on the note or proceed in equity to foreclose on the mortgage, but must only elect one of these alternate remedies"); CPLR 204(a) ("Where the commencement of an action has been stayed . . . by statutory prohibition, the duration of the stay is not a part of the time within which the action must be commenced.").  Such a vague, overbroad class is not ascertainable as a matter of law.  *See Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 91 n.2 (2d Cir. 2018) ("[C]lass was 'identified by subject matter, timing, and location,' which made it 'objectively possible' to ascertain members.") (quoting *In re Petrobras Sec.*, 862 F.3d 250, 267–70 (2d Cir. 2017)).

### D.   Rule 23(b)(2) Class Necessarily Fails

"A class is typically certified under Rule 23(b)(2) when 'class-wide injunctive or declaratory relief is necessary to redress group injuries, such as infringements on civil rights, and is commonly relied on by litigants seeking institutional reform through injunctive relief.'" *Larsen v. JBC Legal Grp., P.C.*, 235 F.R.D. 191, 197 (E.D.N.Y. 2006) (quoting Manual for Complex Litigation § 21.142 (4th ed. 2004)).  "[T]o certify a class pursuant to 23(b)(2) (rather than 23(b)(3)), the plaintiff must primarily be seeking either injunctive or declaratory relief." *Id.*  In situations in which both declaratory and monetary relief are requested, "the declaratory relief must predominate over monetary relief." *Id*.

Because injunctive relief is not available to private litigants under the FDCPA, rule 23(b)(2) class certification is inappropriate in FDCPA cases.  *See Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp. 2d 293, 298 n. 2 (E.D.N.Y. 2005); *Vega v. Credit Bureau Enters.*, No. CV 02–1550, 2005 WL 711657, at *5 (E.D.N.Y. Mar. 29, 2005) (certification under 23(b)(2) is inappropriate in a FDCPA case); *Goldberg v. Winston & Morrone, P.C.*, No. 95 Civ. 9282, 1997 WL 139526, at *4 (S.D.N.Y. March 26, 1997).

The Second Circuit has never granted rule 23(b)(2) class certification in an FDCPA case. *Larsen*, 235 F.R.D. at 197.  Because the Del Rios may not certify FDCPA claims under rule 23(b)(2), the request for class certification under rule 23(b)(2) must be stricken.

## V.   CONCLUSION

This rushed complaint fails to state a claim because the subject mortgage foreclosure is not inescapably barred by time.  It is an open question, and no FDCPA or GBL claim can proceed based on a party's good faith litigation position.  Holding otherwise will lead to an avalanche of litigation following any debt collector suit with a potentially viable defense—even when currently pending as is the case here—regardless of the underlying case merits.

And, the fact there is a disagreement on the applicability of the statute of limitations as to the Del Rios' claims confirms as matter of law that class certification would be improper.  The class allegations should be stricken, or at a minimum, amended to conform to the facts of the Del Rios' New York statute of limitations-based claim only.

/s/ Jordan M. Smith, Esq.
Jordan M. Smith
**AKERMAN LLP**
666 Fifth Avenue, 20th Floor
New York, NY 10103
Phone:  (212) 880-3800
Fax:  (212) 905-6447
Email: Jordan.smith@akerman.com

*Counsel for Defendants Shellpoint and BoNYM*

22

## <u>CERTIFICATE OF SERVICE</u>

I, Jordan Smith, an attorney, hereby certify that on this 8th day of January, 2020, a true and correct copy of this document was served via ECF upon all parties registered to receive service via ECF in this case.

/s/ Jordan M. Smith, Esq.
