# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------------------------x
The Bank of New York Mellon fka The Bank of New York, as Trustee
for the Certificateholders, CWALT, Alternative Loan Trust 2007-14T2
Mortgage Pass-Through Certificates, Series 2007-14T2,

                                        Plaintiff,            **COMPLAINT**

          -against-

Rufina Fernandez, Juan Fernandez, The People of the State of New
York, Capital One Bank (USA), N.A., and "JOHN DOE #1" through
"JOHN DOE #10", the last ten names being fictitious and unknown
to the plaintiff, the person or parties intended being the persons or
parties, if any, having or claiming an interest in or lien upon the
Mortgage premises described in the Complaint,
                                        Defendants.
-----------------------------------------------------------------------------------x

       The plaintiff, by its attorneys, Frenkel, Lambert, Weiss, Weisman & Gordon, LLP,
complaining of the defendants herein allege, upon information and belief, as follows:

                        **AS A FIRST CAUSE OF ACTION**

1.     That the plaintiff, The Bank of New York Mellon fka The Bank of New York, as Trustee for
the Certificateholders, CWALT, Alternative Loan Trust 2007-14T2 Mortgage Pass-Through
Certificates, Series 2007-14T2, at all times hereinafter mentioned was and still is a  foreign
corporation with offices at c/o Bank of America, N.A., 100 North Tryon Street, Charlotte, NC
28255.

2.     On or about February 22, 2007, the defendant, Rufina Fernandez (hereinafter "mortgagor"),
executed and delivered to Florida Capital Bank, N.A. DBA Florida Capital Bank Mortgage, a note
dated February 22, 2007 whereby Rufina Fernandez  promised to pay the principal sum of
$675,000.00.

3.     On or about February 22, 2007, the mortgagors executed and delivered to Mortgage
Electronic Registration Systems, Inc., acting solely as a nominee for Florida Capital Bank, N.A.
DBA Florida Capital Bank Mortgage a mortgage (hereinafter "mortgage") in the principal sum of
$675,000.00, with interest, mortgaging the premises known as 41 Mount Morris Avenue, White
Plains, NY 10604 (hereinafter "premises") as  collateral security for the note.  The mortgaged
premises are more fully described in **Exhibit "A"** annexed hereto.

4.     Thereafter, the note and mortgage were assigned to Mortgage Electronic Registration
Systems, Inc. as nominee for Countrywide Home Loans, Inc. by a correction assignment which is
in the process of being recorded.

5.    A second note and mortgage were executed by the mortgagors, dated February 13, 2007, recorded on April 25, 2007 in CRFN 2007000213373, in the amount of $146,632.33, which was consolidated with the original note and mortgage pursuant to the terms of a Consolidation, Extension and Modification Agreement dated February 13, 2007, recorded on April 25, 2007 in CRFN 2007000213374, which created a single lien in the amount of $536,000.00. Thereafter, the note and mortgage were assigned to The Bank of New York Mellon, for the Certificateholders Alternative Loan Trust 2007-11T1 Mortgage Pass-Through Certificates, Series 2007-11T1 Pass-Through Certificates, Series 2007-11T1 by an assignment which is in the process of being recorded. Thereafter, the loan was modified pursuant to a Loan Modification Agreement.  A copy of the mortgages, consolidation, extension, and modification agreement and assignments are annexed hereto as **Exhibit "B"**.

5.    Pursuant to the note, the defendant, Rufina Fernandez   promised to make consecutive monthly payments of principal and interest each month, in accordance with the terms of the note, commencing April 1, 2007 and on the first day of each succeeding month up to and including March 1, 2037 when the entire principal amount and accrued interest shall be due and payable.

6.    Pursuant to the mortgage, the mortgagors promised to pay, in addition to principal and interest, all amounts necessary to pay for taxes, assessments, leasehold payments or ground rents (if any), hazard insurance and mortgage insurance.

7.    The Mortgage further provides that in case of default in the payment of any principal or interest or any other terms, covenants or conditions of the Mortgage, the holder of the Mortgage could declare the entire indebtedness secured by the Mortgage immediately due and payable, and the holder of the Mortgage is empowered to sell the mortgaged premises according to law.

8.    The mortgagors failed to comply with the terms, covenants and conditions of said Note and Mortgage by failing and omitting to pay, to the plaintiff, payments due on January 1, 2008 and said default has continued for a  period in excess of fifteen (15) days.

9.    Pursuant to the terms of the note and mortgage, the plaintiff has elected and does hereby elect to declare the entire principal balance to be due and owing.

10.    That there is now due and owing to the plaintiff under said Note and Mortgage the principal sum of $708,901.38 with interest thereon from December 1, 2008, plus late charges and advances made by the plaintiff on behalf of the defendants and any other charges due and owing pursuant to the terms of the Note and Mortgage.

11.    The note provides that in the event any installment shall become overdue for a period in excess of 15 days, a late charge on the overdue sum may be charged for the purpose of defraying the expense in handling such delinquent payment.

12.    Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made by reason of payment after the date of commencement of this action of any or all of the defaults mentioned herein, and such election shall continue and remain effective.

13.     In order to protect its security, the plaintiff may be compelled, during the pendency of this action, to pay sums for premiums on insurance policies, real estate taxes, assessments, water charges and sewer rents which are or may become liens on the Mortgage premises, and other charges which may be necessary for the protection of the Mortgage premises, and the plaintiff pays that any sum or sums so paid, together with interest from the date of payments, shall be added to the plaintiff's claim and be deemed secured by said Note and Mortgage and adjudged a valid lien on the mortgaged premises, and that the plaintiff be paid such sums, together with interest thereon, out of the proceeds of the sale of the mortgaged premises.

14.     The defendant, Rufina Fernandez, is named as party defendant to this action because she is the record owner of the subject premises, original mortgagor and the party liable for payment of the mortgage debt.

15.     The defendant, Juan Fernandez, is named as party defendant to this action because he is the record owner of the subject premises and original mortgagor.

16.     The defendant, The People of the State of New York, is made a party defendant to this action because it is the holder of Judgment(s) against the property being foreclosed herein. Said lien is more particularly described in **Exhibit "C"** annexed hereto.

17.     The defendant, Capital One Bank (USA), N.A., is made a party defendant to this action because it is the holder of Judgment(s) against the property being foreclosed herein.

18.     That each of the above named defendants have or claims to have, some interest in or lien upon the mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequent to the lien of plaintiff's Mortgage and is subject and subordinate thereto.

19.     That the plaintiff is now the sole, true and lawful owner of the said note and mortgage securing the same or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage and note and that there are no pending proceedings at law or otherwise to collect or enforce said note and mortgage.

20.     Plaintiff has complied with all of the provisions of Banking Law §595-a and any rules and regulations promulgated thereunder, Banking Law §§6-1 and 6-m and Real Property Actions and Proceedings Law §1304 unless exempt from doing so.

21.     The Mortgage provides that, in the case of foreclosure, the mortgaged premises may be sold in One parcel and that if the premises consists of more than one parcel, plaintiff respectfully requests that the judgment of foreclosure provide for the parcels to be sold as one parcel.

22.     The sale of the mortgaged premises under foreclosure herein is subject to any state of facts that an inspection of the premises would disclose, any state of facts an accurate survey would show, and to covenants, restrictions and easements, if any, of record affecting said Mortgage premises and any violation thereof, any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale, prior mortgages and liens of record, if any, any rights of tenants or persons in possession of the subject premises, and to zoning regulations and

ordinances of the city, town or village in which said Mortgage premises lies and any Violations thereof.

23.    In the event that the plaintiff possesses any other lien(s) against the mortgaged premises either by way of judgment, junior Mortgage or otherwise, plaintiff requests that such other lien(s) not be merged in plaintiff's cause(s) of action set forth in this Complaint, but that plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings.

24.    The defendant(s) named "JOHN DOE #1" though "JOHN DOE #10" may be persons or parties in possession of, having or claiming an interest in or lien on the premises.

## AS AND FOR A SECOND CAUSE OF ACTION

25.    The plaintiff repeats and realleges each and every allegation contained in paragraphs designated 1 through 24.

26.    The mortgage provides that in the event of default by the mortgagors, Rufina Fernandez and Juan Fernandez, plaintiff may recover all costs, including reasonable attorneys' fees, disbursements, and allowances provided by law in bringing any action to protect its interest in the premises, including foreclosure of the mortgage.

WHEREFORE, the plaintiff demands judgment against the Defendant(s) as follows:

a)    That the defendants and all persons claiming under them or any of them, subsequent to the commencement of this action and to the filing of the Notice of Pendency of this action, may be barred and foreclosed of all right, title, claim, lien and equity of redemption in the mortgaged premises;

b)    That the mortgaged premises be sold in One parcel according to law subject to any state of facts an accurate survey would show, any covenants, easements, encroachments, reservations, and restrictions, Violations and agreements of record, zoning regulations and ordinances of the city, town, or village; wherein the premises are located, any state of facts a physical inspection will disclose, rights of tenants and other persons in possession of the mortgaged premises, prior judgments, liens and mortgages of record and any and all rights of the United States of America to redeem the subject premises;

c)    That the premises be sold in accordance with Title 28, Section 2410 of the United State Code preserving all rights of redemption, if any, of the United States of America;

d)    That the monies received from the sale be brought into Court and that plaintiff be paid the amount adjudged to be due it with interest thereon to the time of such payment, together with late charges, any sums paid by the plaintiff for real estate taxes, assessments, water charges and sewer rents, insurance premiums, sums expended for the protection or preservation of the property, together with attorneys' fees as demanded in the second cause of action, the costs and disbursements of this action and any other necessary expenses to protect the lien of the Mortgage to the extent that the amount of such monies applicable thereto will pay the same;

e)    That this Court, if requested, appoint a receiver of the rents and profits of said

premises, during the pendency of this action with the usual powers and duties;

     f)    That the defendant, Rufina Fernandez, be adjudged to pay any deficiency which may remain after applying all of such monies as aforesaid in accordance with the law and provided that plaintiff have execution therefore;

     g)    That in the event plaintiff possesses any other lien(s) against said mortgaged premises either by way of judgment, junior Mortgage or otherwise, plaintiff requests that such other lien(s) shall not be merged in plaintiff's cause(s) of action(s) set forth in the Complaint but that plaintiff shall be permitted to enforce said other lien(s) and/or seek determination or priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings;

     h)    That plaintiff have such other and further relief in the mortgaged premises as may be just and equitable.

Dated:  Bay Shore, New York
        August 20, 2009

Frenkel, Lambert, Weiss, Weisman & Gordon, LLP

By: _____

Attorneys for Plaintiff
20 West Main Street
Bay Shore, New York 11706
(631) 969-3100
Our File No.:  32263





# SCHEDULE "A"

**Address:**
5910 TYNDALL AVENUE
BRONX NY 10471

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE BOROUGH AND COUNTY OF BRONX, CITY AND STATE OF NEW YORK, MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT POINT ON THE EASTERLY SIDE OF TYNDALL AVENUE, DISTANT 125 FEET NORTHERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE EASTERLY SIDE OF TYNDALL AVENUE WITH THE NORTHERLY SIDE OF WEST 29TH STREET;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF TYNDALL AVENUE, 30 FEET;

THENCE EASTERLY PARALLEL WITH THE NORTHERLY SIDE OF WEST 259TH STREET 95 FEET,

THENCE SOUTHERLY PARALLEL WITH THE EASTERLY SIDE OF TYNDALL AVENUE 30 FEET;

THENCE WESTERLY PARALLEL WITH THE NORTHERLY SIDE OF WEST 259TH STREET 95 FEET TO THE POINT OR PLACE OF BEGINNING.

SUBJECT TO A DRIVEWAY EASEMENT OR RIGHT OF WAY FOR PEDESTRIAN AND PRIVATE MOTOR VEHICLES OVER THE MOST SOUTHERLY FOUR FEET OF THE PREMISES HEREINABOVE DESCRIBED. TOGETHER WITH THE BENEFITS OF A DRIVEWAY EASEMENT FOR PEDESTRIAN AND PRIVATE MOTOR VEHICLES OVER THE MOST NORTHERLY FOUR FEET OF THE PREMISES ADJOINING ON THE SOUTH.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument The City Register will rely on the information provided by you on this page for purposes of indexing this instrument The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2004070200830001001EB8D1

## RECORDING AND ENDORSEMENT COVER PAGE

PAGE 1 OF 25

**Document ID:** 2004070200830001
**Document Type:** MORTGAGE
**Document Page Count:** 23

Document Date: 06-07-2004

Preparation Date: 07-02-2004

**PRESENTER:**
RETRIEVER ABSTRACT, LLC
AS AGENT FOR UNITED GENERAL
81 SCUDDER AVE
NORTHPORT, NY 11768
631-754-1217
RET-U 1001038-B

**RETURN TO:**
SOMERSET MORTGAGE BANKERS
2001 MARCUS AVENUE
LAKE SUCCESS, NY 11042
516-293-9172

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---------|-------|-----|------|---------|
| BRONX | 5868 | 656 | Entire Lot | 5910 TYNDALL AVENUE |

**Property Type:** DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN ____ *or* Document ID ____ ____ *or* Year ____ Reel ____ Page ____ *or* File Number _

### PARTIES

**MORTGAGER/BORROWER:**
ALFRED DEL RIO
5910 TYNDALL AVENUE
BRONX, NY 10471

**MORTGAGEE/LENDER:**
SOMERSET INVESTORS CORP
2001 MARCUS AVENUE, SUITE N-218
LAKE SUCCESS, NY 11042

x  Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | | | |
|----------|---|---|---|---|---|
| Mortgage Amount: | $ | 402,000.00 | Recording Fee: $ | 152.00 | |
| Taxable Mortgage Amount: | $ | 402,000.00 | Affidavit Fee  $ | 0.00 | |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | | |
| TAXES: County (Basic): | $ | 2,010.00 | | $ | 0.00 |
| City (Additional): | $ | 4,020.00 | NYS Real Estate Transfer Tax: | | |
| Spec (Additional): | $ | 0.00 | | $ | 0.00 |
| TASF: | $ | 1,005.00 | | | |
| MTA: | $ | 980.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 8,015.00 | | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed          09-07-2004 12 03
City Register File No (CRFN)
2004000555693

*Rochelle Patrice*

**City Register Official Signature**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2004070200830001001CBA51

RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)    PAGE 2 OF 25

Document ID: 2004070200830001    Document Date: 06-07-2004    Preparation Date: 07-02-2004
Document Type: MORTGAGE

**PARTIES**
**MORTGAGER/BORROWER:**
OLIVIA DEL RIO
5910 TYNDALL AVENUE
BRONX, NY  10471

**PARTIES**
**MORTGAGEE/LENDER:**
DBA SOMERSET MORTGAGE BANKERS
2001 MARCUS AVENUE
NORTH NEW HYDE PARK, NY  11040

After Recording Return To:
SOMERSET MORTGAGE BANKERS

2001 MARCUS AVE
LAKE SUCCESS, NY

RET-U-1001038-B

[Space Above This Line For Recording Data]

DEL RIO
LOAN #: ████849HQ
PIN #:
MIN: ███████42349

# MORTGAGE

**B**
**5868**

## WORDS USED OFTEN IN THIS DOCUMENT

(A) **"Security Instrument."** This document, which is dated    JUNE 7, 2004                                together
with all Riders to this document, will be called the "Security Instrument."
(B) **"Borrower."** ALFRED DEL RIO AND OLIVIA DEL RIO

whose address is    5910 TYNDALL AVE, BRONX, NY 10471

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) **"Lender."**    SOMERSET INVESTORS CORP. DBA SOMERSET MORTGAGE BANKERS

**L**
**6566**

will be called "Lender " Lender is a corporation or association which exists under the laws of
NEW YORK                                . Lender's address is    2001 MARCUS AVENUE
NORTH NEW HYDE PARK, NY 11040
(E) **"Note."** The note signed by Borrower and dated    JUNE 7, 2004        will be called the "Note."
The Note shows that I owe Lender
FOUR HUNDRED TWO THOUSAND AND 00/100
Dollars (U S.$    402,000.00            ) plus interest and other amounts that may be payable. I have
promised to pay this debt in Periodic Payments and to pay the debt in full by    JULY 1, 2034            .
NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3033 1/01
DOCUKNY1
DOCUKNY1 .VTX 11/9/2002                    *(Page 1 of 15 pages)*

849EQ

(F) **"Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

(G) **"Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(H) **"Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) **"Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]

- [x] Adjustable Rate Rider
- [ ] Balloon Rider
- [x] 1-4 Family Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Other(s) [specify]
- [ ] Second Home Rider
- [ ] Biweekly Payment Rider

(J) **"Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

(N) **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq ) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant, and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to

    (A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

    (B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property, and

    (C) Keep all of my other promises and agreements under this Security Instrument and the Note

■849HQ

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

> (A)  to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and
>
> (B)  to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below

> (A) The Property which is located at ,   **5910 TYNDALL AVE**
> [Street]
> **BRONX**                              , New York    **10471**
> [City, Town or Village]                 [Zip Code]
> This Property is in  **BRONX**          County. It has the following legal description:

> (B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
> (C) All rights in other property that I have as owner of the Property described in subsection (A) of this section These rights are known as "easements and appurtenances attached to the Property;"
> (D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
> (E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
> (F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
> (G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have  I promise that I will defend my ownership of the Property against any claims of such rights

**NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                          **Form 3033 1/01**
DOCUKNY1
DOCUKNY3 VTX  10/18/2002                          *(Page 3 of 15 pages)*

Title No.  RET U-1001038-B

### SCHEDULE A - DESCRIPTION

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Bronx, City and State of New York, more particularly bounded and described as follows:

BEGINNING at point on the easterly side of Tyndall Avenue, distant 125 feet northerly from the corner formed by the intersection of the easterly side of Tyndall Avenue with the northerly side of West 259th Street;

THENCE northerly along the easterly side of Tyndall Avenue, 30 feet;

THENCE easterly parallel with the northerly side of West 259th Street 95 feet;

THENCE southerly parallel with the easterly side of Tyndall Avenue 30 feet;

THENCE westerly parallel with the northerly side of West 259th Street 95 feet to the point or place of BEGINNING.

SUBJECT to a driveway easement or right of way for pedestrian and private motor vehicles over the most southerly four feet of the premises hereinabove described.  Together with the benefits of a driveway easement for pedestrian and private motor vehicles over the most northerly four feet of the premises adjoining on the south.

**UNITED GENERAL TITLE INSURANCE COMPANY**
SCHEDULE A - DESCRIPTION

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows.

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument

Payments due under the Note and this Security Instrument shall be made in U.S currency If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by. (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order.
First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument, and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges, and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items."

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim,

849HQ

demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument,

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations. Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds

(c) Adjustments to the Escrow Funds. Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3033 1/01
DOCUKNYS
DOCUKNYS VTX 10/18/2002                        *(Page 5 of 15 pages)*

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3033 1/01
DOCUKNY6
DOCUKNY6 VTX 10/18/2002      *(Page 6 of 15 pages)*

economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument, or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may

FILED Aug 24 2009 Bronx County Clerk

Case 1:19-cv-10312-VSB   Document 42-1   Filed 02/18/20   Page 18 of 184

significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court, and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so I agree that Lender will not be liable for not taking any or all actions under this Section 9

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or amend that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month in an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance, and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033 1/01
DOCUKNYS
DOCUKNYS VTX 10/18/2002          *(Page 8 of 15 pages)*

849HQ

agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

**NEW YORK**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
DOCUKNY9
DOCUKNY9 VTX  10/18/2002
*(Page 9 of 15 pages)*                                                   **Form 3033 1/01**

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons, or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together This means that any one of us may be required to pay all of the Sums Secured However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument, (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note) If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3033 1/01
DOCUXNY10
DOCUKNYA  VTX  10/18/2002                        *(Page 10 of 15 pages)*

Instrument unless Lender has given me notice of another address  Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement  The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument  If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required,

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change

NEW YORK--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                          Form 3033 1/01

▮49HQ

of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that· (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products) I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure)

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows.

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid

849HQ

under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24

25. Borrower's Statement Regarding the Property [check box as applicable].

☒ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3033 1/01
DOCUKNY13
DOCUKNYD VTX  10/18/2002                                          (Page 13 of 15 pages)

# FIXED/ADJUSTABLE RATE RIDER
## (LIBOR One-Year Index (As Published In *The Wall Street Journal*)–Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this 7TH day of           JUNE, 2004
, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to   SOMERSET INVESTORS CORP. DBA SOMERSET MORTGAGE BANKERS
("Lender") of the same date and covering the property described in the Security Instrument and located at:
5910 TYNDALL AVE BRONX, NY 10471

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.     ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of   6.125   %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4.     ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)     Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
JULY 1, 2009            , and the adjustable interest rate I will pay may change on that day every 12th month thereafter  The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

MULTISTATE FIXED/ADJUSTABLE RATE RIDER—WSJ One-Year LIBOR—Single Family—Fannie Mae Uniform Instrument          Form 3187   6/01
DOCUA971
DOCUA971 VTX   08/20/2001                              Page 1 of 4

**(B)     The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information  The Note Holder will give me notice of this choice.

**(C)     Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-FOURTH                  percentage points (   2.250   %) to the Current Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)     Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   11.125   % or less than      2.250          %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    11.125  %.

**(E)     Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)     Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.     TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.     Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.      When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

# 1-4 FAMILY RIDER

### (Assignment of Rents)

DEL RIO
LOAN NO.: ███349HO
MIN: ██████42349

THIS 1-4 FAMILY RIDER is made this 7TH         day of     JUNE, 2004
, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to  SOMERSET INVESTORS CORP. DBA SOMERSET MORTGAGE BANKERS

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at. 5910 TYNDALL AVE BRONX, NY 10471

[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1-4 FAMILY RIDER--Fannie Mac/Freddie Mac UNIFORM INSTRUMENT        Form 3170 1/01
DOCUR4A1
DOCUR4A1 VTX    10/10/2003                    *(page  1 of 3 pages)*



**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change  Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower  (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant, (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time

when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

    **I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

- BORROWER - ALFRED DEL RIO - DATE -

- BORROWER - OLIVIA DEL RIO - DATE -

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3170 1/01
DOCUR4A3
DOCUR4A3 VTX  10/10/2003         *(page  3 of 3 pages)*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

- BORROWER -  ALFRED DEL RIO - DATE -

- BORROWER -  OLIVIA DEL RIO - DATE -

B49HQ

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 13 of this Security Instrument and in any Rider signed by me and recorded with it.

_____
- BORROWER - ALFRED DEL RIO - DATE -

_____
- BORROWER - OLIVIA DEL RIO - DATE -

■849HQ

**[Space Below This Line For Acknowledgment]**

---

**STATE OF** *New York*                    **County of** *NASSAU*

On the    *7th*    day of   *June*                    in the year  *2004*              before
me, the undersigned, a notary public in and for said state, personally appeared

*Alfred Del Rio   and   Olivia Del Rio*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that    *they*        executed the same in
*their*    capacity(ies), and that by    *their*        signature(s) on the instrument, the individual(s) or
the person upon behalf of which the individual(s) acted, executed the instrument.

*[signature]*
Notary Public

CAROL L. CIPRIANO
Notary Public, State of New York
No. ...
...County
... June 20, 20..

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
DOCUKNY15
DOCUKNY VTX 10/18/2002
*(Page 15 of 15 pages)*
Form 3033 1/01

32262

RECORD & RETURN TO:                                BLOCK:5868
Frenkel, Lambert, Weiss, Weisman & Gordon, LLP    LOT:656
20 West Main Street                                COUNTY: Bronx
Bay Shore, New York 11706

## * CORRECTION ASSIGNMENT OF MORTGAGE

Know that **Mortgage Electronic Registration Systems, Inc., acting solely as a nominee
for Somerset Investors Corp. dba Somerset Mortgage Bankers** ("Assignor"), having a place of
business at 2001 Marcus Avenue, North New Hyde Park, NY 11040, in consideration of TEN
DOLLARS ($10.00) and other good and valuable consideration paid by **Mortgage Electronic
Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc.** ("Assignee"), having
a place of business at c/o Bank of America, N.A., 100 North Tryon Street, Charlotte, NC 28255, does
hereby grant, bargain, sell, assign, transfer, and convey unto the Assignee the following described
Mortgage or Deed of Trust duly recorded in the office of real property records in the County of
Bronx, for the premises known as  5910 Tyndall Avenue, Bronx, NY 10471, together with the
indebtedness or obligation described in said instrument, and the monies due and to grow due thereon
with the interest, as follows·

| | |
|---|---|
| MORTGAGOR | Alfred Del Rio and Olivia Del Rio |
| MORTGAGEE: | Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for Somerset Investors Corp. dba Somerset Mortgage Bankers |
| AMOUNT. | 402,000 00 |
| DATE: | June 7, 2004 |
| RECORDED: | September 7, 2004 |
| CRFN: | 2004000555693 |

* This assignment is being recorded to correct a break in the chain of title as a subsequent note and
mortgage were executed in the name of Mortgage Electronic Registration Systems, Inc., as nominee
for Countrywide Home Loans, Inc., by the mortgagor dated February 13, 2007, recorded on April
25, 2007 in CRFN 2007000213373 in the amount of $146,632 33, which was consolidated with the
original note and mortgage pursuant to the terms of a Consolidation, Extension and Modification
Agreement dated February 13, 2007, recorded on April 25, 2007 in CRFN 2007000213374, which
created a single lien in the amount of $536,000.00.

**This assignment is not subject to the requirements of Section 275 of the Real Property
Law because it is an assignment within the secondary mortgage market.**

To have and to hold the same unto the Assignee, and to the successors, legal representatives
and assigns of the Assignee forever.

In Witness whereof, the Assignor has hereunto set her/his hand this 16TH day of AUGUST,
2009.

IN PRESENCE OF:                          Mortgage  Electronic  Registration Systems, Inc.,
                                         acting solely as a nominee for Somerset Investors
                                         Corp. dba Somerset Mortgage Bankers·

                                         BY:_____

                                         Aaron Formby Asst. Vice President
                                         Officer of MERS

STATE OF . **Texas**          )
                              )  SS.:
COUNTY OF **Tarrant**         )

On the 16TH day of _AUGUST_ , in the year 2009, before me, the undersigned, personally appeared _Aaron Formby_ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument and that such individual made such appearance before the undersigned in **Tarrant** County.

Notary Public

KEVIN A. JONES
Notary Public State of Texas
My Commission Expires
March 07, 2012

**Our file No.:** 32262





## SCHEDULE "A"

**Address:**
5910 TYNDALL AVENUE
BRONX NY 10471

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE BOROUGH AND
COUNTY OF BRONX, CITY AND STATE OF NEW YORK, MORE PARTICULARLY BOUNDED
AND DESCRIBED AS FOLLOWS:

BEGINNING AT POINT ON THE EASTERLY SIDE OF TYNDALL AVENUE, DISTANT 125 FEET
NORTHERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE EASTERLY SIDE
OF TYNDALL AVENUE WITH THE NORTHERLY SIDE OF WEST 29TH STREET;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF TYNDALL AVENUE, 30 FEET;

THENCE EASTERLY PARALLEL WITH THE NORTHERLY SIDE OF WEST 259TH STREET 95
FEET;

THENCE SOUTHERLY PARALLEL WITH THE EASTERLY SIDE OF TYNDALL AVENUE 30 FEET;

THENCE WESTERLY PARALLEL WITH THE NORTHERLY SIDE OF WEST 259TH STREET 95
FEET TO THE POINT OR PLACE OF BEGINNING.

SUBJECT TO A DRIVEWAY EASEMENT OR RIGHT OF WAY FOR PEDESTRIAN AND PRIVATE
MOTOR VEHICLES OVER THE MOST SOUTHERLY FOUR FEET OF THE PREMISES
HEREINABOVE DESCRIBED. TOGETHER WITH THE BENEFITS OF A DRIVEWAY EASEMENT
FOR PEDESTRIAN AND PRIVATE MOTOR VEHICLES OVER THE MOST NORTHERLY FOUR
FEET OF THE PREMISES ADJOINING ON THE SOUTH.



**NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument The information on this page will control for indexing purposes in the event of any conflict with the rest of the document

2007031401532001001E9338

## RECORDING AND ENDORSEMENT COVER PAGE

**PAGE 1 OF 19**

| | | |
|---|---|---|
| Document ID: 2007031401532001 | Document Date: 02-13-2007 | Preparation Date: 03-14-2007 |

Document Type: MORTGAGE
Document Page Count: 17

| PRESENTER: | RETURN TO: |
|---|---|
| BELLE ABSTRACT CORPORATION/PICK-UP | COUNTRYWIDE HOME LOANS INC |
| RSR | MS SV-79 DOCUMENT PROCESSING |
| CHICAGO TITLE INS. CO. | P O BOX 10423 |
| 21 WALT WHITMAN ROAD | VAN NUYS, CA 91410 |
| HUNTINGTON STATION, NY 11746 | |
| 631-424-2300 | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5868 | 656 | Entire Lot | 5910 TYNDALL AVENUE |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN ___ ___ or Document ID__ ___ or _____ Year ___ Reel __ Page ___ or File Number _____

### PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| ALFRED DEL RIO | MERS INC |
| 5910 TYNDALL AVENUE | P O BOX 2026 |
| BRONX, NY 10471 | FLINT, MI 48501 |

x  Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 146,632.33 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 146,632.33 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 733.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 1,649.25 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF | $ | 366.50 | | | |
| MTA | $ | 409.80 | | | |
| NYCTA | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 3,158.55 | | | |
| Recording Fee: | $ | 122.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK
Recorded/Filed      04-25-2007 10:38
City Register File No.(CRFN):
**2007000213373**

*Annette M Hill*

**City Register Official Signature**

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER |  |
|---|---|
| | 2007031401532001001C91B8 |

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 19 |
|---|---|---|
| Document ID: 2007031401532001 | Document Date: 02-13-2007 | Preparation Date: 03-14-2007 |
| Document Type: MORTGAGE | | |

PARTIES
MORTGAGOR/BORROWER:
OLIVIA DEL RIO
5910 TYNDALL AVENUE
BRONX, NY 10471

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O Box 10423
Van Nuys, CA 91410-0423

*17258B*

Prepared By
MARCO ORTIZ

*MT#3,158.55* ——————— [Space Above This Line For Recording Data] ———————

828302007
(Doc ID #)

# MORTGAGE
MIN ████████6412-1

## WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated   FEBRUARY 13, 2007   , together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."
ALFRED DEL RIO, AND OLIVIA DEL RIO

whose address is
5910 TYNDALL AVENUE, BRONX, NY 10471
sometimes will be called "Borrower" and sometimes simply "I" or "me"
(C) "MERS" is Mortgage Electronic Registration Systems, Inc MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**
(D) "Lender."
COUNTRYWIDE HOME LOANS, INC.
will be called "Lender." Lender is a
CORPORATION                                                        which exists
under the laws of NEW YORK                        Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(E) "Note." The note signed by Borrower and dated FEBRUARY 13, 2007   , will be called the "Note "
The Note shows that I owe Lender
ONE HUNDRED FORTY SIX THOUSAND SIX HUNDRED THIRTY TWO and 33/100

Dollars (U.S. $ 146,632 33          ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by  MARCH 01, 2037

Section: _____ Block _____ Lot: _____ Unit _____

**NEW YORK- Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 13

VMP ®-6A(NY) (0508)     CHL (08/05)(d)     VMP Mortgage Solutions, Inc (800)521-7291          Form 3033 1/01
CONV/VA





8 8 2 8 3 0 0 0 0 0 2 0 0 6 A *

DOC ID #                828302007

(F) **"Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY

(G) **"Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) **"Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable].

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) **"Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

(N) **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for (i) damage to, or destruction of, the Property, (ii) Condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

DOC ID #: [redacted] 828302007

## DESCRIPTION OF THE PROPERTY

I give MERS rights in the Property described in (A) through (G) below:

(A) The Property which is located at

5910 TYNDALL AVENUE                                                                [Street]

BRONX                                        [City, Town or Village], New York

10471        [Zip Code] This Property is in  BRONX                                County

It has the following legal description

As per legal description attached hereto and made a part hereof.  Being
the same premises conveyed to the mortgagor(s) herein by deed from Diana
McGonnell, dated 12/17/97 recorded 2/18/98 in Reel 1530 page 104.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows.

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either



# BELLE ABSTRACT CORP.

Title No. 0702330230000896   BELLE-17258B

## S C H E D U L E   A

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Bronx, City and State of New York, more particularly bounded and described as follows·

BEGINNING at a point on the Easterly side of Tyndall Avenue, distant 125 feet Northerly from the corner formed by the intersection of the Easterly side of Tyndall Street with the Northerly side of West 259th Street;

THENCE Northerly along the Easterly side of Tyndall Avenue, 30 feet;

THENCE Easterly parallel with the Northerly side of West 259th Street, 95 feet;

THENCE Southerly parallel with the Easterly side of Tyndall Avenue, 30 feet;

THENCE Westerly parallel with the Northerly side of West 259th Street, 95 feet to the point or place of BEGINNING

SUBJECT to a driveway easement or right of way for pedestrian and private motor vehicles over the most Southerly four feet of the premises hereinabove described. Together with the benefits of a driveway easement for pedestrian and private motor vehicles over the most Northerly four feet of the premises adjoining on the South.

FOR
:ONVEYANCING
ONLY

The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.

TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.

DOC ID #: ███████828302007

apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note,

Next, to pay principal due under the Note, and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows

First, to pay any late charges,

Next, to pay any other amounts due under this Security Instrument, and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full, Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due

Voluntary prepayments will be applied as follows: First, to any prepayment charges, and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien,"

(2) The leasehold payments or ground rents on the Property (if any).

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument,

(4) The premium for Mortgage Insurance (if any).

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any), and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3

DOC ID #:▮▮▮▮▮828302007

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or

DOC ID #: ████ 828302007

amount of coverage Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless (a) it is not economically feasible to make the repairs or restoration, (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument, or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2 If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year The one-year period will begin when I first occupy the Property However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

DOC ID #: ████ 828302007

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund, and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

DOC ID #:███████82830200 /

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me, or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property, (2) Lender accepts payments from third Persons, or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument, (b) that Person is not personally obligated to pay the Sums Secured, and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

DOC ID #:                828302007

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

DOC ID #: ████828302007

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that (a) is in violation of any Environmental Law, (b) creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**
I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;



DOC ID # ████████28302007

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund, and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities

[ ] This Security Instrument does not cover real property improved as described above

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)
ALFRED DEL RIO   -Borrower

_____ (Seal)
OLIVIA DEL RIO   -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

-6A(NY) (0508)   CHL (08/05)   Page 12 of 13   Form 3033 1/01

# 1-4 FAMILY RIDER
### (Assignment of Rents)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #:
5868

Prepared By.
MARCO ORTIZ

 828302007
[Doc ID #]

THIS 1-4 FAMILY RIDER is made this THIRTEENTH        day of FEBRUARY, 2007 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
5910 TYNDALL AVENUE
BRONX, NY 10471
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-57R (0401).01    CHL (06/04)(d)      Page 1 of 3
VMP Mortgage Solutions, Inc (800)521-7291

Initials._____
Form 3170 1/01

 * 2 3 9 9 1 *

 8 2 8 3 0 0 0 0 0 2 0 5 7 R *

DOC ID #:         828302007

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument. building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument, (ii) Lender shall be entitled to collect and receive all of the Rents of the Property, (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant, (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and

DOC ID #: ▮▮▮▮▮▮▮828302007

maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument. (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider

_____(Seal)
ALFRED DEL RIO                                          - Borrower

_____(Seal)
OLIVIA DEL RIO                                          - Borrower

_____(Seal)
                                                        - Borrower

_____(Seal)
                                                        - Borrower

STATE OF NEW YORK,

DOC ID # ▮▮▮▮▮828302007

County ss ᴄᴵᵉⁿ

On the ___13___ day of _Feb, 200?_____ before me, the undersigned, a notary public in and for said state, personally appeared _____ Albert Oliva Del Rio

_____ and Otivia Del Rio _____

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

_____
Notary Public

Tax Map Information: 5868

SEAL

NICODEMO R BELLOCCO
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN NASSAU COUNTY
REG 01BE6087374
MY COMM EXP FEB 18 20__

SEAL



# BELLE
## ABSTRACT CORP.
TELEPHONE (888) 635-0200

**NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument The information on this page will control for indexing purposes in the event of any conflict with the rest of the document



2007031401532002001E937C

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 26 |
|---|---|---|
| **Document ID:** 2007031401532002 | Document Date 02-13-2007 | Preparation Date. 03-14-2007 |
| Document Type: AGREEMENT | | |
| Document Page Count 24 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| BELLE ABSTRACT CORPORATION/PICK-UP RSR | COUNTRYWIDE HOME LOANS INC |
| CHICAGO TITLE INS CO. | MS SV-79 DOCUMENT PROCESSING |
| 21 WALT WHITMAN ROAD | P O BOX 10423 |
| HUNTINGTON STATION, NY  11746 | VAN NUYS, CA  91410 |
| 631-424-2300 | |

**PROPERTY DATA**

| Borough | Block Lot | Unit | Address |
|---|---|---|---|
| BRONX | 5868   656   Entire Lot | | 5910 TYNDALL AVENUE |

Property Type:  DWELLING ONLY - 2 FAMILY

**CROSS REFERENCE DATA**

CRFN: 2004000555693

x  Additional  Cross References on Continuation  Page

**PARTIES**

| PARTY 1: | PARTY 2: |
|---|---|
| ALFRED DEL RIO | MERS INC |
| 5910 TYNDALL AVENUE | P O BOX 2026 |
| BRONX, NY  10471 | FLINT, MI  48501 |

x  Additional  Parties Listed on Continuation  Page

**FEES AND TAXES**

| Mortgage | | Filing Fee | |
|---|---|---|---|
| Mortgage Amount | $  536,000.00 | | $  0.00 |
| Taxable Mortgage Amount: | $  0.00 | NYC Real Property Transfer Tax: | |
| Exemption | 255 | | $  0.00 |
| TAXES:  County (Basic). | $  0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional) | $  0 00 | | $  0.00 |
| Spec (Additional): | $  0.00 | | |
| TASF | $  0.00 | | |
| MTA. | $  0.00 | | |
| NYCTA | $  0.00 | | |
| Additional MRT: | $  0.00 | | |
| TOTAL | $  0.00 | | |
| Recording Fee: | $  157.00 | | |
| Affidavit Fee: | $  8.00 | | |

**RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK**

Recorded/Filed     04-25-2007 10:38
City Register File No (CRFN):
**2007000213374**

*Annette M Hill*

**City Register Official Signature**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2007031401532002001C91FC

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | **PAGE 2 OF 26** |
|---|---|---|
| Document ID: 2007031401532002 | Document Date: 02-13-2007 | Preparation Date: 03-14-2007 |
| Document Type: AGREEMENT | | |

**CROSS REFERENCE DATA**
Document ID: 2007031401532001

**PARTIES**
**PARTY 1:**
OLIVIA DEL RIO
5910 TYNDALL AVENUE
BRONX, NY 10471

RECORD AND RETURN TO:

**Countrywide Home Loans, Inc.**
MS SV-79 Document Processing
P O Box 10423
Van Nuys, CA 91410-0423

 *17258B*

_____[Space Above This Line For Recording Data]_____

### CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT

WORDS USED OFTEN IN THIS DOCUMENT

(A) **"Agreement."** This document, which is dated 13th day of February, 2007, and exhibits and riders attached to this document will be called the "Agreement "

(B) **"Borrower." Alfred Del Rio and Olivia Del Rio** will be called "Borrower" and sometimes "I" or "me " Borrower's address is 5910 Tyndall Avenue, Bronx, New York 10471

(C) **"Lender."** Countrywide Home Loans, Inc will be called "Lender" and sometimes "Note Holder " Lender is a corporation or association which exists under the laws of California Lender's address is 4500 Park Granada, Calabasas, California 91302-1613

(D) **"Mortgages."** The mortgages, deeds of trust, or other security instruments and any additional security instruments and related agreements (such as assignments, extensions, modifications, or consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages "

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026 tel (888) 679-MERS **FOR THE PURPOSES OF RECORDING THIS AGREEMENT, MERS IS THE MORTGAGEE OF RECORD.**

(F) **"Note Holder."** Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder "

(G) **"Notes."** The Notes which are identified in Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes "

(H) **"Property."** The property which is described in the Mortgage(s) and in Exhibit B (Property Description) to this Agreement, will be called the "Property " The Property is located at

| 5910 Tyndall Avenue | | |
|---|---|---|
| [Street] | | |
| Bronx | New York | 10471 |
| [City] | [State] | [Zip Code] |

I promise and I agree with Lender as follows

**I.  BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES**

I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me The total unpaid principal balance of the Notes is U S. $536,000 00, of this amount, U S $146,632 33 was advanced to me (or for my account) immediately prior to this consolidation

NEW YORK CONSOLIDATION EXTENSION AND MODIFICATION AGREEMENT--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3172 1/01 (rev 5/01)

## II.   AGREEMENT TO COMBINE NOTES AND MORTGAGES

(A)  By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement This combining of notes and mortgages is known as a "Consolidation "

(B)  In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following

> Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages -- including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages -- have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A  This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement  The combining of notes and mortgages is known as a "Consolidation "

## III.   AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE

Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C  The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder  I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note  The Consolidated Note will supersede all terms, covenants, and provisions of the Notes

## IV.   AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE

Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D  The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property  I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages

## V.   NO SET-OFF, DEFENSES

I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage

## VI.   BORROWER'S INTEREST IN THE PROPERTY

I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages

## VII.   WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement

## VIII.   OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement  The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement  Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement  Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement

**EXHIBIT A**
(List of Mortgages, Notes, and Agreements)

(a)      The Mortgage given by Alfred Del Rio and Olivia Del Rio and dated June 7, 2004 in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Somerset Investors Corp., d/b/a Somerset Mortgage Bankers securing the original principal amount of U.S. $402,000.00  This Mortgage *is on a Fannie Mae/Freddie Mac Security Instrument* and was recorded on September 7, 2004, in the county of Bronx, State of New York, at CRFN #2004000555693  At this date, the unpaid principal balance secured by this Mortgage is U.S. $389,367.67.  This Mortgage secures a Note dated June 7, 2004   *MT Paid # 8, 211.00*

(b)      The Mortgage given by Alfred Del Rio and Olivia Del Rio and dated 13th day of February, 2007 in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Countrywide Home Loans, Inc. securing the original principal amount of U.S. $146,632.33.  At this date, the unpaid principal balance secured by this Mortgage is U.S. $146,632.33  This Mortgage *is on a Fannie Mae/Freddie Mac Security Instrument* and will be recorded together with this Agreement  This mortgage secures a note dated February 13, 2007   *MT paid # 3/58.55*

*Now due and owing*
*# 536, 800. 00*

Exhibit B

# BELLE ABSTRACT CORP.

Title No. 0702330230000896  BELLE-17258B

## SCHEDULE A

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Bronx, City and State of New York, more particularly bounded and described as follows:

BEGINNING at a point on the Easterly side of Tyndall Avenue, distant 125 feet Northerly from the corner formed by the intersection of the Easterly side of Tyndall Street with the Northerly side of West 259th Street;

THENCE Northerly along the Easterly side of Tyndall Avenue, 30 feet;

THENCE Easterly parallel with the Northerly side of West 259th Street, 95 feet;

THENCE Southerly parallel with the Easterly side of Tyndall Avenue, 30 feet;

THENCE Westerly parallel with the Northerly side of West 259th Street, 95 feet to the point or place of BEGINNING.

SUBJECT to a driveway easement or right of way for pedestrian and private motor vehicles over the most Southerly four feet of the premises hereinabove described Together with the benefits of a driveway easement for pedestrian and private motor vehicles over the most Northerly four feet of the premises adjoining on the South.

FOR
CONVEYANCING
ONLY

The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.

TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.

Prepared by MARCO ORTIZ

*Exhibit C*

LOAN #: ▮▮▮▮8283

# NOTE

CONSOLIDATED NOTE:  This Note amends and restates in their entirety, and is given in
substitution for, the Notes described in Exhibit A of the New York Consolidation,
Extension, and Modification Agreement dated the same date as this Note

| FEBRUARY 13, 2007 | FOREST HILLS | NEW YORK |
|---|---|---|
| [Date] | [City] | [State] |

5910 TYNDALL AVENUE, BRONX, NY 10471
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U S $ 536,000.00      (this amount is called "Principal"),
plus interest, to the order of the Lender  The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order

I understand that the Lender may transfer this Note  The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder "

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid  I will pay interest at a yearly
rate of     6.875 %
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month

I will make my monthly payment on the  FIRST      day of each month beginning on
APRIL 01, 2007      I will make these payments every month until I have paid all of the principal and interest and
any other charges described below that I may owe under this Note  Each monthly payment will be applied as of its scheduled
due date and will be applied to interest before Principal  If, on  MARCH 01, 2037      , I still owe amounts under this
Note, I will pay those amounts in full on that date, which is called the "Maturity Date "

I will make my monthly payments at
P O  Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U S. $ 3,521.14

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due  A payment of Principal only is known as a
"Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so  I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge  The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note  However, the Note Holder may apply my Prepayment
to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of
the Note  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment
unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other
loan charges collected or to be collected in connection with this loan exceed the permitted limits, then  (a) any such loan charge
shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from
me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the
Principal I owe under this Note or by making a direct payment to me  If a refund reduces Principal, the reduction will be treated
as a partial Prepayment.

**NEW YORK FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

Initials 𝒪𝒟𝑅

VMP MORTGAGE FORMS - (800)521-7291

VMP®-5N(NY) (0005) 01  CHL (09/02)(d)      Page 1 of 2      Form 3233 1/01





8283000002605N

LOAN #: [        ]8283

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)  _____ (Seal)
ALFRED DEL RIO                    -Borrower   OLIVIA DEL RIO                    -Borrower

_____ (Seal)  _____ (Seal)
                                  -Borrower                                    -Borrower

*[Sign Original Only]*

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
MARCO ORTIZ


EXHIBIT D CONSOLIDATED

——————————— [Space Above This Line For Recording Data] ———————————

▓▓▓ 828302007
(Doc To #)

EXHIBIT D CONSOLIDATED

# MORTGAGE
MIN ▓▓▓▓6412-1


## WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated   FEBRUARY 13, 2007   , together with all Riders to this document, will be called the "Security Instrument"
(B) "Borrower."
ALFRED DEL RIO, AND OLIVIA DEL RIO


whose address is
5910 TYNDALL AVENUE, BRONX, NY 10471
sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**
(D) "Lender."
COUNTRYWIDE HOME LOANS, INC
will be called "Lender." Lender is a
CORPORATION                                                              which exists
under the laws of NEW YORK            Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(E) "Note." The note signed by Borrower and dated  FEBRUARY 13, 2007   , will be called the "Note."
The Note shows that I owe Lender
FIVE HUNDRED THIRTY SIX THOUSAND and 00/100

Dollars (U.S. $ 536,000.00          ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by MARCH 01, 2037

Section _____ Block: _____ Lot _____ Unit _____

NEW YORK- Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Page 1 of 13
-6A(NY) (0508)    CHL (08/05)(d)   VMP Mortgage Solutions, Inc (800)521-7291
CONV/VA                                                           Form 3033 1/01



8283000002006A

DOC ID #: ████████628302007

(F) **"Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."
THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO
FAMILY RESIDENCE OR DWELLING ONLY.

(G) **"Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) **"Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."
(I) **"Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable].

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) **"Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."
(K) **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."
(L) **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) **"Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."
(N) **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."
(O) **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."
(Q) **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**
I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to
(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;
(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and
(C) Keep all of my other promises and agreements under this Security Instrument and the Note.
I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:
(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and
(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

DOC ID #: ████████828302007

## DESCRIPTION OF THE PROPERTY

I give MERS rights in the Property described in (A) through (G) below.

(A) The Property which is located at

5910 TYNDALL AVENUE
                                    [Street]
BRONX                              [City, Town or Village], New York
10471       [Zip Code]. This Property is in  BRONX              County

It has the following legal description:

As per legal description attached hereto and made a part hereof. Being
the same premises conveyed to the mortgagor(s) herein by deed from Diana
McGonnell, dated 12/17/97 recorded 2/18/98 in Reel 1530 page 104.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section,

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property,"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section,

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section,

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that (A) I lawfully own the Property, (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either

DOC ID #.  ███████28302007

apply such funds or return them to me  In the event of foreclosure, any unapplied funds will be applied to the
outstanding principal balance immediately prior to foreclosure  No offset or claim which I might have now or
in the future against Lender will relieve me from making payments due under the Note and this Security
Instrument or keeping all of my other promises and agreements secured by this Security Instrument

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this
Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following
order·

First, to pay interest due under the Note,

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument

Such payments will be applied to each Periodic Payment in the order in which it became due

Any remaining amounts will be applied as follows:

First, to pay any late charges,

Next, to pay any other amounts due under this Security Instrument, and

Next, to reduce the principal balance of the Note

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to
pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge  If more
than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment
of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full, Next, to the
extent that any excess exists after the payment is applied to the full payment of one or more Periodic
Payments, such excess may be applied to any late charges due

Voluntary prepayments will be applied as follows: First, to any prepayment charges, and Next, as
described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the
Note will not extend or postpone the due date of the Periodic Payments or change the amount of those
payments

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and
other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the
Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in
Section 10 in the place of Mortgage Insurance  Each Periodic Payment will include an amount to be applied
toward payment of the following items which are called "Escrow Items "

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which
under Applicable Law may be superior to this Security Instrument as a Lien on the Property  Any claim,
demand or charge that is made against property because an obligation has not been fulfilled is known as
a "Lien,"

(2) The leasehold payments or ground rents on the Property (if any),

(3) The premium for any and all insurance required by Lender under Section 5 of this Security
Instrument,

(4) The premium for Mortgage Insurance (if any),

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of
the payment of the premium for Mortgage Insurance (if any), and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow
Items  The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual
amount required

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or
unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic
Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds," I
will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow
Funds for any or all Escrow Items  Lender may waive my obligation to pay to Lender Escrow Funds for any or
all Escrow Items at any time  Any such waiver must be in writing  In the event of such waiver, I will pay
directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds
has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such
payment within such time period as Lender may require. My obligation to make such payments and to provide
receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase
"promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow
Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that
amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender  Lender
may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section
15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in
amounts, that are then required under this Section 3

DOC ID #            828302007

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or

DOC ID #: ████ 828302007

amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless (a) it is not economically feasible to make the repairs or restoration, (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument, or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

DOC ID #: 828302007

**(h) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If (a) I do not keep my promises and agreements made in this Security Instrument, (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations), or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property, (b) securing and/or repairing the Property, (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument, (d) appearing in court, and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender, (b) such Mortgage Insurance is obtained, (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance, and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

DOC ID #. ████████ 828302007

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund, and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender

DOC ID #:          828302007

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments  Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so  Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future Even if, (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property (2) Lender accepts payments from third Persons, or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument  Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together  This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument, (b) that Person is not personally obligated to pay the Sums Secured, and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument  Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing  Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees  With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee  Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note)  If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing  Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means  Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise  The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address  If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure  There may be only one designated notice address under this Security Instrument at any one time  Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address  Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

DOC ID #:                    828302007

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument, (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders, (b) words in the singular mean and include the plural, and words in the plural mean and include the singular, and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument, (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

DOC ID #.                 829302007

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law, (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows.

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

DOC ID #:                    828302007

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund, and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property (check box as applicable).**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)
ALFRED DEL RIO                    -Borrower

_____ (Seal)
OLIVIA DEL RIO                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

STATE OF NEW YORK,

DOC ID #: ████████928302007
County ss. (Queens)

On the ___13___ day of ___Feb Jan___ _____ before me, the undersigned, a notary public in and for said state, personally appeared ____Nikola J China Belau_____

_____

_____

_____

_____

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Tax Map Information. 5868

SEAL

GEOEMO R BELLOCCO
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN NASSAU COUNTY
REG. #01BE6087374
COMM EXP FEB 18 20__

SEAL

# 1-4 FAMILY RIDER
## (Assignment of Rents)

After Recording Return To
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #:
5868

Prepared By
MARCO ORTIZ

 828302007
[Doc ID #]

THIS 1-4 FAMILY RIDER is made this THIRTEENTH       day of FEBRUARY, 2007
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at
5910 TYNDALL AVENUE
BRONX, NY 10471
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-57R (0401) 01     CHL (06/04)(d)      Page 1 of 3
                   VMP Mortgage Solutions, Inc  (800)521-7291

Initials ___ 	

Form 3170 1/01





DOC ID #: [          ] 828302007

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument, building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument, (ii) Lender shall be entitled to collect and receive all of the Rents of the Property, (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant, (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and

Initials_ *[handwritten]*

🔵-57R (0401) 01  CHL (06/04)          Page 2 of 3          Form 3170 1/01

DOC ID #:                 828302007

maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument, (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender, This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider

_____(Seal)
ALFRED DEL RIO                        - Borrower

_____(Seal)
OLIVIA DEL RIO                        - Borrower

_____(Seal)
                                      - Borrower

_____(Seal)
                                      - Borrower

-57R (0401) 01 CHL (06/04)      Page 3 of 3              Form 3170 1/01

**IX.   LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law  This means that I will   (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund," and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose.  The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX

**X.   TYPE OF PROPERTY**

Check box(es) as applicable

[ Ĵ ]     This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities

[x]       This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling

[ ]       This Agreement does not cover real property improved as described above

By signing this Agreement, Lender and I agree to all of the above

_____          _____
Countrywide Home Loans, Inc  - Lender                  Alfred Del Rio- Borrower

By._____         _____
Marco Ortiz · Operations Manager                        Olivia Del Rio- Borrower


_____          _____
Mortgage Electronic Registration Systems, Inc  -
Mortgagee

By  _____         _____
Marco Ortiz – Operations Manager

_____[Space Below This Line For Acknowledgment]_____

STATE OF NEW YORK    )
                     ) SS:
COUNTY OF QUEENS     )

On the 13th day of February, 2007, before me, the undersigned, a notary public in and for said State, personally appeared Alfred Del Rio and Olivia Del Rio, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

```
NICODEMO R BELLOCCO
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN NASSAU COUNTY
REG. #01BE6087374
MY COMM. EXP. FEB. 18 20XX
```

STATE OF NEW YORK    )
                     ) SS:
COUNTY OF QUEENS     )

On the 13th day of February, 2007, before me, the undersigned, a notary public in and for said State, personally appeared Marco Ortiz, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

```
KEIR ... ... SCOLD
NOTARY P...        ... e of New York
                   ... 2C68-2
Qua... ... ... ... ss County
Commission Expires ... nuary 11, 20__
```

Acknowledgment by a Person Outside New York State (RPL § 309-b)

STATE OF _____ ), COUNTY OF _____

On the _____ day of _____ in the year _____ before me, the undersigned, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual(s) made such appearance before the undersigned in _____ (insert the city or other political subdivision and the state or country or other place the acknowledgment was taken).

_____
(signature and office of individual taking acknowledgment)

```
BELLE
ABSTRACT CORP.
TELEPHONE (888) 635-0200
```

NEW YORK CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3172
1/01 (rev 5/01)

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2007031401532002001S5DFD

| SUPPORTING DOCUMENT COVER PAGE | | PAGE 1 OF 1 |
|---|---|---|
| **Document ID: 2007031401532002** | Document Date: 02-13-2007 | Preparation Date: 03-14-2007 |
| Document Type: AGREEMENT | | |

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT                                                        2

**AFFIDAVIT UNDER SECTION 255 OF ARTICLE II OF THE TAX**
**LAW OF THE STATE OF NEW YORK**
(Agreement of Consolidation and Modification of Mortgage)

*17258B*

STATE OF NEW YORK )
COUNTY OF QUEENS) SS

The Undersigned (the "**Deponent(s)**"), being duly sworn, deposes and says

(1)  The Deponent(s) are the holders of a fee interest in the premises commonly known as 5910 Tyndall Avenue, Bronx, New York 10471 (the "**Premises**") more particularly described in a mortgage of even date herewith, and the undersigned is fully familiar with the facts and circumstances herein  The Premises is encumbered by the following mortgages (collectively, the "**Existing Mortgage**")

This Mortgage consolidates, amends and restates in their entirety the following mortgages.

(a )  The Mortgage given by Alfred Del Rio and Olivia Del Rio and dated June 7, 2004 in favor of Mortgage Electronic Registration Systems, Inc  as nominee for Somerset Investors Corp , d/b/a Somerset Mortgage Bankers securing the original principal amount of U S  $402,000 00  This Mortgage *is on a Fannie Mae/Freddie Mac Security Instrument* and was recorded on September 7, 2004, in the county of Bronx, State of New York, at CRFN #2004000555693  At this date, the unpaid principal balance secured by this Mortgage is U S  $389,367 67  This Mortgage secures a Note dated June 7, 2004

That all mortgage tax of $ 🖉🖉*II* *00* on the Existing Mortgage was duly paid upon the recordation thereof

(b )  Borrower has delivered to Mortgage Electronic Registration Systems, Inc  as nominee for Countrywide Home Loans, Inc  a mortgage creating a new lien securing a new indebtedness in the amount of One Hundred Forty-Six Thousand Six Hundred Thirty-Two Dollars and Thirty-Three Cents ($146,632 33) Dollars (the "**New Mortgage**")  The New Mortgage is being presented for recording concurrently herewith and the mortgage tax in the amount of ~~$3,159.25~~ is being paid concurrently herewith
                                                        *3158.55*

(2)  There is offered for recording simultaneously herewith an Agreement of Consolidation, Extension and Modification of Mortgage (the "**Agreement**"), between Alfred Del Rio and Olivia Del Rio as Mortgagor and Mortgage Electronic Registration Systems, Inc  as nominee for Countrywide Home Loans, Inc  as Mortgagee dated 13th day of February, 2007 which consolidates the unpaid principal balance of the Existing Mortgage and the New Mortgage into a single first mortgage lien of Five Hundred Thirty-Six Thousand Dollars and No Cents ($536,000 00) Dollars now due and owing

(3)  The Agreement does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by, or which under any contingency may be secured by, the Existing Mortgage and the New Mortgage in the amount of $146,632 33

WHEREFORE, your deponent(s) respectfully requests that the Agreement be declared exempt from taxation pursuant to the provisions of Section 255 of Article II of the Tax Law of the State of New York and that the Bronx County Clerk to record the attached Consolidation, Extension and Modification Agreement without payment of any mortgage tax pursuant to the provisions of Section 255 of Article II of the tax law except the sum of $3,169.26 $ 3,158.55

By_____
Alfred Del Rio

By_____
Olivia Del Rio


STATE OF NEW YORK        )
                         ) SS
COUNTY OF QUEENS         )

On this 13th day of February, 2007, before me, the undersigned, a Notary Public in and for the State of New York, personally appeared Alfred Del Rio and Olivia Del Rio, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

_____
Notary Public

NICODEMO R. BELLOCCO
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN NASSAU COUNTY
REG #01BE6087374
COMM EXP FEB 18 20__

SEAL

**AFFIDAVIT UNDER SECTION 255 OF ARTICLE II OF THE TAX**
**LAW OF THE STATE OF NEW YORK**
(Agreement of Consolidation and Modification of Mortgage)

*17258B*

STATE OF NEW YORK )
COUNTY OF QUEENS) SS

The Undersigned (the "**Deponent(s)**"), being duly sworn, deposes and says

(1) The Deponent(s) are the holders of a fee interest in the premises commonly known as 5910 Tyndall Avenue, Bronx, New York 10471 (the "**Premises**") more particularly described in a mortgage of even date herewith, and the undersigned is fully familiar with the facts and circumstances herein. The Premises is encumbered by the following mortgages (collectively, the "**Existing Mortgage**")

This Mortgage consolidates, amends and restates in their entirety the following mortgages

(a) The Mortgage given by Alfred Del Rio and Olivia Del Rio and dated June 7, 2004 in favor of Mortgage Electronic Registration Systems, Inc as nominee for Somerset Investors Corp , d/b/a Somerset Mortgage Bankers securing the original principal amount of U S $402,000 00 This Mortgage *is on a Fannie Mae/Freddie Mac Security Instrument* and was recorded on September 7, 2004, in the county of Bronx, State of New York, at CRFN #2004000555693 At this date, the unpaid principal balance secured by this Mortgage is U S $389,367 67 This Mortgage secures a Note dated June 7, 2004

That all mortgage tax of $ 8,211.00 on the Existing Mortgage was duly paid upon the recordation thereof

(b) Borrower has delivered to Mortgage Electronic Registration Systems, Inc as nominee for Countrywide Home Loans, Inc a mortgage creating a new lien securing a new indebtedness in the amount of One Hundred Forty-Six Thousand Six Hundred Thirty-Two Dollars and Thirty-Three Cents ($146,632 33) Dollars (the "**New Mortgage**") The New Mortgage is being presented for recording concurrently herewith and the mortgage tax in the amount of $3,159 25 is being paid concurrently herewith

(2) There is offered for recording simultaneously herewith an Agreement of Consolidation, Extension and Modification of Mortgage (the "**Agreement**"), between Alfred Del Rio and Olivia Del Rio as Mortgagor and Mortgage Electronic Registration Systems, Inc as nominee for Countrywide Home Loans, Inc as Mortgagee dated 13th day of February, 2007 which consolidates the unpaid principal balance of the Existing Mortgage and the New Mortgage into a single first mortgage lien of Five Hundred Thirty-Six Thousand Dollars and No Cents ($536,000 00) Dollars now due and owing

(3) The Agreement does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by, or which under any contingency may be secured by, the Existing Mortgage and the New Mortgage in the amount of $146,632 33

WHEREFORE, your deponent(s) respectfully requests that the Agreement be declared exempt from taxation pursuant to the provisions of Section 255 of Article II of the Tax Law of the State of New York and that the Bronx County Clerk to record the attached Consolidation, Extension and Modification Agreement without payment of any mortgage tax pursuant to the provisions of Section 255 of Article II of the tax law except the sum of $3,159.26  $3,158.55

By _____
Alfred Del Rio

By _____
Olivia Del Rio


STATE OF NEW YORK          )
                           ) SS
COUNTY OF QUEENS           )

On this 13th day of February, 2007, before me, the undersigned, a Notary Public in and for the State of New York, personally appeared Alfred Del Rio and Olivia Del Rio, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

_____
Notary Public

SEAL

NICODEMO R BELLOCCO
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED 'N NASSAU COUNTY
REG #01BE6067374
MY COMM EXP FEB 18 20

3 2262

RECORD & RETURN TO                                    **BLOCK:5868**
Frenkel, Lambert, Weiss, Weisman & Gordon, LLP        **LOT:656**
20 West Main Street                                   **COUNTY: Bronx**
Bay Shore, New York 11706

## ASSIGNMENT OF MORTGAGE

Know that **Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc.** ("Assignor"), having a place of business at c/o Bank of America, N.A., 100 North Tryon Street, Charlotte, NC 28255, in consideration of TEN DOLLARS ($10 00) and other good and valuable consideration paid by **The Bank of New York Mellon, for the Certificateholders Alternative Loan Trust 2007-11T1 Mortgage Pass-Through Certificates, Series 2007-11T1 Pass-Through Certificates, Series 2007-11T1,** ("Assignee"), having a place of business at c/o Bank of America, N.A., 100 North Tryon Street, Charlotte, NC 28255, does hereby grant, bargain, sell, assign, transfer, and convey unto the Assignee the following described Mortgage or Deed of Trust duly recorded in the office of real property records in the County of Bronx, for the premises known as 5910 Tyndall Avenue, Bronx, NY 10471, together with the indebtedness or obligation described in said instrument, and the monies due and to grow due thereon with the interest, as follows

MORTGAGOR:     Alfred Del Rio and Olivia Del Rio
MORTGAGEE:     Mortgage Electronic Registration Systems, Inc., acting solely as a nominee
               for Somerset Investors Corp. dba Somerset Mortgage Bankers
AMOUNT.        402,000.00
DATE           June 7, 2004
RECORDED:      September 7, 2004
CRFN.          2004000555693

Thereafter, the note and mortgage were assigned to Mortgage Electronic Registration Systems, Inc. as nominee for Countrywide Home Loans, Inc by a correction assignment which is in the process of being recorded. Thereafter, a second note and mortgage were executed by the mortgagors, dated February 13, 2007, recorded on April 25, 2007 in CRFN 2007000213373, in the amount of $146,632.33, which was consolidated with the original note and mortgage pursuant to the terms of a Consolidation, Extension and Modification Agreement dated February 13, 2007, recorded on April 25, 2007 in CRFN 2007000213374, which created a single lien in the amount of $536,000 00.

**This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.**

To have and to hold the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

In Witness whereof, the Assignor has hereunto set her/his hand this 16TH day of _AUGUST_, 2009

IN PRESENCE OF:                        Mortgage Electronic Registration Systems, Inc, as
                                       nominee for Countrywide Home Loans, Inc

                                       BY:_____
                                       Aaron Formby-Asst. Vice President
                                       Officer of MERS

STATE OF **Texas** )
                  **Tarrant** ) SS.:
COUNTY OF )

      On the 16TH day of AUGUST_____, in the year 2009, before me, the undersigned, personally appeared __Aaron Formby_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument and that such individual made such appearance before the undersigned in __Tarrant_____ County.

_____
Notary Public

**Our file No.:** 32262

KEVIN A JONES
Notary Public, State of Texas
My Commission Expires
March 07, 2012





## SCHEDULE "A"

**Address:**
5910 TYNDALL AVENUE
BRONX NY 10471

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE BOROUGH AND
COUNTY OF BRONX, CITY AND STATE OF NEW YORK, MORE PARTICULARLY BOUNDED
AND DESCRIBED AS FOLLOWS:

BEGINNING AT POINT ON THE EASTERLY SIDE OF TYNDALL AVENUE, DISTANT 125 FEET
NORTHERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE EASTERLY SIDE
OF TYNDALL AVENUE WITH THE NORTHERLY SIDE OF WEST 29TH STREET;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF TYNDALL AVENUE, 30 FEET;

THENCE EASTERLY PARALLEL WITH THE NORTHERLY SIDE OF WEST 259TH STREET 95
FEET;

THENCE SOUTHERLY PARALLEL WITH THE EASTERLY SIDE OF TYNDALL AVENUE 30 FEET;

THENCE WESTERLY PARALLEL WITH THE NORTHERLY SIDE OF WEST 259TH STREET 95
FEET TO THE POINT OR PLACE OF BEGINNING.

SUBJECT TO A DRIVEWAY EASEMENT OR RIGHT OF WAY FOR PEDESTRIAN AND PRIVATE
MOTOR VEHICLES OVER THE MOST SOUTHERLY FOUR FEET OF THE PREMISES
HEREINABOVE DESCRIBED. TOGETHER WITH THE BENEFITS OF A DRIVEWAY EASEMENT
FOR PEDESTRIAN AND PRIVATE MOTOR VEHICLES OVER THE MOST NORTHERLY FOUR
FEET OF THE PREMISES ADJOINING ON THE SOUTH.

Case 1:19-cv-10312-VSB   Document 42-1   Filed 02/18/20   Page 89 of 184

Title No: 5198-

COUNTY CLERK SEARCH( 6/25/2009 ) SPECIAL NAME SEARCH

Last Name: ( delrio )
First Name: ( alfred )
COUNTY: ( BRONX )

Run Date: 01/01/1999 To: 6/25/2009
************************************************************

JUDGMENTS -

Bronx County from ( 08/90 to 06/24/09 )

Search Parameters- Last:delrio      First:alfred

Judgment - Run Only

Block:      Lot:                           Control No. 001073156-01
Book Type -- Judgments Docket              Index # 002656072001
Judgment Type: TRANSCRIPT OF JUDGMENT      Effective Date: 09/25/2008
Court: Criminal Court                      Expiration Date: 09/26/2028
                                           Docket Date:09/26/2008
Debtor Info:
DELRIO, ALFREDO
710   COMMONWEALTH AVE APT
BRONX              10473-0340

Creditor Info:
CRIMINAL COURT OF THE CITY OF NEW YORK
215   E 161 ST
BRONX              10451-

Attorney:
DISTRICT ATTORNEY OF BRONX COUNTY
215   EAST 161 STREET
BRONX              10451-

Amount: $25.00
-----------------------------------------------------------
END RETURNS
************************************************************

JUDGMENTS -

Bronx County from ( 08/90 to 06/24/09 )

Search Parameters- Last:delrio      First:alfred

Hospital Liens - Run Only

END RETURNS
************************************************************

(Environmental Control Board (Fire and Building) - Ending Date 04/30/09)

Search Parameters- Last:delrio      First:alfred

## CERTIFICATION BY ATTORNEY

Nicole E. Schiavo, an attorney duly admitted to practice law before the Courts of the State of New York, an associate with the firm of Frenkel, Lambert, Weiss, Weisman, & Gordon, LLP, attorneys for the Plaintiff herein, pursuant to Uniform Rule Section 130-1.1-a, states as follows:

     1.     I hereby certify, under the penalty of perjury and as an officer of the Court, that, to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the within paper or the contentions therein are not frivolous as defined in subsection (c) of section 130-1.1, including that the substance of the factual statements therein are not false.

Dated: Bay Shore, New York
      August 20, 2009

                    Frenkel, Lambert, Weiss, Weisman, & Gordon, LLP

                    Nicole E. Schiavo
                    Attorneys for Plaintiff
                    20 West Main Street
                    Bay Shore, New York 11706
                    (631) 969-3100
                    Our File No.:  32262

# Help for Homeowners in Foreclosure

New York State Law requires that we send you this notice about the foreclosure process. Please read it carefully.

## Summons and Complaint

You are in danger of losing your home. If you fail to respond to the summons and complaint in this foreclosure action, you may lose your home. Please read the summons and complaint carefully. You should immediately contact an attorney or your local legal aid office to obtain advice on how to protect yourself.

## Sources of Information and Assistance

The State encourages you to become informed about your options in foreclosure. In addition to seeking assistance from an attorney or legal aid office, there are government agencies and non-profit organizations that you may contact for information about possible options, including trying to work with your lender during this process.

To locate an entity near you, you may call the toll free helpline maintained by the New York State Banking Department at 1-877-BANK-NYS (1-877-226-5697) or visit the Department's website at http://www.banking.state.ny.us.

## Foreclosure Rescue Scams

Be careful of people who approach you with offers to "save" your home. There are individuals who watch for notices of foreclosure actions in order to unfairly profit from a homeowner's distress. You should be extremely careful about any such promises and any suggestions that you pay them a fee or sign over your deed. State law requires anyone offering such services for profit to enter into a contract which fully describes the services they will perform and fees they will charge, and which prohibits them from taking any money from you until they have completed all such promised services.

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
--------------------------------------------------------------------------------x
The Bank of New York Mellon, for the  Certificateholders
Alternative Loan Trust 2007-11T1 Mortgage Pass-Through
Certificates, Series 2007-11T1 Pass-Through Certificates, Series
2007-11T1,

                                        Plaintiff,          **AMENDED
                                                            COMPLAINT**

            -against-

Alfred Del Rio, Olivia Del Rio, Mortgage Electronic Registration
Systems, Inc., acting solely as a nominee for Countrywide Bank, NA,
its successors and assigns, Criminal Court of the City of New York,
New York City Environmental Control Board, New York City
Parking Violations Bureau, New York City Transit Adjudication
Bureau, and "JOHN DOE #1" through "JOHN DOE #10", the last ten
names being fictitious and unknown to the plaintiff, the person or
parties intended being the persons or parties, if any, having or
claiming an interest in or lien upon the Mortgage premises described
in the Complaint,

                                        Defendants.
--------------------------------------------------------------------------------x

        The plaintiff, by its attorneys, Frenkel, Lambert, Weiss, Weisman, & Gordon, LLP,
complaining of the defendants herein allege, upon information and belief, as follows:

                        **AS A FIRST CAUSE OF ACTION**

1.      That the plaintiff, The Bank of New York Mellon, for the  Certificateholders Alternative
Loan Trust 2007-11T1 Mortgage Pass-Through Certificates, Series 2007-11T1 Pass-Through
Certificates, Series 2007-11T1, at all times hereinafter mentioned was and still is a  foreign
corporation with offices at c/o Bank of America, N.A., 100 North Tryon Street, Charlotte, NC 28255.

2.      On or about June 7, 2004,  the defendants, Alfred Del Rio and Olivia Del Rio (hereinafter
"mortgagors"), executed and delivered to Somerset Investors Corp. dba Somerset Mortgage Bankers
a note dated June 7, 2004 whereby the mortgagors promised to pay the principal sum of $402,000.00.

3.      On or about June 7, 2004, the mortgagors executed and delivered to Mortgage Electronic
Registration Systems, Inc., acting solely as a nominee for Somerset Investors Corp. dba Somerset
Mortgage Bankers a mortgage (hereinafter "mortgage") in the principal sum of  $402,000.00, with
interest, mortgaging the premises known as 5910 Tyndall Avenue, Bronx, NY 10471 (hereinafter

"premises") as collateral security for the note. The mortgaged premises are more fully described in **Exhibit "A"** annexed hereto. The Mortgage was duly recorded in the Office of the Clerk of the County of Bronx on September 7, 2004 in CRFN 2004000555693 and the recording tax was duly paid.

4.      A second note and mortgage were executed by the mortgagor dated February 13, 2007, recorded on April 25, 2007 in CRFN 2007000213373 in the amount of $146,632.33, which was consolidated with the original note and mortgage pursuant to the terms of a Consolidation, Extension and Modification Agreement dated February 13, 2007, recorded on April 25, 2007 in CRFN 2007000213374, which created a single lien in the amount of $536,000.00.

5.      Thereafter, the note and mortgage were assigned to The Bank of New York Mellon, for the Certificateholders Alternative Loan Trust 2007-11T1 Mortgage Pass-Through Certificates, Series 2007-11T1 Pass-Through Certificates, Series 2007-11T1 by an assignment which is in the process of being recorded. A copy of the mortgages and assignment is annexed hereto as **Exhibit "B"**.

5.      Pursuant to the note, the mortgagors promised to make consecutive monthly payments of principal and interest each month, in accordance with the terms of the note, commencing August 1, 2004 and on the first day of each succeeding month up to and including July 1, 2034 when the entire principal amount and accrued interest shall be due and payable.

6.      Pursuant to the mortgage, the mortgagors promised to pay, in addition to principal and interest, all amounts necessary to pay for taxes, assessments, leasehold payments or ground rents (if any), hazard insurance and mortgage insurance.

7.      The Mortgage further provides that in case of default in the payment of any principal or interest or any other terms, covenants or conditions of the Mortgage, the holder of the Mortgage could declare the entire indebtedness secured by the Mortgage immediately due and payable, and the holder of the Mortgage is empowered to sell the mortgaged premises according to law.

8.      The mortgagors failed to comply with the terms, covenants and conditions of said Note and Mortgage by failing and omitting to pay, to the plaintiff, payments due on October 1, 2008 and said default has continued for a period in excess of fifteen (15) days.

9.      Pursuant to the terms of the note and mortgage, the plaintiff has elected and does hereby elect to declare the entire principal balance to be due and owing.

10.     That there is now due and owing to the plaintiff under said Note and Mortgage the principal sum of $527,487.44 with interest thereon from September 1, 2008, plus late charges and advances made by the plaintiff on behalf of the defendants and any other charges due and owing pursuant to the terms of the Note and Mortgage.

11.     The note provides that in the event any installment shall become overdue for a period in excess of 15 days, a late charge on the overdue sum may be charged for the purpose of defraying the expense in handling such delinquent payment.

12.     Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made by reason of payment after the date of commencement of this action of any or all of the defaults mentioned herein, and such election shall continue and remain effective.

13.     In order to protect its security, the plaintiff may be compelled, during the pendency of this action, to pay sums for premiums on insurance policies, real estate taxes, assessments, water charges and sewer rents which are or may become liens on the Mortgage premises, and other charges which may be necessary for the protection of the Mortgage premises, and the plaintiff pays that any sum or sums so paid, together with interest from the date of payments, shall be added to the plaintiff's claim and be deemed secured by said Note and Mortgage and adjudged a valid lien on the mortgaged premises, and that the plaintiff be paid such sums, together with interest thereon, out of the proceeds of the sale of the mortgaged premises.

14.     The defendants, Alfred Del Rio and Olivia Del Rio, are named as party defendants to this action because they are the record owners of the subject premises, original mortgagors and the parties liable for payment of the mortgage debt.

15.     The defendant, Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for Countrywide Bank, NA, its successors and assigns, is made a party defendant to this action because it is the holder of a subordinate Mortgage on the subject premises. Said mortgage is dated July 13, 2006, recorded August 10, 2006, in CRFN 2006000452850 to secure payment of the principal sum of $50,000.00.

16.     The defendant, Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for Countrywide Bank, NA, its successors and assigns, is made a party defendant to this action because it is the holder of a subordinate Mortgage on the subject premises. Said mortgage is dated February 13, 2007, recorded April 25, 2007, in CRFN 2007000213375 to secure payment of the principal sum of $50,000.00.

17.     The defendant, Criminal Court of the City of New York, is made a party defendant to this action because it is the holder of Judgment(s) against the property being foreclosed herein.

18.     The defendant, New York City Parking Violations Bureau, is made a party defendant to this action because it is the holder of Judgment(s) against the property being foreclosed herein.

19.     The defendant, New York City Environmental Control Board, is made a party defendant to this action because it is the holder of a Judgment(s) against the property being foreclosed herein.

20.     The defendant, New York City Transit Adjudication Bureau, is made a party defendant to this action because it is the holder of a Judgment(s) against the property being foreclosed herein.

21.     That each of the above named defendants have or claims to have, some interest in or lien upon the mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequent to the lien of plaintiff's Mortgage and is subject and subordinate thereto.

22.    That the plaintiff is now the sole, true and lawful owner of the said note and mortgage securing the same or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage and note and that there are no pending proceedings at law or otherwise to collect or enforce said note and mortgage.

23.    Plaintiff has complied with all of the provisions of Banking Law §595-a and any rules and regulations promulgated thereunder, Banking Law §§6-1 and 6-m and Real Property Actions and Proceedings Law §1304 unless exempt from doing so.

24.    The Mortgage provides that, in the case of foreclosure, the mortgaged premises may be sold in One parcel and that if the premises consists of more than one parcel, plaintiff respectfully requests that the judgment of foreclosure provide for the parcels to be sold as one parcel.

25.    The sale of the mortgaged premises under foreclosure herein is subject to any state of facts that an inspection of the premises would disclose, any state of facts an accurate survey would show, and to covenants, restrictions and easements, if any, of record affecting said Mortgage premises and any violation thereof, any equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale, prior mortgages and liens of record, if any, any rights of tenants or persons in possession of the subject premises, and to zoning regulations and ordinances of the city, town or village in which said Mortgage premises lies and any Violations thereof.

26.    In the event that the plaintiff possesses any other lien(s) against the mortgaged premises either by way of judgment, junior Mortgage or otherwise, plaintiff requests that such other lien(s) not be merged in plaintiff's cause(s) of action set forth in this Complaint, but that plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings.

27.    The defendant(s) named "JOHN DOE #1" though "JOHN DOE #10" may be persons or parties in possession of, having or claiming an interest in or lien on the premises.

## AS AND FOR A SECOND CAUSE OF ACTION

28.    The plaintiff repeats and realleges each and every allegation contained in paragraphs designated 1 through 27.

29.    The mortgage provides that in the event of default by the mortgagors, Alfred Del Rio and Olivia Del Rio, plaintiff may recover all costs, including reasonable attorneys' fees, disbursements, and allowances provided by law in bringing any action to protect its interest in the premises, including foreclosure of the mortgage.

WHEREFORE, the plaintiff demands judgment against the Defendant(s) as follows:

a)    That the defendants and all persons claiming under them or any of them, subsequent to the commencement of this action and to the filing of the Notice of Pendency of this action, may

be barred and foreclosed of all right, title, claim, lien and equity of redemption in the mortgaged premises;

b)      That the mortgaged premises be sold in One parcel according to law subject to any state of facts an accurate survey would show, any covenants, easements, encroachments, reservations, and restrictions, Violations and agreements of record, zoning regulations and ordinances of the city, town, or village; wherein the premises are located, any state of facts a physical inspection will disclose, rights of tenants and other persons in possession of the mortgaged premises, prior judgments, liens and mortgages of record and any and all rights of the United States of America to redeem the subject premises;

c)      That the premises be sold in accordance with Title 28, Section 2410 of the United State Code preserving all rights of redemption, if any, of the United States of America;

d)      That the monies received from the sale be brought into Court and that plaintiff be paid the amount adjudged to be due it with interest thereon to the time of such payment, together with late charges, any sums paid by the plaintiff for real estate taxes, assessments, water charges and sewer rents, insurance premiums, sums expended for the protection or preservation of the property, together with attorneys' fees as demanded in the second cause of action, the costs and disbursements of this action and any other necessary expenses to protect the lien of the Mortgage to the extent that the amount of such monies applicable thereto will pay the same;

e)      That this Court, if requested, appoint a receiver of the rents and profits of said premises, during the pendency of this action with the usual powers and duties;

f)      That the defendants, Alfred Del Rio and Olivia Del Rio, be adjudged to pay any deficiency which may remain after applying all of such monies as aforesaid in accordance with the law and provided that plaintiff have execution therefore;

g)      That in the event plaintiff possesses any other lien(s) against said mortgaged premises either by way of judgment, junior Mortgage or otherwise, plaintiff requests that such other lien(s) shall not be merged in plaintiff's cause(s) of action(s) set forth in the Complaint but that plaintiff shall be permitted to enforce said other lien(s) and/or seek determination or priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings;

h)      That plaintiff have such other and further relief in the mortgaged premises as may be just and equitable.

Dated:  Bay Shore, New York
        October 2, 2009


                                        Frenkel, Lambert, Weiss, Weisman, & Gordon, LLP

                                        By: _____
                                        Nicole E. Schiavo
                                        Attorneys for Plaintiff
                                        20 West Main Street
                                        Bay Shore, New York 11706
                                        (631) 969-3100
                                        Our File No.: 32262





## SCHEDULE "A"

**Address:**
5910 TYNDALL AVENUE
BRONX NY 10471

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE BOROUGH AND COUNTY OF BRONX, CITY AND STATE OF NEW YORK, MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT POINT ON THE EASTERLY SIDE OF TYNDALL AVENUE, DISTANT 125 FEET NORTHERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE EASTERLY SIDE OF TYNDALL AVENUE WITH THE NORTHERLY SIDE OF WEST 29TH STREET;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF TYNDALL AVENUE, 30 FEET;

THENCE EASTERLY PARALLEL WITH THE NORTHERLY SIDE OF WEST 259TH STREET 95 FEET;

THENCE SOUTHERLY PARALLEL WITH THE EASTERLY SIDE OF TYNDALL AVENUE 30 FEET;

THENCE WESTERLY PARALLEL WITH THE NORTHERLY SIDE OF WEST 259TH STREET 95 FEET TO THE POINT OR PLACE OF BEGINNING.

SUBJECT TO A DRIVEWAY EASEMENT OR RIGHT OF WAY FOR PEDESTRIAN AND PRIVATE MOTOR VEHICLES OVER THE MOST SOUTHERLY FOUR FEET OF THE PREMISES HEREINABOVE DESCRIBED. TOGETHER WITH THE BENEFITS OF A DRIVEWAY EASEMENT FOR PEDESTRIAN AND PRIVATE MOTOR VEHICLES OVER THE MOST NORTHERLY FOUR FEET OF THE PREMISES ADJOINING ON THE SOUTH.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2004070200830001001EB8D1

## RECORDING AND ENDORSEMENT COVER PAGE                    PAGE 1 OF 25

Document ID: 2004070200830001
Document Type: MORTGAGE
Document Page Count: 23

Document Date: 06-07-2004        Preparation Date: 07-02-2004

| PRESENTER: | RETURN TO: |
|---|---|
| RETRIEVER ABSTRACT, LLC. AS AGENT FOR UNITED GENERAL 81 SCUDDER AVE. NORTHPORT, NY 11768 631-754-1217 RET-U-1001038-B | SOMERSET MORTGAGE BANKERS 2001 MARCUS AVENUE LAKE SUCCESS, NY 11042 516-293-9172 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5868 | 656 | Entire Lot | 5910 TYNDALL AVENUE |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN _____  or  Document ID ___ ____  or  _____ Year ____ Reel ____ Page ____ or File Number ___

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| ALFRED DEL RIO 5910 TYNDALL AVENUE BRONX, NY 10471 | SOMERSET INVESTORS CORP. 2001 MARCUS AVENUE, SUITE N-218 LAKE SUCCESS, NY 11042 |

x  Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | |
|---|---|---|
| Mortgage Amount. | $ | 402,000.00 |
| Taxable Mortgage Amount: | $ | 402,000.00 |
| Exemption: | | |
| TAXES: County (Basic) | $ | 2,010.00 |
| City (Additional): | $ | 4,020.00 |
| Spec (Additional): | $ | 0.00 |
| TASF: | $ | 1,005.00 |
| MTA. | $ | 980.00 |
| NYCTA | $ | 0.00 |
| Additional MRT. | $ | 0.00 |
| TOTAL: | $ | 8,015.00 |

Recording Fee. $        152.00
Affidavit Fee.  $          0.00
NYC Real Property Transfer Tax Filing Fee:
                                $          0.00
NYS Real Estate Transfer Tax:
                                $          0.00

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        09-07-2004 12.03
City Register File No.(CRFN)
                            2004000555693

*Rochelle Patrice*

*City Register Official Signature*



2004070200830001001CBA51

RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)    PAGE 2 OF 25

**NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER**

**Document ID:** 2004070200830001     Document Date: 06-07-2004     Preparation Date 07-02-2004
Document Type: MORTGAGE

**PARTIES
MORTGAGER/BORROWER:**
OLIVIA DEL RIO
5910 TYNDAI L AVENUE
BRONX, NY 10471

**PARTIES
MORTGAGEE/LENDER:**
DBA SOMERSET MORTGAGE BANKERS
2001 MARCUS AVENUE
NORTH NEW HYDE PARK, NY 11040

After Recording Return To:
SOMERSET MORTGAGE BANKERS

2001 MARCUS AVE
LAKE SUCCESS, NY

RET-U-1001038-B

[Space Above This Line For Recording Data]

DEL RIO
LOAN #: ████349HQ
PIN #:
MIN: ███████42349

# MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
**(A) "Security Instrument."** This document, which is dated  JUNE 7, 2004                                    together
with all Riders to this document, will be called the "Security Instrument."
**(B) "Borrower."**  ALFRED DEL RIO AND OLIVIA DEL RIO

whose address is    5910 TYNDALL AVE, BRONX, NY 10471

sometimes will be called "Borrower" and sometimes simply "I" or "me."
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this
Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender."**    SOMERSET INVESTORS CORP. DBA SOMERSET MORTGAGE BANKERS

will be called "Lender." Lender is a corporation or association which exists under the laws of
NEW YORK                                      . Lender's address is    2001 MARCUS AVENUE
NORTH NEW HYDE PARK, NY 11040
**(E) "Note."** The note signed by Borrower and dated        JUNE 7, 2004            will be called the "Note."
The Note shows that I owe Lender
FOUR HUNDRED TWO THOUSAND AND 00/100
Dollars (U.S $     402,000.00                    ) plus interest and other amounts that may be payable. I have
promised to pay this debt in Periodic Payments and to pay the debt in full by    JULY 1, 2034               .
NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                         Form 3033 1/01
DOCUKNY1
DOCUKNY1.VTX 11/9/2002                              *(Page 1 of 15 pages)*

**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ 1-4 Family Rider | ☐ Other(s) [specify] | |

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant, and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

    (A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

    (B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

    (C) Keep all of my other promises and agreements under this Security Instrument and the Note.

NEW YORK--Single Family--Fannie Mac/Freddie Mac UNIFORM INSTRUMENT              Form 3033 1/01
DOCUKNY3
DOCUPGT2.VTX   10/18/2004            (Page 2 of 15 pages)

B49HQ

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Len der and Lender's successors and assigns) has the right:

    (A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

    (B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

## DESCRIPTION OF THE PROPERTY

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below

    (A) The Property which is located at ,   5910 TYNDALL AVE
                                          [Street]

    BRONX                               , New York    10471
      [City, Town or Village]                          [Zip Code]
    This Property is in   BRONX          County. It has the following legal description:

    (B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

    (C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

    (D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

    (E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

    (F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future, and

    (G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**NEW YORK**—Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                        **Form 3033 1/01**
DOCIRANY3  VTX  10/10/2007                          *(Page 3 of 15 pages)*

Title No.  RET U-1001038-B

SCHEDULE A – DESCRIPTION

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough and County of Bronx, City and State of New York, more particularly bounded and described as follows:

BEGINNING at point on the easterly side of Tyndall Avenue, distant 125 feet northerly from the corner formed by the intersection of the easterly side of Tyndall Avenue with the northerly side of West 259th Street;

THENCE northerly along the easterly side of Tyndall Avenue, 30 feet;

THENCE easterly parallel with the northerly side of West 259th Street 95 feet;

THENCE southerly parallel with the easterly side of Tyndall Avenue 30 feet;

THENCE westerly parallel with the northerly side of West 259th Street 95 feet to the point or place of BEGINNING.

SUBJECT to a driveway easement or right of way for pedestrian and private motor vehicles over the most southerly four feet of the premises hereinabove described.  Together with the benefits of a driveway easement for pedestrian and private motor vehicles over the most northerly four feet of the premises adjoining on the south.

**UNITED GENERAL TITLE INSURANCE COMPANY**
SCHEDULE A -- DESCRIPTION

## PLAIN LANGUAGE SECURITY INSTRUMENT                    ▆▆ 49HQ

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

### COVENANTS

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by. (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order.
First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges, and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim,

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
DOCUKNY4
DOCUKN1 VTX 10/10/2002                    *(Page 4 of 15 pages)*                    Form 3033 1/01

49HQ

demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations. Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds. Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

49RQ

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement, (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not

economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30- day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount no greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                           Form 3033 1/01
DOCUKNY.VTX  10/18/2002                              *(Page 7 of 15 pages)*

B49HQ

significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or amend that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect) Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
DOCUKNYR
DOCUKNYR VTX 10/18/2002
*(Page 8 of 15 pages)*

Form 3033 1/01

■ 498Q

agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
DOCUKNY9
DOCUKNY9.VTX   10/10/2002                      *(Page 9 of 15 pages)*                                   Form 3033 1/01

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property, (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
DOCUKNY10
DOCUKNYA VTX 10/18/2002                          *(Page 10 of 15 pages)*                          Form 3033 1/01

49HQ

Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change

of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid

under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☑ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

## FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*)–Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this 7TH  day of          JUNE, 2004
, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to      SOMERSET INVESTORS CORP. DBA SOMERSET MORTGAGE BANKERS

("Lender") of the same date and covering the property described in the Security Instrument and located at.
5910 TYNDALL AVE BRONX, NY 10471

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE.  THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.      **ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of  6.125  %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

4.      **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A)     **Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
JULY 1, 2009                  , and the adjustable interest rate I will pay may change on that day every 12th month thereafter  The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date "

MULTISTATE FIXED/ADJUSTABLE RATE RIDER—WSJ One-Year LIBOR— Single Family—Fannie Mae Uniform Instrument
DOCUAQ11
DOCUAQ11 VTX   08/20/2001                          Page 1 of 4                                    Form 3187   6/01

**(B)    The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index  The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C)    Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO AND ONE-FOURTH                percentage points (   2.250     %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**(D)    Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    11.125     % or less than     2.250          %.  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months.  My interest rate will never be greater than     11.125  %.

**(E)    Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

**(F)    Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change.  The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.    Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

MULTISTATE FIXED/ADJUSTABLE RATE RIDER—WSJ One-Year LIBOR—Single Family—Fannie Mae Uniform Instrument          Form 3187  6/01

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.   When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law . Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

# 1-4 FAMILY RIDER

### (Assignment of Rents)

DEL RIO
LOAN NO.:  [illegible]49BO
MIN:  [illegible]42349

THIS 1-4 FAMILY RIDER is made this 7TH      day of    JUNE, 2004
, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to SOMERSET INVESTORS CORP. DBA SOMERSET MORTGAGE BANKERS

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 5910 TYNDALL AVE BRONX, NY 10471

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**MULTISTATE 1-4 FAMILY RIDER—Fannie Mac/Freddie Mac UNIFORM INSTRUMENT**      **Form 3170 1/01**
DOCU#4A1
DOCU#4A1.VTX   10/10/2003                              *(page  1 of 3 pages)*

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time

MULTISTATE 1-4 FAMILY RIDER--Fannie Mac/Freddie Mac UNIFORM INSTRUMENT          Form 3170 1/01
DOCUR4A2
DOCUR4A2.VTX   10/10/2003                                  (page 2 of 3 pages)

B49HQ

when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

- BORROWER - ALFRED DEL RIO - DATE -

- BORROWER - OLIVIA DEL RIO - DATE -

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider

_____
- BORROWER - ALFRED DEL RIO - DATE -

_____
- BORROWER - OLIVIA DEL RIO - DATE -

498Q

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 13 of this Security Instrument and in any Rider signed by me and recorded with it.

- BORROWER - ALFRED DEL RIO - DATE -

- BORROWER - OLIVIA DEL RIO - DATE -

349HQ

[Space Below This Line For Acknowledgment]

STATE OF *New York*                    County of    *NASSAU*

On the    *7th*    day of    *June*                    in the year  *2004*              before
me, the undersigned, a notary public in and for said state, personally appeared

*Alfred Del Rio and Olivia Del Rio*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that   *they*       executed the same in
*their*         capacity(ies), and that by    *their*        signature(s) on the instrument, the individual(s) or
the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

CAROL L CIPRIANO
Notary Public State of New York
No. _____
Qualified in _____ County
Commission Expires June 20, 20__

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3033 1/01
DOC#:NY13
DOCUMENT.VTX  10/18/2002                    *(Page 15 of 15 pages)*

32262

RECORD & RETURN TO:
Frenkel, Lambert, Weiss, Weisman & Gordon, LLP
20 West Main Street
Bay Shore, New York 11706

BLOCK:5868
LOT:656
COUNTY: Bronx

## * CORRECTION ASSIGNMENT OF MORTGAGE

Know that Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for Somerset Investors Corp. dba Somerset Mortgage Bankers ("Assignor"), having a place of business at 2001 Marcus Avenue, North New Hyde Park, NY 11040, in consideration of TEN DOLLARS ($10 00) and other good and valuable consideration paid by Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc.("Assignee"), having a place of business at c/o Bank of America, N.A., 100 North Tryon Street, Charlotte, NC 28255, does hereby grant, bargain, sell, assign, transfer, and convey unto the Assignee the following described Mortgage or Deed of Trust duly recorded in the office of real property records in the County of Bronx, for the premises known as 5910 Tyndall Avenue, Bronx, NY 10471, together with the indebtedness or obligation described in said instrument, and the monies due and to grow due thereon with the interest, as follows:

| | |
|---|---|
| MORTGAGOR: | Alfred Del Rio and Olivia Del Rio |
| MORTGAGEE: | Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for Somerset Investors Corp. dba Somerset Mortgage Bankers |
| AMOUNT: | 402,000.00 |
| DATE: | June 7, 2004 |
| RECORDED· | September 7, 2004 |
| CRFN: | 2004000555693 |

* This assignment is being recorded to correct a break in the chain of title as a subsequent note and mortgage were executed in the name of Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc., by the mortgagor dated February 13, 2007, recorded on April 25, 2007 in CRFN 2007000213373 in the amount of $146,632.33, which was consolidated with the original note and mortgage pursuant to the terms of a Consolidation, Extension and Modification Agreement dated February 13, 2007, recorded on April 25, 2007 in CRFN 2007000213374, which created a single lien in the amount of $536,000.00.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

To have and to hold the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

In Witness whereof, the Assignor has hereunto set her/his hand this 16ᵗʰ day of AUGUST, 2009.

IN PRESENCE OF:

Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for Somerset Investors Corp. dba Somerset Mortgage Bankers·

BY:_____

Aaron Formby-Asst. Vice President

Officer of MERS

STATE OF **Texas** )

COUNTY OF **Tarrant** ) SS.:
)

On the 16th day of _AUGUST_, in the year 2009, before me, the undersigned, personally appeared __Aaron Formby__, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument and that such individual made such appearance before the undersigned in __Tarrant__ County.

Notary Public

Our file No.: 32262

KEVIN A. JONES
Notary Public, State of Texas
My Commission Expires
March 07, 2012





## SCHEDULE "A"

**Address:**
5910 TYNDALL AVENUE
BRONX NY 10471

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE BOROUGH AND COUNTY OF BRONX, CITY AND STATE OF NEW YORK, MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT POINT ON THE EASTERLY SIDE OF TYNDALL AVENUE, DISTANT 125 FEET NORTHERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE EASTERLY SIDE OF TYNDALL AVENUE WITH THE NORTHERLY SIDE OF WEST 29TH STREET;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF TYNDALL AVENUE, 30 FEET;

THENCE EASTERLY PARALLEL WITH THE NORTHERLY SIDE OF WEST 259TH STREET 95 FEET;

THENCE SOUTHERLY PARALLEL WITH THE EASTERLY SIDE OF TYNDALL AVENUE 30 FEET;

THENCE WESTERLY PARALLEL WITH THE NORTHERLY SIDE OF WEST 259TH STREET 95 FEET TO THE POINT OR PLACE OF BEGINNING.

SUBJECT TO A DRIVEWAY EASEMENT OR RIGHT OF WAY FOR PEDESTRIAN AND PRIVATE MOTOR VEHICLES OVER THE MOST SOUTHERLY FOUR FEET OF THE PREMISES HEREINABOVE DESCRIBED. TOGETHER WITH THE BENEFITS OF A DRIVEWAY EASEMENT FOR PEDESTRIAN AND PRIVATE MOTOR VEHICLES OVER THE MOST NORTHERLY FOUR FEET OF THE PREMISES ADJOINING ON THE SOUTH.



**NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2007031401532001001E9338

## RECORDING AND ENDORSEMENT COVER PAGE   PAGE 1 OF 19

Document ID: 2007031401532001   Document Date: 02-13-2007   Preparation Date: 03-14-2007
Document Type: MORTGAGE
Document Page Count: 17

| PRESENTER: | RETURN TO: |
|---|---|
| BELLE ABSTRACT CORPORATION/PICK-UP RSR | COUNTRYWIDE HOME LOANS INC |
| CHICAGO TITLE INS. CO. | MS SV-79 DOCUMENT PROCESSING |
| 21 WALT WHITMAN ROAD | P O BOX 10423 |
| HUNTINGTON STATION, NY 11746 | VAN NUYS, CA 91410 |
| 631-424-2300 | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5868 | 656 | Entire Lot | 5910 TYNDALL AVENUE |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year____ Reel ____ Page ____ or File Number _____

### PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| ALFRED DEL RIO | MERS INC |
| 5910 TYNDALL AVENUE | P O BOX 2026 |
| BRONX, NY 10471 | FLINT, MI 48501 |

x Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 146,632.33 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 146,632.33 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic) | $ | 733.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 1,649.25 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 366.50 | |
| MTA: | $ | 409.80 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 3,158.55 | |
| Recording Fee: | $ | 122.00 | |
| Affidavit Fee: | $ | 0.00 | |

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK
Recorded/Filed   04-25-2007 10:38
City Register File No.(CRFN): 2007000213373

*Annette M Hill*
**City Register Official Signature**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2007031401532001001C91B8

RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)     PAGE 2 OF 19

| | | |
|---|---|---|
| Document ID: 2007031401532001 | Document Date: 02-13-2007 | Preparation Date: 03-14-2007 |
| Document Type: MORTGAGE | | |

**PARTIES**
**MORTGAGOR/BORROWER:**
OLIVIA DEL RIO
5910 TYNDALL AVENUE
BRONX, NY 10471

After Recording Return To·
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By·
MARCO ORTIZ

*17258B*

*MT#3,158.55* _____ [Space Above This Line For Recording Data] _____

_____ 828302007
[Doc ID #]

# MORTGAGE

MIN _____ 6412-1

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated  FEBRUARY 13, 2007   , together with all
Riders to this document, will be called the "Security Instrument."

(B) "Borrower."
ALFRED DEL RIO, AND OLIVIA DEL RIO

whose address is
5910 TYNDALL AVENUE, BRONX, NY 10471
sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under
the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS  FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE
MORTGAGEE OF RECORD.

(D) "Lender."
COUNTRYWIDE HOME LOANS, INC.

will be called "Lender." Lender is a
CORPORATION                                                                    which exists
under the laws of NEW YORK                            Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613

(E) "Note." The note signed by Borrower and dated  FEBRUARY 13, 2007   , will be called the "Note."
The Note shows that I owe Lender
ONE HUNDRED FORTY SIX THOUSAND SIX HUNDRED THIRTY TWO and 33/100

Dollars (U S. $ 146,632.33       ) plus interest and other amounts that may be payable I have
promised to pay this debt in Periodic Payments and to pay the debt in full by  MARCH 01, 2037
Section· _____ Block _____ Lot· _____ Unit· _____

NEW YORK- Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 13

VMP -6A(NY) (0508)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521 7291

CONV/VA                                                               Form 3033 1/01




DOC ID #:          828302007

**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO
FAMILY RESIDENCE OR DWELLING ONLY.

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U S C Section 2601 et seq) and its implementing regulation, Regulation X (24 C F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

DOC ID #: 828302007

## DESCRIPTION OF THE PROPERTY

I give MERS rights in the Property described in (A) through (G) below:

(A) The Property which is located at

5910 TYNDALL AVENUE                                                    [Street]

BRONX                                            [City, Town or Village], New York

10471          [Zip Code] This Property is in   BRONX                 County.

It has the following legal description

As per legal description attached hereto and made a part hereof. Being
the same premises conveyed to the mortgagor(s) herein by deed from Diana
McGonnell, dated 12/17/97 recorded 2/18/98 in Reel 1530 page 104.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section,

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section,

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either

-6A(NY) (0508)      CHL (08/05)          Page 3 of 13                Form 3033 1/01

## BELLE ABSTRACT CORP.

### Title No. 0702330230000896  BELLE-17258B

### SCHEDULE A

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Bronx, City and State of New York, more particularly bounded and described as follows:

BEGINNING at a point on the Easterly side of Tyndall Avenue, distant 125 feet Northerly from the corner formed by the intersection of the Easterly side of Tyndall Street with the Northerly side of West 259th Street;

THENCE Northerly along the Easterly side of Tyndall Avenue, 30 feet;

THENCE Easterly parallel with the Northerly side of West 259th Street, 95 feet;

THENCE Southerly parallel with the Easterly side of Tyndall Avenue, 30 feet;

THENCE Westerly parallel with the Northerly side of West 259th Street, 95 feet to the point or place of BEGINNING.

SUBJECT to a driveway easement or right of way for pedestrian and private motor vehicles over the most Southerly four feet of the premises hereinabove described. Together with the benefits of a driveway easement for pedestrian and private motor vehicles over the most Northerly four feet of the premises adjoining on the South.

FOR
·ONVEYANCING
ONLY

The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.

TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.

DOC ID #: ██████ 828302007

apply such funds or return them to me In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note, and

Next, to pay the amounts that Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument, and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full, Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows First, to any prepayment charges; and Next, as described in the Note

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any),

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any),

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3

DOC ID #:       828302007

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends, or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or



DOC ID #:          828302007

amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument Such Insurance Proceeds will be applied in the order provided for in Section 2 If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Borrower's Obligations to Occupy The Property. I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

DOC ID #          828302007

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

DOC ID #: 828302007

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations

Lender may allow those delays or changes for me, or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property, (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

DOC ID #: ████████828302007

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument, (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of (a) five days before sale of the Property under any power of sale granted by this Security Instrument, (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped, or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions.

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

DOC ID #:     828302007

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property  I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

DOC ID #:            828302007

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)
ALFRED DEL RIO                    -Borrower

_____ (Seal)
OLIVIA DEL RIO                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

# 1-4 FAMILY RIDER
(Assignment of Rents)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #:
5868

Prepared By
MARCO ORTIZ

828302007
[Doc ID #]

THIS 1-4 FAMILY RIDER is made this THIRTEENTH        day of FEBRUARY, 2007 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at
5910 TYNDALL AVENUE
BRONX, NY 10471
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®-57R (0401).01      CHL (06/04)(d)      Page 1 of 3      Initials: _____
                        VMP Mortgage Solutions, Inc. (800)521-7291      Form 3170 1/01





DOC ID #: ███████ 828302007

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and

Initials: _J.J.V GOR_
Form 3170 1/01

DOC ID #: ████████28302007

maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider

_____ (Seal)
ALFRED DEL RIO                                    - Borrower

_____ (Seal)
OLIVIA DEL RIO                                    - Borrower

_____ (Seal)
                                                  - Borrower

_____ (Seal)
                                                  - Borrower

VMP -57R (0401).01 CHL (06/04)        Page 3 of 3              Form 3170 1/01

STATE OF NEW YORK,

DOC ID #: ▓▓▓▓ 828302007

County ss: Chen

On the ___13___ day of Feb, 200?_____ before me, the undersigned, a notary public in and for said state, personally appeared _____ Albert Oliver Dellio and Olivia Del Rio

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information: 5868

SEAL

NICODEMO R BELLOCCO
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN NASSAU COUNTY
REG #01BE6087374
MY COMM EXP FEB. 18 20[?]

SEAL



# BELLE

ABSTRACT CORP.
TELEPHONE (888) 635-0200

VMP ®  -6A(NY) (0508)    CHL (08/05)    Page 13 of 13    Form 3033 1/01



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2007031401532002001E937C

## RECORDING AND ENDORSEMENT COVER PAGE                    PAGE 1 OF 26

| | |
|---|---|
| Document ID: 2007031401532002 | Document Date: 02-13-2007 · Preparation Date: 03-14-2007 |
| Document Type: AGREEMENT | |
| Document Page Count: 24 | |

**PRESENTER:**

BELLE ABSTRACT CORPORATION/PICK-UP
RSR
CHICAGO TITLE INS. CO.
21 WALT WHITMAN ROAD
HUNTINGTON STATION, NY 11746
631-424-2300

**RETURN TO:**

COUNTRYWIDE HOME LOANS INC
MS SV-79 DOCUMENT PROCESSING
P O BOX 10423
VAN NUYS, CA 91410

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 5868 | 656 | Entire Lot | 5910 TYNDALL AVENUE |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN: 2004000555693
 x  Additional Cross References on Continuation Page

### PARTIES

**PARTY 1:**
ALFRED DEL RIO
5910 TYNDALL AVENUE
BRONX, NY 10471

 x  Additional Parties Listed on Continuation Page

**PARTY 2:**
MERS INC
P O BOX 2026
FLINT, MI 48501

### FEES AND TAXES

| Mortgage | | | |
|---|---|---|---|
| Mortgage Amount: | $ | 536,000.00 | |
| Taxable Mortgage Amount: | $ | 0.00 | |
| Exemption: | | 255 | |
| TAXES: County (Basic): | $ | 0.00 | |
| City (Additional): | $ | 0.00 | |
| Spec (Additional): | $ | 0.00 | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA· | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 157.00 | |
| Affidavit Fee: | $ | 8.00 | |

| Filing Fee: | | |
|---|---|---|
| | $ | 0.00 |
| NYC Real Property Transfer Tax: | | |
| | $ | 0.00 |
| NYS Real Estate Transfer Tax: | | |
| | $ | 0.00 |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        04-25-2007 10:38
City Register File No.(CRFN):
          2007000213374

*Annette M Hill*

*City Register Official Signature*

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER |  |
|---|---|

2007031401532002001C91FC

**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)**    **PAGE 2 OF 26**

| Document ID: 2007031401532002 | Document Date: 02-13-2007 | Preparation Date: 03-14-2007 |
|---|---|---|
| Document Type: AGREEMENT | | |

**CROSS REFERENCE DATA**
Document ID: 2007031401532001

**PARTIES**
**PARTY 1:**
OLIVIA DEL RIO
5910 TYNDALL AVENUE
BRONX, NY 10471

**RECORD AND RETURN TO:**

**Countrywide Home Loans, Inc.**
MS SV-79 Document Processing
P O. Box 10423
Van Nuys, CA 91410-0423

*17258B* 

—————————————[Space Above This Line For Recording Data]—————————————

## CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT

WORDS USED OFTEN IN THIS DOCUMENT

(A) **"Agreement."** This document, which is dated 13th day of February, 2007, and exhibits and riders attached to this document will be called the "Agreement."

(B) **"Borrower."** **Alfred Del Rio and Olivia Del Rio** will be called "Borrower" and sometimes "I" or "me." Borrower's address is 5910 Tyndall Avenue, Bronx, New York 10471

(C) **"Lender."** Countrywide Home Loans, Inc. will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under the laws of California. Lender's address is 4500 Park Granada, Calabasas, California 91302-1613.

(D) **"Mortgages."** The mortgages, deeds of trust, or other security instruments and any additional security instruments and related agreements (such as assignments, extensions, modifications, or consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages."

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O. Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS **FOR THE PURPOSES OF RECORDING THIS AGREEMENT, MERS IS THE MORTGAGEE OF RECORD.**

(F) **"Note Holder."** Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."

(G) **"Notes."** The Notes which are identified in Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes."

(H) **"Property."** The property which is described in the Mortgage(s) and in Exhibit B (Property Description) to this Agreement, will be called the "Property." The Property is located at

5910 Tyndall Avenue
[Street]

| Bronx | New York | 10471 |
|-------|----------|-------|
| [City] | [State] | [Zip Code] |

I promise and I agree with Lender as follows.

**I.   BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES**

I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $536,000.00; of this amount, U S $146,632.33 was advanced to me (or for my account) immediately prior to this consolidation

**II.    AGREEMENT TO COMBINE NOTES AND MORTGAGES**

(A)  By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages  This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement  This combining of notes and mortgages is known as a "Consolidation "

(B)  In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following

> Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages -- including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages -- have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A.  This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement   The combining of notes and mortgages is known as a "Consolidation "

**III.    AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE**

Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder.  I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note.  The Consolidated Note will supersede all terms, covenants, and provisions of the Notes

**IV.    AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE**

Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property  I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages

**V.    NO SET-OFF, DEFENSES**

I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

**VI.    BORROWER'S INTEREST IN THE PROPERTY**

I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages

**VII.    WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT**

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement

**VIII.    OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS**

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement  The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement.  Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

**EXHIBIT A**
(List of Mortgages, Notes, and Agreements)

(a)    The Mortgage given by Alfred Del Rio and Olivia Del Rio and dated June 7, 2004 in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Somerset Investors Corp., d/b/a Somerset Mortgage Bankers securing the original principal amount of U.S. $402,000.00 This Mortgage *is on a Fannie Mae/Freddie Mac Security Instrument* and was recorded on September 7, 2004, in the county of Bronx, State of New York, at CRFN #2004000555693 At this date, the unpaid principal balance secured by this Mortgage is U.S. $389,367.67 This Mortgage secures a Note dated June 7, 2004.   *Mtpd $ 8,211.00*

(b)    The Mortgage given by Alfred Del Rio and Olivia Del Rio and dated 13ᵗʰ day of February, 2007 in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Countrywide Home Loans, Inc. securing the original principal amount of U.S. $146,632.33 At this date, the unpaid principal balance secured by this Mortgage is U.S. $146,632.33 This Mortgage *is on a Fannie Mae/Freddie Mac Security Instrument* and will be recorded together with this Agreement. This mortgage secures a note dated February 13, 2007   *Mtpaid $ 3,158.55*

*Now due and owing*
*$ 536,000.00*

Exhibit B

## BELLE ABSTRACT CORP.

Title No. 0702330230000896   BELLE-1725SB

### SCHEDULE A

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Bronx, City and State of New York, more particularly bounded and described as follows:

BEGINNING at a point on the Easterly side of Tyndall Avenue, distant 125 feet Northerly from the corner formed by the intersection of the Easterly side of Tyndall Street with the Northerly side of West 259th Street;

THENCE Northerly along the Easterly side of Tyndall Avenue, 30 feet;

THENCE Easterly parallel with the Northerly side of West 259th Street, 95 feet;

THENCE Southerly parallel with the Easterly side of Tyndall Avenue, 30 feet;

THENCE Westerly parallel with the Northerly side of West 259th Street, 95 feet to the point or place of BEGINNING.

SUBJECT to a driveway easement or right of way for pedestrian and private motor vehicles over the most Southerly four feet of the premises hereinabove described. Together with the benefits of a driveway easement for pedestrian and private motor vehicles over the most Northerly four feet of the premises adjoining on the South.

**FOR CONVEYANCING ONLY**

The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.

TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.

Prepared by MARCO ORTIZ

*Exhibit C*

LOAN #: ████3283

# NOTE

CONSOLIDATED NOTE:  This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note.

FEBRUARY 13, 2007                  FOREST HILLS                      NEW YORK
      [Date]                            [City]                          [State]

5910 TYNDALL AVENUE, BRONX, NY 10471
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 536,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender  The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid  I will pay interest at a yearly rate of    6.875 %

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   FIRST       day of each month beginning on
APRIL 01, 2007         I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal  If, on  MARCH 01, 2037       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 3,521.14

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me  If a refund reduces Principal, the reduction will be treated as a partial Prepayment

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP MORTGAGE FORMS - (800)521-7291
Initials _OPR_
-5N(NY) (0005) 01 CHL (09/02)(d)
Page 1 of 2
Form 3233 1/01





LOAN #:      8283

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN   calendar days after the date it is due, I will pay a late charge to the Note Holder  The amount of the charge will be     2.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law  Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment  The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)        _____ (Seal)
ALFRED DEL RIO            -Borrower     OLIVIA DEL RIO            -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                              -Borrower

*[Sign Original Only]*

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
MARCO ORTIZ


EXHIBIT D CONSOLIDATED

———————————— [Space Above This Line For Recording Data] ————————————

█████ 828302007
[Doc ID #]

EXHIBIT D CONSOLIDATED

# MORTGAGE

MIN █████████ 5412-1


## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Security Instrument." This document, which is dated  FEBRUARY 13, 2007  , together with all Riders to this document, will be called the "Security Instrument."

(B) "Borrower."
ALFRED DEL RIO, AND OLIVIA DEL RIO


whose address is
5910 TYNDALL AVENUE, BRONX, NY 10471
sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

(D) "Lender."
COUNTRYWIDE HOME LOANS, INC.
will be called "Lender." Lender is a
CORPORATION
                                                                                    which exists
under the laws of NEW YORK                    . Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613

(E) "Note." The note signed by Borrower and dated  FEBRUARY 13, 2007  , will be called the "Note." The Note shows that I owe Lender
FIVE HUNDRED THIRTY SIX THOUSAND and 00/100

Dollars (U.S. $ 536,000.00                    ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by MARCH 01, 2037

Section: _____ Block: _____ Lot _____ Unit _____

NEW YORK- Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 13

 -6A(NY) (0508)     CHL (08/05)(d)     VMP Mortgage Solutions, Inc. (800)521-7291     Form 3033 1/01
CONV/VA



* 2 3 9 9 1 *                                              * 2 8 3 0 0 0 0 0 2 0 0 6 A *

DOC ID #:       28302007

(F) **"Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."
THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY.

(G) **"Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) **"Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable].

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) **"Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(K) **"Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) **"Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

(N) **"Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

DOC ID #: ████ 28302007

## DESCRIPTION OF THE PROPERTY

I give MERS rights in the Property described in (A) through (G) below:

(A) The Property which is located at

5910 TYNDALL AVENUE

[Street]

BRONX

[City, Town or Village], New York

10471     [Zip Code]. This Property is in   BRONX

County.

It has the following legal description.

As per legal description attached hereto and made a part hereof. Being
the same premises conveyed to the mortgagor(s) herein by deed from Diana
McGonnell, dated 12/17/97 recorded 2/18/98 in Reel 1530 page 104.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section These rights are known as "easements and appurtenances attached to the Property."

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section.

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section,

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that, (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either

DOC ID #: ███████ 828302007

apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

    **2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note,

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument, and

Next, to reduce the principal balance of the Note.

    If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

    Voluntary prepayments will be applied as follows: First, to any prepayment charges, and Next, as described in the Note.

    Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

    **3. Monthly Payments For Taxes And Insurance.**

    **(a) Borrower's Obligations.**

    I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

    (1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

    (2) The leasehold payments or ground rents on the Property (if any);

    (3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

    (4) The premium for Mortgage Insurance (if any);

    (5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any), and

    (6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

    After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

    I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

    The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

    ● -6A(NY) (0508)    CHL (08/05)    Page 4 of 13    Form 3033 1/01

DOC ID #:⬛⬛⬛828302007

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary, I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement, (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or

DOC ID #:     828302007

amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

DOC ID #: [redacted] 828302007

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations), or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property, (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument, (d) appearing in court, and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained, (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

DOC ID #: ████ 828302007

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

DOC ID #:          828302007

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if, (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property, (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

DOC ID #:          828302007

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

DOC ID #: 828302007

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law, (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**
I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;



DOC ID #: ▓▓▓828302007

(3) A date by which I must correct the default. That date will be at least **30 days** from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require **Immediate Payment in Full,** and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)
ALFRED DEL RIO                 -Borrower

_____ (Seal)
OLIVIA DEL RIO                 -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

STATE OF NEW YORK,

DOC ID #: ▮▮▮▮828302007
County ss. (Queens)

On the ___13___ day of ___Feb___ ___2007___ before me, the undersigned, a notary public in and for said state, personally appeared ___Albert & Olivia Gelpie___

_____

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

Notary Public

Tax Map Information: 5868

SEAL



NICODEMO R BELLOCCO
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN NASSAU COUNTY
NO 01BE6087374
COMM EXP FEB 18, 20__

SEAL

# 1-4 FAMILY RIDER
## (Assignment of Rents)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #:
5868

Prepared By:
MARCO ORTIZ

 828302007
[Doc ID #]

THIS 1-4 FAMILY RIDER is made this THIRTEENTH     day of FEBRUARY, 2007 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
5910 TYNDALL AVENUE
BRONX, NY 10471
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT



-57R (0401).01     CHL (06/04)(d)     Page 1 of 3
VMP Mortgage Solutions, Inc. (800)521-7291

Initials: _____
Form 3170 1/01



8283000002057R*

DOC ID #: ████ 828302007

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and

Initials. _⟨ᴉⱼ⟩_

Form 3170 1/01

DOC ID #: ████████828302007

maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
ALFRED DEL RIO                                  - Borrower

_____ (Seal)
OLIVIA DEL RIO                                  - Borrower

_____ (Seal)
                                                - Borrower

_____ (Seal)
                                                - Borrower

VMP -57R (0401) 01 CHL (06/04)        Page 3 of 3           Form 3170 1/01

IX.    **LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will:  (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund," and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

X.    **TYPE OF PROPERTY**

Check box(es) as applicable

[ ]    This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilties.

[x]    This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.

[ ]    This Agreement does not cover real property improved as described above.

By signing this Agreement, Lender and I agree to all of the above

Countrywide Home Loans, Inc. - Lender

By:

Marco Ortiz – Operations Manager

Alfred Del Rio- Borrower

Olivia Del Rio- Borrower

Mortgage Electronic Registration Systems, Inc. - Mortgagee

By

Marco Ortiz – Operations Manager

_____ [Space Below This Line For Acknowledgment]_____

STATE OF NEW YORK    )
                     ) SS·
COUNTY OF QUEENS     )

On the 13th day of February, 2007, before me, the undersigned, a notary public in and for said State, personally appeared Alfred Del Rio and Olivia Del Rio, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

NICODEMO R. BELLOCCO
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN NASSAU COUNTY
REG. #01BE6087374
MY COMM. EXP. FEB 18 20__

STATE OF NEW YORK    )
                     ) SS·
COUNTY OF QUEENS     )

On the 13th day of February, 2007, before me, the undersigned, a notary public in and for said State, personally appeared Marco Ortiz, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

KERRY C. GLASGOLD
NOTARY P... L.F...o of New York
it... L.T. ...2B9''2
One... 'a... f... n, County
Commission Expires ...ber 11, 20__

Acknowledgment by a Person Outside New York State (RPL § 309-b)

STATE OF _____), COUNTY OF _____
On the _____day of _____ in the year _____ before me, the undersigned, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual(s) made such appearance before the undersigned in _____ (insert the city or other political subdivision and the state or country or other place the acknowledgment was taken).

_____
(signature and office of individual taking acknowledgment)

**BELLE**
ABSTRACT CORP.
TELEPHONE (888) 635-0200

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3172
1/01 (rev 5/01)

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2007031401532002001S5DFD

**SUPPORTING DOCUMENT COVER PAGE**      **PAGE 1 OF 1**

Document ID: 2007031401532002    Document Date: 02-13-2007    Preparation Date: 03-14-2007
Document Type: AGREEMENT

**SUPPORTING DOCUMENTS SUBMITTED:**

255 MORTGAGE TAX EXEMPT AFFIDAVIT       Page Count
         2

# AFFIDAVIT UNDER SECTION 255 OF ARTICLE II OF THE TAX
## LAW OF THE STATE OF NEW YORK
(Agreement of Consolidation and Modification of Mortgage)

17258B

STATE OF NEW YORK )
COUNTY OF QUEENS) SS

The Undersigned (the "**Deponent(s)**"), being duly sworn, deposes and says:

(1) The Deponent(s) are the holders of a fee interest in the premises commonly known as 5910 Tyndall Avenue, Bronx, New York 10471 (the "**Premises**") more particularly described in a mortgage of even date herewith, and the undersigned is fully familiar with the facts and circumstances herein. The Premises is encumbered by the following mortgages (collectively, the "**Existing Mortgage**")

This Mortgage consolidates, amends and restates in their entirety the following mortgages.

(a.) The Mortgage given by Alfred Del Rio and Olivia Del Rio and dated June 7, 2004 in favor of Mortgage Electronic Registration Systems, Inc as nominee for Somerset Investors Corp. d/b/a Somerset Mortgage Bankers securing the original principal amount of U.S. $402,000.00  This Mortgage *is on a Fannie Mae/Freddie Mac Security Instrument* and was recorded on September 7, 2004, in the county of Bronx, State of New York, at CRFN #2004000555693. At this date, the unpaid principal balance secured by this Mortgage is U.S. $389,367.67  This Mortgage secures a Note dated June 7, 2004.

That all mortgage tax of $ 2011.00 on the Existing Mortgage was duly paid upon the recordation thereof.

(b.)  Borrower has delivered to Mortgage Electronic Registration Systems, Inc as nominee for Countrywide Home Loans, Inc. a mortgage creating a new lien securing a new indebtedness in the amount of One Hundred Forty-Six Thousand Six Hundred Thirty-Two Dollars and Thirty-Three Cents ($146,632.33) Dollars (the "**New Mortgage**")  The New Mortgage is being presented for recording concurrently herewith and the mortgage tax in the amount of $3,159.25 is being paid concurrently herewith
3158.55

(2). There is offered for recording simultaneously herewith an Agreement of Consolidation, Extension and Modification of Mortgage (the "**Agreement**"), between Alfred Del Rio and Olivia Del Rio as Mortgagor and Mortgage Electronic Registration Systems, Inc. as nominee for Countrywide Home Loans, Inc as Mortgagee dated 13th day of February, 2007 which consolidates the unpaid principal balance of the Existing Mortgage and the New Mortgage into a single first mortgage lien of Five Hundred Thirty-Six Thousand Dollars and No Cents ($536,000.00) Dollars now due and owing

(3)  The Agreement does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by, or which under any contingency may be secured by, the Existing Mortgage and the New Mortgage in the amount of $146,632.33

WHEREFORE, your deponent(s) respectfully requests that the Agreement be declared exempt from taxation pursuant to the provisions of Section 255 of Article II of the Tax Law of the State of New York and that the Bronx County Clerk to record the attached Consolidation, Extension and Modification Agreement without payment of any mortgage tax pursuant to the provisions of Section 255 of Article II of the tax law except the sum of ~~$3,159.25.~~ $ 3,158 55

By: _____
Alfred Del Rio          ,

By: _____
Olivia Del Rio


STATE OF NEW YORK          )
                           ) SS
COUNTY OF QUEENS           )

On this 13th day of February, 2007, before me, the undersigned, a Notary Public in and for the State of New York, personally appeared Alfred Del Rio and Olivia Del Rio, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

_____
Notary Public

NICODEMO R. BELLOCCO
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN NASSAU COUNTY
REG #01BE6087374
MY COMM EXP FEB 18 20__

SEAL

**AFFIDAVIT UNDER SECTION 255 OF ARTICLE II OF THE TAX
LAW OF THE STATE OF NEW YORK**
(Agreement of Consolidation and Modification of Mortgage)

*172588*

STATE OF NEW YORK )
COUNTY OF QUEENS) SS

The Undersigned (the "**Deponent(s)**"), being duly sworn, deposes and says

(1). The Deponent(s) are the holders of a fee interest in the premises commonly known as 5910 Tyndall Avenue, Bronx, New York 10471 (the "**Premises**") more particularly described in a mortgage of even date herewith, and the undersigned is fully familiar with the facts and circumstances herein. The Premises is encumbered by the following mortgages (collectively, the "**Existing Mortgage**"):

This Mortgage consolidates, amends and restates in their entirety the following mortgages

(a.) The Mortgage given by Alfred Del Rio and Olivia Del Rio and dated June 7, 2004 in favor of Mortgage Electronic Registration Systems, Inc as nominee for Somerset Investors Corp., d/b/a Somerset Mortgage Bankers securing the original principal amount of U.S. $402,000.00. This Mortgage *is on a Fannie Mae/Freddie Mac Security Instrument* and was recorded on September 7, 2004, in the county of Bronx, State of New York, at CRFN #2004000555693. At this date, the unpaid principal balance secured by this Mortgage is U.S. $389,367.67 This Mortgage secures a Note dated June 7, 2004.

That all mortgage tax of $ *8,211.00* on the Existing Mortgage was duly paid upon the recordation thereof

(b.) Borrower has delivered to Mortgage Electronic Registration Systems, Inc as nominee for Countrywide Home Loans, Inc a mortgage creating a new lien securing a new indebtedness in the amount of One Hundred Forty-Six Thousand Six Hundred Thirty-Two Dollars and Thirty-Three Cents ($146,632.33) Dollars (the "**New Mortgage**") The New Mortgage is being presented for recording concurrently herewith and the mortgage tax in the amount of $3,159.25 is being paid concurrently herewith

(2). There is offered for recording simultaneously herewith an Agreement of Consolidation, Extension and Modification of Mortgage (the "**Agreement**"), between Alfred Del Rio and Olivia Del Rio as Mortgagor and Mortgage Electronic Registration Systems, Inc as nominee for Countrywide Home Loans, Inc as Mortgagee dated 13th day of February, 2007 which consolidates the unpaid principal balance of the Existing Mortgage and the New Mortgage into a single first mortgage lien of Five Hundred Thirty-Six Thousand Dollars and No Cents ($536,000.00) Dollars now due and owing

(3) The Agreement does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by, or which under any contingency may be secured by, the Existing Mortgage and the New Mortgage in the amount of $146,632.33

WHEREFORE, your deponent(s) respectfully requests that the Agreement be declared exempt from taxation pursuant to the provisions of Section 255 of Article II of the Tax Law of the State of New York and that the Bronx County Clerk to record the attached Consolidation, Extension and Modification Agreement without payment of any mortgage tax pursuant to the provisions of Section 255 of Article II of the tax law except the sum of $3,450.26  $3,158.55

By: _____
Alfred Del Rio

By: _____
Olivia Del Rio


STATE OF NEW YORK        )
                         ) SS
COUNTY OF QUEENS         )

On this 13th day of February, 2007, before me, the undersigned, a Notary Public in and for the State of New York, personally appeared Alfred Del Rio and Olivia Del Rio, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument

_____
Notary Public

SEAL

NICODEMO R. BELLOCCO
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN NASSAU COUNTY
REG. #01BE6087374
MY COMM. EXP. FEB 18 20

32262

RECORD & RETURN TO.                                   **BLOCK:5868**
Frenkel, Lambert, Weiss, Weisman & Gordon, LLP       **LOT:656**
20 West Main Street                                  **COUNTY: Bronx**
Bay Shore, New York 11706

## ASSIGNMENT OF MORTGAGE

Know that **Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc.** ("Assignor"), having a place of business at c/o Bank of America, N.A., 100 North Tryon Street, Charlotte, NC 28255, in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration paid by **The Bank of New York Mellon, for the  Certificateholders Alternative Loan Trust 2007-11T1 Mortgage Pass-Through Certificates, Series 2007-11T1 Pass-Through Certificates, Series 2007-11T1,** ("Assignee"), having a place of business at c/o Bank of America, N.A., 100 North Tryon Street, Charlotte, NC 28255, does hereby grant, bargain, sell, assign, transfer, and convey unto the Assignee the following described Mortgage or Deed of Trust duly recorded in the office of real property records in the County of Bronx, for the premises known as  5910 Tyndall Avenue, Bronx, NY 10471, together with the indebtedness or obligation described in said instrument, and the monies due and to grow due thereon with the interest, as follows.

MORTGAGOR:      Alfred Del Rio and Olivia Del Rio
MORTGAGEE:      Mortgage Electronic Registration Systems, Inc., acting solely as a nominee
                for Somerset Investors Corp. dba Somerset Mortgage Bankers
AMOUNT:         402,000.00
DATE:           June 7, 2004
RECORDED:       September 7, 2004
CRFN:           2004000555693

Thereafter, the note and mortgage were assigned to Mortgage Electronic Registration Systems, Inc as nominee for Countrywide Home Loans, Inc. by a correction assignment which is in the process of being recorded. Thereafter, a second note and mortgage were executed by the mortgagors, dated February 13, 2007, recorded on April 25, 2007 in CRFN 2007000213373, in the amount of $146,632.33, which was consolidated with the original note and mortgage pursuant to the terms of a Consolidation, Extension and Modification Agreement dated February 13, 2007, recorded on April 25, 2007 in CRFN 2007000213374, which created a single lien in the amount of $536,000.00.

**This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.**

To have and to hold the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

In Witness whereof, the Assignor has hereunto set her/his hand this 16TH day of _AUGUST_, 2009

IN PRESENCE OF                    Mortgage Electronic Registration Systems, Inc., as
                                  nominee for Countrywide Home Loans, Inc.:

                                  BY.

                                  **Aaron Formby-Asst. Vice President**

                                  Officer of MERS

STATE OF **Texas**                )
                                  )  SS.:
                     **Tarrant**  )
COUNTY OF                         )

On the 16ᵗʰ day of AUGUST_____, in the year 2009, before me, the undersigned, personally
appeared __Aaron Formby_____, personally known to me or proved to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within instrument and
acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature
on the instrument, the individual or the person upon behalf of which the individual acted, executed
the instrument and that such individual made such appearance before the undersigned in
__Tarrant_____ County.

_____
Notary Public

Our file No.: 32262

KEVIN A. JONES
Notary Public, State of Texas
My Commission Expires
March 07, 2012





## SCHEDULE "A"

**Address:**
5910 TYNDALL AVENUE
BRONX NY 10471

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, WITH THE BUILDINGS AND
IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND BEING IN THE BOROUGH AND
COUNTY OF BRONX, CITY AND STATE OF NEW YORK, MORE PARTICULARLY BOUNDED
AND DESCRIBED AS FOLLOWS:

BEGINNING AT POINT ON THE EASTERLY SIDE OF TYNDALL AVENUE, DISTANT 125 FEET
NORTHERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE EASTERLY SIDE
OF TYNDALL AVENUE WITH THE NORTHERLY SIDE OF WEST 29TH STREET;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF TYNDALL AVENUE, 30 FEET;

THENCE EASTERLY PARALLEL WITH THE NORTHERLY SIDE OF WEST 259TH STREET 95
FEET;

THENCE SOUTHERLY PARALLEL WITH THE EASTERLY SIDE OF TYNDALL AVENUE 30 FEET;

THENCE WESTERLY PARALLEL WITH THE NORTHERLY SIDE OF WEST 259TH STREET 95
FEET TO THE POINT OR PLACE OF BEGINNING.

SUBJECT TO A DRIVEWAY EASEMENT OR RIGHT OF WAY FOR PEDESTRIAN AND PRIVATE
MOTOR VEHICLES OVER THE MOST SOUTHERLY FOUR FEET OF THE PREMISES
HEREINABOVE DESCRIBED. TOGETHER WITH THE BENEFITS OF A DRIVEWAY EASEMENT
FOR PEDESTRIAN AND PRIVATE MOTOR VEHICLES OVER THE MOST NORTHERLY FOUR
FEET OF THE PREMISES ADJOINING ON THE SOUTH.

**AB** Page 1/3

Title No: 5198-

COUNTY CLERK SEARCH( 6/25/2009 ) SPECIAL NAME SEARCH

Last Name: ( delrio )
First Name: ( alfred )
COUNTY: ( BRONX )

Run Date: 01/01/1999 To: 6/25/2009
*****************************************************************

JUDGMENTS -

Bronx County from ( 08/90 to 06/24/09 )

Search Parameters- Last:delrio      First:alfred

Judgment - Run Only

Block:      Lot:                        Control No. 001073156-01
Book Type -- Judgments Docket           Index # 002656072001
Judgment Type: TRANSCRIPT OF JUDGMENT   Effective Date: 09/25/2008
Court: Criminal Court                   Expiration Date: 09/26/2028
                                        Docket Date:09/26/2008
Debtor Info:
DELRIO, ALFREDO
710    COMMONWEALTH AVE APT
BRONX                10473-0340

Creditor Info:
CRIMINAL COURT OF THE CITY OF NEW YORK
215    E 161 ST
BRONX                10451-

Attorney:
DISTRICT ATTORNEY OF BRONX COUNTY
215    EAST 161 STREET
BRONX                10451-

Amount: $25.00
-------------------------------------------------------------------
END RETURNS
*****************************************************************

JUDGMENTS -

Bronx County from ( 08/90 to 06/24/09 )

Search Parameters- Last:delrio      First:alfred

Hospital Liens - Run Only

END RETURNS
*****************************************************************

(Environmental Control Board (Fire and Building) - Ending Date 04/30/09)

Search Parameters- Last:delrio      First:alfred

Thursday June 25, 2009

## CERTIFICATION BY ATTORNEY

Nicole E. Schiavo, an attorney duly admitted to practice law before the Courts of the State of New York, an associate with the firm of Frenkel, Lambert, Weiss, Weisman, & Gordon, LLP, attorneys for the Plaintiff herein, pursuant to Uniform Rule Section 130-1.1-a, states as follows:

     1.    I hereby certify, under the penalty of perjury and as an officer of the Court, that, to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the within paper or the contentions therein are not frivolous as defined in subsection (c) of section 130-1.1, including that the substance of the factual statements therein are not false.

Dated:  Bay Shore, New York  
       October 2, 2009

Frenkel, Lambert, Weiss, Weisman, & Gordon, LLP

Nicole E. Schiavo  
Attorneys for Plaintiff  
20 West Main Street  
Bay Shore, New York 11706  
(631) 969-3100  
Our File No.: 32262

Index # 09-381848

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

=======================================================

The Bank of New York Mellon, for the Certificateholders Alternative Loan Trust 2007-11T1 Mortgage Pass-Through Certificates, Series 2007-11T1 Pass-Through Certificates, Series 2007-11T1,

Plaintiff,

- against -

Alfred Del Rio, Olivia Del Rio, Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for Countrywide Bank, NA, its successors and assigns, Criminal Court of the City of New York, New York City Environmental Control Board, New York City Parking Violations Bureau, New York City Transit Adjudication Bureau, and "JOHN DOE #1" through "JOHN DOE #10", the last ten names being fictitious and unknown to the plaintiff, the person or parties intended being the persons or parties, if any, having or claiming an interest in or lien upon the Mortgage premises described in the Complaint,

Defendants.

=======================================================

**SUPPLEMENTAL SUMMONS AND AMENDED COMPLAINT**

=======================================================

FRENKEL, LAMBERT, WEISS, WEISMAN & GORDON, LLP
Attorneys for Plaintiff
20 West Main Street
Bay Shore, New York 11706
(631) 969-3100
Fax (631) 969-3101
Our File No.: 32262

=======================================================

To                                        ProVest, LLC
                                          320 Carleton Avenue, Suite 2600
                                          Central Islip, NY 11722
Attorney(s) for

=======================================================

Service of a copy of the within

is hereby admitted.

Dated,

_____

Attorney(s) for

=======================================================