UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALFRED DEL RIO A/K/A ALFREDO DEL RIO and OLIVIA DEL RIO,<br><br>     Plaintiff,<br><br>  v.<br><br><br>McCABE, WEISBERG & CONWAY, LLC; NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING; and THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT INC., ALTERNATIVE LOAN TRUST 2007-11T1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-11T1,<br><br>     Defendants. | Case No. 1:19-CV-10312-VSB |

**SHELLPOINT'S AND BONYM'S
MEMORANDUM OF LAW SUPPORTING THEIR MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT AND TO STRIKE CLASS ALLEGATIONS**

51805319;1

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................... 2

III.   ARGUMENT SUPPORTING DISMISSAL ...................................................... 4

    A.   Section 1692e Claim Fails as a Matter of Law ................................................ 4

        1.   BoNYM Not a Debt Collector. ................................................................ 5

        2.   Subject Foreclosure is Security Enforcement Only. ................................ 7

        3.   Claim Fails on the Merits. ........................................................................ 9

        4.   The Del Rios Failed to Comply with Conditions Precedent. .................. 17

    B.   Section 1692g Claim Fails as a Matter of Law ............................................... 17

    C.   GBL § 349 Claim Fails as a Matter of Law ................................................... 18

IV.   ARGUMENT SUPPORTING STRIKING CLASS ALLEGATIONS .......................... 21

    A.   Pled Class Lacks Standing ............................................................................. 21

    B.   Class Not Ascertainable on its Face .............................................................. 22

        1.   Vague Class Not Certifiable. ................................................................... 22

        2.   Shellpoint "Letter" Class Overbroad. ..................................................... 24

    C.   Rule 23(b)(2) Class Necessarily Fails ........................................................... 24

V.   CONCLUSION ................................................................................................... 25

**Cases**                                                                                                          **Page(s)**

*In re Adephia Recovery Trust*,
    634 F. 3d 678, 695-96 (2d Cir. 2011) ...................................................................16

*Almand v. Reynolds & Robin, P.C.*,
    485 F. Supp. 2d 1361 (M.D. Ga. 2007) ...........................................................10, 17

*Andra R. Miller Designs v. U.S. Bank NA,*
    *418 P.3d 1038, 1044 (Ariz. Ct. App. 2018)*...............................................................13

*Anthony v. Fein, Such & Crane, LLC*,
    No. 5:15-cv-452, 2015 WL 3419140 (N.D.N.Y. May 27, 2015) ...........................10

*Arnold v. Bayview Loan Servicing, LLC*,
    No. 14-cv-0543, 2016 WL 375154, at *13 (S.D. Ala. Jan. 29, 2016) ......................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................4

*Bank of N.Y. Mellon, etc. v. Henderson*,
    862 F.3d 29 (D.C. Cir. 2017) .....................................................................................5

*Bank of N.Y. Mellon v. Kantrow*,
    66 N.Y.S.3d 652 (N.Y. Sup. Ct. 2017) ...........................................................15, 16

*Bartram v. U.S. Bank, NA*,
    211 So. 3d 1009 (Fla. 2016)......................................................................................13

*Beattie v. DM Collections, Inc.*,
    754 F. Supp. 383 (D. Del. 1991)..............................................................................10

*Beaulieu v. Bank of Am., N.A.*,
    No. 1:14-cv-00023, 2014 WL 4843809 (D. Me. Sept. 29, 2014)...........................20

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................4

*Bollettieri Resort Villas Condo. Ass'n, Inc. v. Bank of N.Y. Mellon*,
    228 So. 3d 72 (Fla. 2017)..........................................................................................11

*In re Boodrow*,
    126 F.3d 43, 48 (2d Cir. 1997).................................................................................15

*Brecher v. Republic of Argentina*,
    806 F.3d 22 (2d Cir. 2015)........................................................................................22

*Calvo v. City of New York*,
No. 14-CV-7246 (VEC), 2017 WL 4231431 (S.D.N.Y. Sept. 21, 2017) ...............................22

*Caplan v. Winslett*,
218 A.D.2d 148 (N.Y. 1st Dep't 1996) ..........................................................................20, 21

*Charles v. Deutsche Bank Nat'l Trust Co.*,
No. 15-cv-21826, 2016 WL 950968 (S.D. Fla. Mar. 14, 2016) ............................................17

*Cohen v. Rosicki, Rosicki & Assocs.*,
897 F.3d 75 (2d Cir. 2018)...................................................................................7, 8, 9

*Collins Asset Group, LLC v. Alialy*,
--- N.E.3d ---, 2020 WL 762593 (Ind. 2020) ....................................................................11

*Crawford v. Franklin Credit Mgmt. Corp.*,
758 F.3d 473 (2d Cir. 2014)...........................................................................................19

*Daniel v. Mondelez Int'l, Inc.*,
287 F. Supp. 3d 177 (E.D.N.Y. 2018) ...............................................................................19

*Davis v. Citibank, N.A.*,
116 A.D.3d 819, 820-21 (2d Dep't 2014) ....................................................................15, 16

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006).............................................................................................22

*Drossin v. Nat'l Action Fin. Servs., Inc.*,
255 F.R.D. 608 (S.D. Fla. 2009) ......................................................................................23

*Eades v. Kennedy, PC Law Offices*,
799 F.3d 161 (2d Cir. 2015)...............................................................................................9

*Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*,
950 So. 2d 380 (Fla. 2007)...............................................................................................20

*Ehrich v. RJM Acquisitions LLC*,
No. 09-cv-2696, 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009)......................................18

*EMC Mortg. Corp. v. Smith*,
18 A.D.3d 602 (N.Y.A.D. 2d Dep't 2005) .........................................................................12

*In re Failla*,
838 F.3d 1170 (11th Cir. 2016) ..................................................................................15, 16

*Fait v. Regions Fin. Corp.*,
655 F.3d 105 (2d Cir. 2011)...............................................................................................4

*Fed. Nat'l Morg. Ass'n v. Rosenberg*,
    --- N.Y.S.3d ---, 2020 WL 536323, at *1-2 (N.Y.A.D. 1st Dep't Feb. 4, 2020).....................13

*Flecha v. Medicredit, Inc.*,
    946 F.3d 762, 762 (5th Cir. 2020) .........................................................................22

*Frechtman v. Gutterman*,
    115 A.D.3d 102, 979 N.Y.S.2d 58, (N.Y.A.D. 1st Dep't 2014) ........................................20, 21

*Freedom Mortgage Corp. v. Engel*,
    APL-2019-00114, Orange County Clerk's Index. No. 001139/15 (NY) ...............................13

*Garrison v. Caliber Home Loans, Inc.*,
    233 F. Supp. 3d 1282 (M.D. Fla. 2017).................................................................11, 17

*Gesualdi v. Fazio*,
    No. 16-cv-5209, 2017 WL 8794775 (2017) ..................................................................2

*Giles v. Phelan, Hallinan & Schmieg, L.L.P.*,
    901 F. Supp. 2d 509 (D.N.J. 2012) .........................................................................20

*Gold v. Shapiro, Dicaro & Barak, LLC*,
    No. 18-cv-6787, 2019 WL 4752093 (20 E.D.N.Y. Sept. 30, 201919) ............................6, 7, 11

*Goldberg v. Winston & Morrone, P.C.*,
    No. 95 Civ. 9282, 1997 WL 139526 (S.D.N.Y. March 26, 1997).........................................25

*Grasso v. Mathew*,
    164 A.D.2d 476, 564 N.Y.S.2d 576 (N.Y.A.D. 3d Dep't 1991) .............................................19

*Hackett v. Midland Funding LLC*,
    No. 18-cv-6421, 2019 WL 1902750 (W.D.N.Y. Apr. 29, 2019)..............................................9

*Henson v. Santander Consumer USA Inc.*,
    137 S. Ct. 1718 (2017)........................................................................................5

*Ho v. ReconTrust Company, NA*,
    858 F.3d 568, 573 (9th Cir. 2016) ...........................................................................7

*Int'l Publ'g Concepts, LLC v. Locatelli*,
    9 N.Y.S.3d 593 (Sup. Ct. 2015)..............................................................................20

*In re Initial Pub. Offering Sec. Litig.*,
    471 F.3d 24, 44-45 (2d Cir. 2006) ..........................................................................23

*Jaffe v. Capital One Bank*,
    No. 09 CIV. 4106 (PGG), 2010 WL 691639 (S.D.N.Y. Mar. 1, 2010)....................................21

*John v. Nat'l Sec. Fire & Cas. Co.*,
  501 F. 3d 443, 445 (5th Cir. 2007) .......................................................................22

*Johnson v. Home State Bank*,
  501 U.S. 78 (1991) ..............................................................................................8

*Johnson-Gellineau v. Steine & Assocs., P.C.*,
  No. 16-cv-9945, 2019 WL 2647598, at *8 (S.D.N.Y. June 27, 2019) ....................6

*Kurzban v. Specialized Loan Servicing, LLC*,
  No. 17-cv-20713, 2018 WL 1570370 (S.D.Fla. Mar. 30, 2018) ..........................17

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
  897 F.3d 88 (2d Cir. 2018)...................................................................................24

*Larsen v. JBC Legal Grp., P.C.*,
  235 F.R.D. 191 (E.D.N.Y. 2006) ....................................................................24, 25

*Lena v. Cach, LLC*,
  No. 14-cv-01805, 2015 WL 4692443 (N.D. Ill. Aug. 6, 2015) ..............................9

*Loeb v. Willis*,
  100 N.Y. 231, 235 (1885) ....................................................................................12

*Lubonty v. U.S. Bank, N.A.*,
  2019 NY Slip Op. 08520, 2019 WL 6255790 (N.Y. Nov. 25, 2019).....................12

*Mahmoud v. De Moss Owners Ass'n Inc.*,
  865 F.3d 322 (5th Cir. 2017) ...............................................................................11

*Mayfield v. Asta Funding*,
  95 F.Supp.3d 685 (S.D.N.Y. 2015) ......................................................................21

*In re MERS Litigation*,
  MDL 09-2119, 2015 WL 9268189, at *3 (D. Ariz. Dec. 21, 2015) .......................24

*Midland Funding, LLC v. Johnson*,
  137 S. Ct. 1407 (2017)........................................................................................10

*Miljkovic v. Shafritz & Dinkin, P.A.*,
  791 F.3d 12 (11th Cir. 2015) .................................................................................9

*Miller v. Carrington Mortg. Servs., LLC*,
  607 BR 1 (D.Me. 2019) .........................................................................................7

*Obduskey v. McCarthy & Holthus LLP*,
  139 S. Ct. 1029 (2019)..................................................................................7, 8, 9

51805319;1

*OneWest Bank, N.A. v. Simon*,
   No. 14-cv-6622, 2019 WL 1320275, at *10 (E.D.N.Y. Mar. 22, 2019)................................12

*Paggen v. Bank of America, N.A.*,
   No. 17-cv-01241, 781 F. App'x 779 (10th Cir. 2019) .............................................13

*Pantoja v. Portfolio Recovery Assocs., LLC*,
   852 F.3d 679 (7th Cir. 2017) .....................................................................11

*Peterson v. Portfolio Recovery Assocs., LLC*,
   430 F. App'x 112, 114 (3d Cir. 2011) ............................................................18

*In re Petrobras Sec.*,
   862 F.3d 250 (2d Cir. 2017).......................................................................24

*Plaia v. Safonte*,
   45 A.D.3d 747 (N.Y.A.D. 2d Dep't 2007) ..........................................................11

*In re Pratt*,
   462 F.3d 14 (1st Cir. 2006)........................................................................15

*Rahman v. Smith & Wollensky Rest. Group, Inc.*,
   No. 06 Civ. 6198(LAK)(JCF), 2008 WL 161230 (S.D.N.Y. Jan. 16, 2008).........................21

*Riffle v. Convergent Outsourcing, Inc.*,
   311 F.R.D. 677, 684 (M.D. Fla. Nov. 2, 2015)...................................................23

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) ......................................................22

*Sandoval v. Ali*,
   34 F.Supp.3d 1031, 1044 (N.D. Cal. 2014) .......................................................24

*Schilling v. Kenton County, KY*,
   No. 10-cv-143, 2011 WL 293759, at *6 (E.D. Ky. Jan. 27, 2011)..............................23

*Simmons v. Miller*,
   970 F. Supp. 661 (S.D. Ind. 1997) ..........................................................10, 17

*Singh v. NYCTL 2009-A Trust*,
   683 F. App'x 76 (2d Cir. 2017) ...................................................................19

*Souza v. Bank of America, N.A.*,
   No. 1:13-cv-10181, 2013 WL 3457185, at *3 (D.Mass. July 8, 2013) ..................................16

*Sparkman v. Zwicker & Assocs., P.C.*,
   374 F. Supp. 2d 293 (E.D.N.Y. 2005) .............................................................25

51805319;1

*Spira v. Ashwood Fin., Inc.*,
  358 F. Supp. 2d 150, 158 (E.D.N.Y. 2005) ...................................................18

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...................................................................................22

*Taylor v. Ocwen Loan Servicing, LLC*,
  No. H-12-2929, 2013 WL 33539455, at*4 (S.D. Tex. July 3, 2013) ...................18

*Tepper v. Amos Financial, LLC*,
  898 F.3d 364 (3d Cir. 2018)...............................................................................6

*T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*,
  312 F.3d 90 (2d Cir. 2002)................................................................................19

*Uche v. North Star Capital Acquisition, LLC*,
  No. 4:09-cv-3123, 2011 WL 978240 (D. Neb. Mar. 17, 2011) ....................10, 17

*U.S. Bank Trust, NA, etc. v. Adhami*,
  No. 18-cv-530, 2019 WL 486086 (E.D.N.Y. Feb. 6, 2019) ...................................13

*Vega v. Credit Bureau Enters.*,
  No. CV 02–1550, 2005 WL 711657 (E.D.N.Y. Mar. 29, 2005) ...........................25

*Weiner v. Snapple Bev. Corp.*,
  No. 07-cv-8742, 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010)...................23

*Wortman v. Rushmore Loan Mgmt. Servs. LLC*,
  No. 19-cv-2860, 2019 WL 5208893 (N.D. Ill. Oct. 16, 2019) ...............................17

**Statutes**

11 U.S.C. § 521.................................................................................................14, 15

11 U.S.C. § 524...................................................................................................8, 20

15 U.S.C. § 1692....................................................................................................1

15 U.S.C. § 1692a...........................................................................................5, 6, 7

15 U.S.C. § 1692e ........................................................................................ passim

15 U.S.C. § 1692g.........................................................................................4, 17, 18

NY GBL § 349......................................................................................3, 18, 19, 21

NY RPAPL § 1304 ..................................................................................................3, 9

**Rules**

Fed R. Civ. P. 12 ................................................................................................. passim

Fed R. Civ. P. 23 ................................................................................................. passim

51805319;1

# I.    INTRODUCTION

The Del Rios do not have an "ironclad" statute of limitations defense to the pending foreclosure that can sustain a Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (**FDCPA**) claim.  Multiple bases support Shellpoint's alleged "threats" to foreclose and BoNYM's actual foreclosure action.[1]  Most prominently, through their publicly filed bankruptcy petition, the Del Rios informed movants of their intent to surrender the property to the creditor.  The Del Rios are estopped from defending BoNYM's foreclosure of the lien, which, because of the bankruptcy discharge, is security enforcement activity only rather than FDCPA-covered debt collection.

Any past acceleration, which is disputed, also was revoked when the prior foreclosure was voluntarily discontinued <u>within</u> the statute of limitations.  The Del Rios' own pleadings confirm, following the discontinuance, rather than requiring payment of the accelerated balance, the pre-suit letters told the Del Rios that, to avoid foreclosure, they needed to cure the default only.  As a matter of law there can be no FDCPA claim—or New York General Business Law (**GBL**) claim either—based on pursuing an alleged time-barred foreclosure when there is a genuine dispute as to whether the claim is time-barred.

For these reasons and more discussed below, movants seek prejudicial dismissal.

In addition to failing to state a claim, the Del Rios' putative class is hopelessly vague, includes putative members with no standing, and is overbroad.  It should be stricken pursuant to rule 12(f) or amended pursuant to rule 23(d)(1)(D).

---

[1] "Shellpoint" refers to defendant NewRez LLC D/B/A Shellpoint Mortgage Servicing, and "BoNYM" refers to defendant The Bank of New York Mellon F/K/A The Bank of New York, as Trustee for the Certificateholders of CWALT Inc., Alternative Loan Trust 2007-11T1, Mortgage Pass-Through Certificates, Series 2007-11T1.

1

## II.     STATEMENT OF FACTS[2]

The Del Rios executed a $536,000.00 mortgage loan in February 2007, which is secured by real property located in Bronx, New York.  (Doc. 34 (**Am. Compl.**) ¶ 17.)  The mortgage loan consolidated two prior loans.  (*Id.*)  BoNYM is the note holder, and Shellpoint services the loan for BoNYM.  (*Id.* ¶¶ 35, 40; *see also* Smith Decl., Ex. F.)

The Del Rios defaulted in their loan payments, and, on August 24, 2009, BoNYM instituted foreclosure proceedings.  (Am. Compl. ¶ 18.)  The filed and served complaint does not name the Del Rios and refers to the incorrect mortgage and loan trust.  (*See* Smith Decl., Ex. A.)

BoNYM filed an amended complaint on October 23, 2009.  (Am. Compl. ¶ 18.)  This complaint was not filed with leave of court and is a nullity.  (*See* Smith Decl., Ex. G.)  The complaint, nevertheless, named the Del Rios, alleged a non-payment default beginning October 1, 2008 that was not cured, and stated BoNYM was attempting to accelerate the amounts due under the subject note and mortgage.  (*See* Smith Decl., Ex. B.)

The Del Rios filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code on March 7, 2011.  (*See* Smith Decl., Ex. C.)  The Del Rios' statement of intention confirmed they would surrender the property to the creditor BAC Home Loans Servicing. (*Id.* at 39.)  The Del Rios received a discharge on June 14, 2011.  (*See* Smith Decl., Ex. D.)

BoNYM filed a stipulated discontinuance in the foreclosure on August 25, 2015.  (*See id.*, Ex. E.)  The court entered an order on the discontinuance in September 2015.  (Am. Compl. ¶ 19.)

BoNYM, through its counsel, McCabe, Weisberg & Conway, LLC (**McCabe**), filed a new foreclosure case on August 29, 2019.  (Am. Compl. ¶ 41; *see also* Smith Decl., Ex. F.)  The

---

[2] The facts as stated within the complaint are taken as true for purposes of this motion only except where contradicted by the publicly available documents movants have attached as EXHIBITS A-G to the Declaration of Jordan M. Smith (**Smith Decl.**). When ruling on a motion to dismiss, the court may consider them. *See, e.g., Gesualdi v. Fazio*, No. 16-cv-5209, 2017 WL 8794775, at *3 (E.D.N.Y. Dec. 12, 2017).

complaint does not contain a warning that the "debt" is "time-barred." (Am. Compl. ¶ 27; *see also* Smith Decl., Ex. F.) Attached to the complaint was an additional notice from McCabe that the Del Rios were at risk of foreclosure. (Am. Compl. ¶¶ 42-43; *see also* Smith Decl., Ex. F.)

Ahead of filing the 2019 foreclosure complaint, Shellpoint allegedly sent the Del Rios monthly mortgage statements, reflecting various amounts due. (Am. Compl. ¶¶ 30-32.)

On March 29, 2019, Shellpoint sent the Del Rios a letter titled "notice of default and intent to accelerate." (*Id.* ¶ 33.) This is the "breach letter." The breach letter informed the Del Rios that "the total amount necessary to bring the Loan current [wa]s $288.321.24." (*Id.* ¶ 36.) The Del Rios were given 90 days to cure the default. (*Id.* ¶ 37.) The Del Rios were warned that a failure to cure the default could lead to acceleration and foreclosure of the lien. (*Id.*)

Also on March 29, 2019, Shellpoint sent the Del Rios a letter pursuant to New York State law RPAPL § 1304. (*Id.* ¶¶ 38-39.) This letter is the "90 day pre-foreclosure notice." The letter stated the default amount and warned the Del Rios "[u]nder New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home." (*Id.* ¶ 39.)

On October 21, 2019, the Del Rios served an answer and counterclaim in the foreclosure, seeking "an order cancelling and discharging the mortgage as time-barred." (*Id.* ¶ 28.) BoNYM replied to the counterclaim, and the parties are briefing the Del Rios' motion for judgment quieting title based on the same limitations argument basing the claims here. (Smith Decl., Ex. G.)

On November 6, 2019, the Del Rios also filed the instant case against McCabe, Shellpoint, and BoNYM. (*See generally* Doc. 1.) After defendants moved to dismiss, the Del Rios filed the operative amended complaint as of right. (Doc. 34.)

The Del Rios generally claim defendants violated FDCPA § 1692e and GBL § 349 by threatening them with foreclosure and actually instituting a foreclosure when—they claim—any

foreclosure action was barred by the statute of limitations. (*Id.* ¶¶ 57-59, 78-79.) The separately claim every letter mailed by Shellpoint is "classified" as an initial communication subject to § 1692g, which Shellpoint then allegedly violated by not including the required § 1692g(a) disclosures. (*Id.* ¶¶ 31, 34, 68.) The Del Rios cannot state a claim on these facts, and movants request prejudicial dismissal.

The Del Rios also seek to certify the following class under rule 23(b)(2) and 23(b)(3): "all persons who were potentially subjected to letters from Shellpoint and time-barred foreclosure actions from Bank of New York and McCabe in the state of New York." (Am. Compl. ¶ 44.) This putative class is hopelessly vague, unascertainable, and cannot satisfy the requirements of rules 23(b)(2) or 23(b)(3). If the case survives dismissal, the putative class claim should be stricken as uncertifiable on its face.

## III.    ARGUMENT SUPPORTING DISMISSAL

To survive a rule 12(b)(6) dismissal motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Mere "labels and conclusions or formulaic recitations of the elements of a cause of action" are insufficient. *Id.*

Although courts must take all complaint allegations as true, *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 109 (2d Cir. 2011), legal conclusions (even those "couched as [ ] factual allegation[s]"), however, do not merit this regard. *Iqbal*, 556 U.S. at 678.

## A.    Section 1692e Claim Fails as a Matter of Law

The Del Rios claim movants violated FDCPA § 1692e "by using false and deceptive representation in connection with the collection of the debt" and "by misrepresenting the character, amount, or legal status of the asserted debt." (Am. Compl. ¶¶ 56, 66.) It appears the claims against Shellpoint relate to the March 29 letters only. (*Id.* ¶ 58.) And the claims against BoNYM are

based on filing the 2019 foreclosure action only.  (*Id.* ¶ 66.)

### 1.  BoNYM Not a Debt Collector.

The Del Rios confusingly plead both Shellpoint controls BoNYM's collection activities and BoNYM controls Shellpoint's collection activities such that Shellpoint and BoNYM are principals and agents for each other.  (Am. Compl. ¶¶ 15-16.)  More accurately, the Del Rios later clarify Shellpoint is the loan servicer for BoNYM as creditor.  (*Id.* ¶¶ 35, 40.)  This is consistent with the 2019 foreclosure complaint.  (*See* Smith Decl., Ex. F at 6.)

FDCPA § 1692e applies to "debt collectors" only.  15 U.S.C. § 1692e; *see also Bank of N.Y. Mellon, etc. v. Henderson*, 862 F.3d 29, 34 (D.C. Cir. 2017) ("The FDCPA creates two 'mutually exclusive' categories, debt collectors and creditors, but only debt collectors are regulated by the statute.").  A creditor, *i.e.*, the person "to whom a debt is owed," *see id.* § 1692a(4), collecting for itself—even when that account is acquired when the account was in default—is not a debt collector subject to FDCPA.  *See Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721-22 (2017) (creditors may collect without triggering FDCPA); *Henderson*, 862 F.3d at 34 (BoNYM not a debt collector).  Regardless of the Del Rios' inaccurate assertion that BoNYM acquired the loan after it was in default,[3] BoNYM is a "creditor" and is not subject to FDCPA.

The Del Rios try to avoid this conclusion by alleging "upon information and belief," BoNYM's principal purpose is debt collection., "more than half of [BoNYM]'s respective revenue derives from debt collectionb" and BoNYM is the plaintiff in "thousands" of foreclosures.  (Am. Compl. ¶¶ 8, 11); *cf Henson*, 862 F.3d at 1721 (declining to address whether a creditor, whose

---

[3] Pursuant to the publicly available contracts setting up BoNYM as trustee over the loan pool containing the Del Rios' loan, the loan was included in the loan pool at least within thirty days of March 30, 2007. (*See* Pooling and Servicing Agreement, Art. II § 2.01(a) ( p. I-8, available at https://www.sec.gov/Archives/edgar/data/1392660/000090514807003582/efc7-338_6090342ex991.htm). The Del Rios non-payment default began well after 2007.  (Smith Decl., Ex. B (alleging a non-payment breach beginning in October 2008).)

principal purpose is debt collection, is a debt collector).

Such conclusory pleading is insufficient to establish BoNYM's "principal purpose" is debt collection. *See Gold v. Shapiro, Dicaro & Barak, LLC*, No. 18-cv-6787, 2019 WL 4752093, at *5 (E.D.N.Y. Sept. 30, 2019). Rather than establishing a debt collection purpose, that BoNYM is the foreclosing plaintiff, confirms BoNYM is a "creditor" excepted from FDCPA's reach. *See, e.g., Johnson-Gellineau v. Steine & Assocs., P.C.*, No. 16-cv-9945, 2019 WL 2647598, at *8 (S.D.N.Y. June 27, 2019) (dismissing creditor despite similar allegations because, "[e]ven if true, these allegations indicate that Wells Fargo regularly seeks to collect debt on its own behalf . . ."). As the trustee over the Del Rios' loan pool, *see* fn. 3, the Del Rios have not plausibly alleged BoNYM's principal purpose is debt collection. *See Arnold v. Bayview Loan Servicing, LLC*, No. 14-cv-0543, 2016 WL 375154, at *13 (S.D. Ala. Jan. 29, 2016) (U.S. Bank as trustee over loan pool was not a debt collector: "[i]t is self-evident, after all, that the 'principal purpose' of an investment trust's business is to earn financial returns on investments.").

BoNYM further disputes that a "creditor" under § 1692a(4) may also be a "debt collector" subject to § 1692e merely because it meets the "principal purpose" definition of a debt collector in § 1692a(6). FDCPA's definitions confirm a "creditor" may be subject to FDCPA <u>only</u> where that person: **(1)** "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another" <u>and</u> otherwise meets the § 1692a(6) debt collector definition; <u>or</u> (2) "in the process of collecting his own debts, uses any name other than his own which would indicate a third parson is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(4) & (6); *but see Tepper v. Amos Finan., LLC*, 898 F.3d 364 (3d Cir. 2018) (creditor whose principle purpose was debt collection considered a FDCPA-covered debt collector). The Del Rios do not plead either exception exists, and BoNYM should be dismissed with prejudice.

6

## 2. Subject Foreclosure is Security Enforcement Only.

Even if the Del Rios adequately alleged BoNYM was a "debt collector," the only alleged debt collection activity basing their claim against BoNYM is the foreclosure filing (Am. Compl. ¶ 66), which is security enforcement activity excepted from FDCPA's reach.[4]

Whether foreclosing in New York when a deficiency judgment is not "permitted" can be actionable debt collection under FDCPA has not been expressly decided by the Second Circuit. But, based on *Cohen v. Rosicki, Rosicki & Associates*, 897 F.3d 75 (2d Cir. 2018), as well as the Supreme Court's *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038 (2019), opinion, movants submit the Court would hold BoNYM's foreclosure is security enforcement activity only.

In *Cohen*, the Second Circuit held "a foreclosure action is an 'attempt to collect a debt' as defined by the FDCPA" because the purpose of the foreclosure was to "obtain payment of the underlying mortgage note." 897 F.3d at 82-83. The Court grounded this finding, in part, on the mortgagee's right to obtain a deficiency judgment in the foreclosure action. *Id.* The Court even distinguished its holding from the Ninth Circuit's *Ho v. ReconTrust Company, NA*, 858 F.3d 568, 573 (9th Cir. 2016), opinion, which held the non-judicial foreclosure in that case was not debt collection, because New York's judicial foreclosure scheme "permits" deficiency judgments while the non-judicial foreclosure scheme in *Ho* did not. *Id.* at 82 n.7.

After *Cohen* was decided, the United States Supreme Court analyzed the § 1692a(6) definition of debt collector, holding non-judicial foreclosure activity is security enforcement only and excepted from FDCPA liability.[5]  *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029,

---

[4] It does not appear the Del Rios are seeking to hold Shellpoint liable for the foreclosure filing. Even if they were, BoNYM—not Shellpoint—is the foreclosure plaintiff, and Shellpoint cannot be liable for an FDCPA claim allegedly arising out of the creditor's complaint filing. *See Gold*, 2019 WL 4752093, at *7 & n.11; *see also Miller v. Carrington Mortg. Servs., LLC*, 607 BR 1, 12 (D.Me. 2019) (same).

[5] Except as to §1692f(6), which is not at issue here.

1038 (2019). In reaching this conclusion, the Court first found foreclosing—whether judicial or nonjudicial—is at least indirect debt collection subject to the general definition of "debt collector" and to FDCPA. *Id.* at 1036. Nevertheless, because Congress expressly excluded "security enforcement activity" from the general definition, *id.* at 1036-37, entities engaged in security enforcement activity only—such as a non-judicial foreclosure—are not debt collectors subject to FDCPA. *Id.* The Court also held "antecedent steps required" by state law to enforce the security instrument—which in *Obduskey* included notice and an opportunity for the borrower to cure the non-payment default—are part of security enforcement and not debt collection as well. *Id.* at 1039. The Court left open the question of whether judicial foreclosures are debt collection, indicating through a parenthetical that the ability to get a deficiency judgment is a "potentially relevant distinction" between judicial and non-judicial foreclosures. *Id.*

In both *Cohen* and *Obduskey*, the ability to obtain a deficiency judgment—not whether security enforcement is achieved through a court system—was material to whether a mortgagee was engaged in security enforcement activity only and excepted from FDCPA's reach.

Because of the bankruptcy discharge, BoNYM cannot seek—and did not seek (*see* Smith Decl., Ex. F)—a deficiency judgment. *See* 11 U.S.C. § 524(a)(2) (A discharge is "an injunction" prohibiting a creditor from taking any act "to collect, recover or offset any [discharged] debt as a personal liability of the debtor."). As explained in the discharge order, BoNYM only has "the right to enforce a valid lien, such as a mortgage or security interest against the debtor's property." (*See* Smith Decl., Ex. D); *see also Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) ("[T]he mortgage survives or passes through the bankruptcy."). So, while BoNYM must file a lawsuit to enforce its security instrument—as did the mortgagee in *Obduskey*, *see* 139 S.Ct. at 1034—the process is security enforcement activity only. In other words, in light of the discharge injunction,

the subject foreclosure is more analogous to the non-judicial foreclosure at issue in *Obduskey* than the typical judicial foreclosure at issue in *Cohen*.

Because BoNYM's foreclosure is not debt collection, the preliminary steps required to institute that proceeding are also not debt collection. *See Obduskey*, 139 S.Ct. at 1039. This means both the breach letter, required by mortgage ¶ 22, and the New York pre-foreclosure notice, required by NY RPAPL § 1304, are not debt collection.

### 3.    Claim Fails on the Merits.

The basic premise of the Del Rios' complaint appears to be that defendants violated FDCPA § 1692e by threatening to and initiating a foreclosure allegedly outside New York's foreclosure statute of limitations. (Am. Compl. ¶¶ 60-67.) This claim fails as a matter of law because: **(1)** there is no law or binding appellate precedent holding the foreclosure is time barred; and **(2)** the Del Rios are barred from raising a statute of limitations affirmative defense (or any defense for that matter) due to their prior bankruptcy surrender.

#### a.    *The Statute of Limitations Has Not Run.*

"An . . . objective of the FDCPA is the preservation of creditors' judicial remedies. If judicial proceedings are to accurately resolve disputes, including debt collection disputes, debt-collector attorneys must be permitted to present legal arguments in the clients' favor and to invoke the remedies available to them." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1307 (11th Cir. 2015) (quotations and citations omitted). So, "[t]o state an FDCPA claim against a debt collector for filing a collection case, a plaintiff must plausibly allege that the debt collector filed its collection case without 'a good faith belief in its validity.'" *Hackett v. Midland Funding LLC*, No. 18-cv-6421, 2019 WL 1902750, at *3 (W.D.N.Y. Apr. 29, 2019) (citing *Lena v. Cach, LLC*, No. 14-cv-01805, 2015 WL 4692443, at *3 (N.D. Ill. Aug. 6, 2015); *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 172 (2d Cir. 2015) (plaintiffs failed to state a FDCPA claim where

9

there was no allegation the lawsuit was without a good faith basis).

Building upon the lack of a good faith belief, "[e]very court to have considered the question has held that a debt collector that <u>knowingly</u> files suit in court to collect a time-barred debt violates the FDCPA." *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1417 (2017) (Sotomayor, J., dissenting) (emphasis added); *see also id.* at 1413 (noting non-binding cases finding a FDCPA violation were limited to a debt collector's assertion of a "known" stale claim);[6] *Beattie v. DM Collections, Inc.*, 754 F. Supp. 383, 393 (D. Del. 1991) (merely because a consumer may have an available defense is insufficient to state a FDCPA claim; only "the threatening of a lawsuit which the debt collector knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate"). This extends to threatened litigation also. *Beattie*, 754 F. Supp. at 393; *Anthony v. Fein, Such & Crane, LLC*, No. 5:15-cv-452, 2015 WL 3419140, at *4 (N.D.N.Y. May 27, 2015) ("Threatening to, and the filing of, a lawsuit which a debt collector <u>knows or should have known</u> is time-barred have been found to be actionable under the FDCPA.") (emphasis added).

When the debt collector has a good faith argument that its debt is not time barred—for example when the law is unsettled—a FDCPA claim cannot stand. *See Simmons v. Miller*, 970 F. Supp. 661, 664 (S.D. Ind. 1997) (with no definitive ruling from Indiana's highest court, defendants did not "knowingly" file a time-barred suit in violation of FDCPA); *Uche v. North Star Capital Acquisition, LLC*, No. 4:09-cv-3123, 2011 WL 978240, at *2 (D. Neb. Mar. 17, 2011) (no FDCPA claim because law was unsettled on the appropriate statute of limitations); *Almand v. Reynolds & Robin, P.C.*, 485 F. Supp. 2d 1361, 1364 (M.D. Ga. 2007) (no FDCPA violation where there was

---

[6] Whether a debt collector violates FDPCA by instituting a legal action on known time-barred debt is not a settled point of statutory construction by the Second Circuit or United States Supreme Court. For purposes of this motion only, however, movants will assume the Second Circuit would agree with the majority pattern as stated by Justices Breyer and Sotomayor in *Midland Funding*, *supra*.

uncertainty on which statute of limitation applied); *cf. Mahmoud v. De Moss Owners Ass'n Inc.*, 865 F.3d 322, 334 & 332 n.2 (5th Cir. 2017) (no potential FDCPA liability for threatening foreclosure on at best a partially time barred debt, in part, because it was disputed whether the debt was time-barred); *Garrison v. Caliber Home Loans, Inc.*, 233 F. Supp. 3d 1282, 1294 (M.D. Fla. 2017) (having a potential statute of limitations affirmative defense did not provide a "plausible basis" for FDCPA claims).[7]  In other words, for liability to stand, the consumer must have an "ironclad" statute of limitations defense.  *See, e.g., Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017).

The statute of limitations for mortgage foreclosures in New York is 6 years, running from the date the entire mortgage debt becomes due under the loan terms or was accelerated.  *Plaia v. Safonte*, 45 A.D.3d 747, 748 (N.Y.A.D. 2d Dep't 2007).[8]  Acceleration must be unequivocal and is typically accomplished through a foreclosure filing expressly declaring the loan is accelerated.

---

[7] In *Gold*, the court recognized that "courts in this Circuit have generally found that filing a civil action knowing that it was time barred is a violation of the FDCPA."  2019 WL 4752093, at *7 (emphasis added). But, in a footnote, the court appears to conclude this is a product of FDCPA's statutory bona fide error defense. *Id.* at *7 n.11.  That is incorrect.  Instead, case law supports that, as a part of *plaintiff's* burden, the consumer must establish an "ironclad" statute of limitations defense.  Only *if* a plaintiff first meets this burden, does the burden switch to a defendant to establish a bona fide error defense if available.

[8] New York court decisions suggest a separate statute of limitations runs as to each unpaid installment, reducing the amount owed if the default began more than six years prior to acceleration (or loan maturity). This rule ignores the parties' contracts.  With regard to non-payment defaults, the note and mortgage provide:  "**if all of the conditions stated . . . are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument.**"  (Smith Decl., Ex. F (Mortgage ¶ 22 (emphasis in original); *see also id.* (Note ¶ 6(C) ("If I am in default, . . . the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.").)  The amount "unpaid" under the note is not individual monthly payments, but the entire loan amount.  The lender does not and cannot foreclose to recoup missed payments. *See, e.g., Bollettieri Resort Villas Condo. Ass'n, Inc. v. Bank of N.Y. Mellon*, 228 So. 3d 72 (Fla. 2017) (Lawson, J., concurring).  Even if there is a statute of limitations for suing on missed payments, that is inapplicable to a suit for the total amount owed.  *See, e.g., Collins Asset Group, LLC v. Alialy*, --- N.E.3d ----, 2020 WL 762593 (Ind. 2020).  BoNYM's foreclosure seeks a declaration of the loan balance (plus interest and other allowed charges).  (*See generally* Smith Decl, Exs. C, F (foreclosure complaint).) Consistent with the note and mortgage non-waiver clauses, only payments—not time—reduce the amount owed.  (*Id.*, Ex. F (Mortgage ¶ 12(h)); *see also id.* (Note ¶ 6(D) (forbearance is not waiver).)

11

*See EMC Mortg. Corp. v. Smith*, 18 A.D.3d 602, 603 (N.Y.A.D. 2d Dep't 2005). Acceleration, however, can be revoked before the statute of limitations runs, and certain actions—like a bankruptcy—toll the statute of limitations. *Lubonty v. U.S. Bank, N.A.*, 2019 NY Slip Op. 08520, 2019 WL 6255790 (N.Y. Nov. 25, 2019).

The Del Rios allege the loan was accelerated when the prior foreclosure complaint was filed on August 24, 2009. (Am. Compl. ¶ 18.) If true, under the Del Rios' theory, absent any other facts, the statute of limitations would have run August 24, 2015.

But incontrovertible record facts, *i.e.*, the Del Rios' intervening bankruptcy and BoNYM's deceleration, show that, even if the loan was accelerated on August 24, 2009, the statute of limitations has not run. Or, at least they show there are issues of fact as to the running of the statute of limitations, making BoNYM's good faith prosecution of the *in rem* foreclosure action non-actionable under FDCPA.

After the loan was allegedly accelerated, the Del Rios filed a bankruptcy, which was pending for 3 months. (*See* Smith Decl., Exs. D-E.) The bankruptcy stay was 3 months, tolling the foreclosure statute of limitations at least until November 2015. *Lubonty*, 2019 WL 6255790.

And, before November 2015, BoNYM filed a stipulated discontinuance. (Smith Decl., Ex. E.) BoNYM's express promise to discontinue its action to foreclose—the very act that allegedly constituted the election to accelerate the loan in the first place (*see* Am. Compl. ¶ 18)—revoked any acceleration election. *See, e.g., Loeb v. Willis*, 100 N.Y. 231, 235 (1885) (after a foreclosure is discontinued, "what has been done therein is also annulled . . ."); *see also OneWest Bank, N.A. v. Simon*, No. 14-cv-6622, 2019 WL 1320275, at *10 (E.D.N.Y. Mar. 22, 2019) (agreeing that a stipulated discontinuance decelerated the loan and noting there was no binding caselaw saying otherwise); *but see Freedom Mtg. Corp. v. Engel*, 163 A.D.3d 634, 633, 81 N.Y.S.3d 156

(N.Y.A.D. 2018) (appeal pending; stipulated discontinuance alone was insufficient to "raise a trial issue of fact" as to whether acceleration was revoked).[9]  The discontinuance also confirmed the dismissal was without prejudice.  (Smith Decl., Ex. E.)  In other words, the parties agreed that nothing that occurred in the 2009 foreclosure action would prohibit BoNYM from accelerating and foreclosing again.  This conclusion is consistent with the parties' contract: "Even if Lender does not . . . enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future."  (Smith Decl., Ex. F (Mortgage ¶ 12(h)); *see also id.* (Note ¶ 6(D)  ("Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.").)  The loan was decelerated.

While the issue of deceleration through a voluntary discontinuance is now before the New York Court of Appeals, *see Freedom Mortgage Corp. v. Engel,* APL-2019-00114, Orange County Clerk's Index. No. 001139/15 (NY), there is no binding authority from the Legislature or the New York Court of Appeals in the Del Rios' favor.  Minimally, the discontinuance creates an issue of fact as to whether the alleged acceleration was timely revoked supporting BoNYM's good faith re-filing of the foreclosure.  *See, e.g.*, *U.S. Bank Trust, NA, etc. v. Adhami*, 18-cv-530, 2019 WL 486086, at *5-6 (E.D.N.Y. Feb. 6, 2019) (prior voluntary discontinuance created issue of fact as to whether acceleration was revoked); *Fed. Nat'l Morg. Ass'n v. Rosenberg*, --- N.Y.S.3d ---, 2020 WL 536323, at *1-2 (N.Y.A.D. 1st Dep't Feb. 4, 2020) (prior motion for voluntary discontinuance

---

[9] Other jurisdictions considering similar mortgage contracts agree that a voluntary discontinuance of the foreclosure process returns the parties to the status quo as though the loan had not been accelerated.  *See, e.g., Bartram v. U.S. Bank Nat'l Ass'n*, 211 So. 3d 1009, 1021 (Fla. 2016) ("dismissal of the foreclosure action and the effect of revoking the acceleration"); *Andra R. Miller Designs v. U.S. Bank NA*, 418 P.3d 1038, 1044 (Ariz. Ct. App. 2018) (creditor's recorded cancellation of the trustee's sale was sufficient to revoke acceleration); *Paggen v. Bank of America, N.A.*, No. 17-cv-01241, 2018 WL 4075881, at *7 (D. Colo. Aug. 27, 2018) (withdrawal of notice of election decelerated).

was "evidence that [the note holder] took affirmative action to de-accelerate the mortgage").

The Del Rios' own pleading further supports that the discontinuance decelerated the loan because, after the discontinuance, movants did not seek the accelerated balance. Instead, consistent with deceleration, only the amount to cure the default was identified in future correspondence. (Am. Compl. ¶¶ 32-33, 36-39; *see also* Smith Decl., Ex. G.)

In addition to BoNYM decelerating before any statute of limitations could have run, BoNYM disputes the loan was accelerated when the initial foreclosure complaint was filed. As the publicly available foreclosure pleadings confirm, the initial complaint named the wrong borrowers and loan trust and purported to accelerate the wrong mortgage (not the Del Rios' mortgage). And, though BoNYM attempted to correct the issues through a supplemental complaint, any attempted acceleration through the supplemental complaint was ineffective because the amended complaint was a nullity. (*See* Smith Decl., Ex. G.)

BoNYM is entitled pursue a foreclosure and have any perceived statute of limitations defense determined by a court without being subject to FDCPA (or GBL) liability in the event it does not ultimately prevail.

**b.** ***The Del Rios Are Barred From Defending the Foreclosure.***

Not only does BoNYM have a good faith argument the 2019 foreclosure is not time barred, but, by stating their intention to surrender the property to the creditor in their bankruptcy, the Del Rios expressly agreed BoNYM may foreclose the lien and take possession of the property.

The Del Rios are judicially estopped from attempting to avoid the foreclosure of BoNYM's lien. When a person files a chapter 7 bankruptcy petition, they are required to (among other things) file a statement of intention. *See* 11 U.S.C. § 521(a)(2)(A). For debts secured by estate property, the debtor must file "a statement of his intention with respect to the retention or surrender of such

14

property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property." *Id.* The debtor must then perform the stated intention. *Id.* § 521(a)(2)(B).

The Del Rios filed a chapter 7 bankruptcy petition on March 7, 2011. (*See* Smith Decl., Ex. D.) On Schedule D of their petition, the Del Rios recognized there was a valid lien on their property by listing the subject mortgage lien on the subject property. (*Id.*) And, in their "statement of intention," the Del Rios confirmed their intent to surrender the subject property to the creditor. (*Id.*) Three months later, relying on the representations the Del Rios made in their petition, the court entered a discharge order. (*Id.*, Ex. E.) The order recognized a creditor may enforce its valid lien following the discharge "if that lien was not avoided or eliminated in the bankruptcy." (*Id.*)

"Surrender requires [the] debtor to return the collateral to the creditor." *In re Boodrow*, 126 F.3d 43, 48 (2d Cir. 1997). Stated differently, surrender "requires that debtors relinquish their right to possess the property." *In re Failla*, 838 F.3d 1170, 1177 (11th Cir. 2016); *In re Pratt*, 462 F.3d 14, 18-19 (1st Cir. 2006) ("The most sensible connotation of 'surrender' in the Chapter 7 context is that the debtor agreed to make the collateral available to the secured creditor").

"'The doctrine of judicial estoppel or estoppel against inconsistent positions precludes a party from taking a position in one legal proceeding which is contrary to that which he or she took in a prior proceeding, simply because he or her interests have changed.'" *Bank of N.Y. Mellon v. Kantrow*, 57 Misc. 3d 1204(A), 66 N.Y.S.3d 652 (N.Y. Sup. Ct. 2017) (quoting *Davis v. Citibank, N.A.*, 116 A.D.3d 819, 820-21 (2d Dep't 2014)). "[J]udicial estoppel will apply if: **(1)** a party's later position is 'clearly inconsistent' with its earlier position; **(2)** the party's former position has been adopted in some way by the court in the earlier proceeding; and **(3)** the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *In re Adephia*

*Recovery Trust*, 634 F. 3d 678, 695-96 (2d Cir. 2011) (internal quotations omitted). The doctrine in part serves to "protect judicial integrity of the judicial process." *Davis*, 116 A.D.3d at 821.

The judicial estoppel elements are met here: **(1)** despite recognizing a valid lien on their property and intent to surrender the property to the creditor, the Del Rios now take an inconsistent position by attempting to bar the creditor from foreclosing; **(2)** the bankruptcy court adopted the surrender position when it entered the discharge order; and **(3)** BoNYM is unfairly disadvantaged because the Del Rios' change in positions now potentially means it cannot foreclose. Numerous courts hold that, when a debtor elects to surrender property in their bankruptcy, *i.e.*, to make the property available to the creditor, and receives a discharge in return, judicial estoppel bars the debtor from taking an inconsistent position by contesting the *in rem* foreclosure of the property. *See Kantrow*, 57 Misc. 3d 1204(A), 66 N.Y.S.3d 652 ("Because defendants secured the bankruptcy Plan by adopting one position [(surrendering the property)] and now take a contrary position by contesting the action . . ., the doctrine of estoppel against inconsistent positions bars defendants from raising any issue with regards to the secured lien and from contesting the foreclosure action."); *Failla*, 838 F.3d at 1177-78 ("Because the [debtors] filed a statement of intention to surrender their house, they cannot contest the foreclosure action."); *Souza v. Bank of America, N.A.*, No. 1:13-cv-10181, 2013 WL 3457185, at *3 (D.Mass. July 8, 2013) ("Because [debtor] surrendered her home in bankruptcy, the doctrine of judicial estoppel bars her claims challenging the foreclosure process."). Because the Del Rios represented they were surrendering the property to the creditor and received a bankruptcy discharge based on that representation, the Del Rios' are estopped from defending BoNYM's *in rem* foreclosure.

Because the Del Rios cannot establish as a matter of law that the 2019 foreclosure is barred by the statute of limitations, there can be no FDCPA claim. *See Simmons*, 970 F. Supp. at 664;

*Uche*, 2011 WL 978240, at *2; *Almand*, 485 F. Supp. 2d at 1364.  Instead, the Del Rios should —

as they already have—raise this defense within the foreclosure for the state court judge to decide.

*See Garrison*, 233 F. Supp. 3d at 1294 (a potential statute of limitations affirmative defense was

not a "plausible basis" for FDCPA claims).

> **4.      The Del Rios Failed to Comply with Conditions Precedent.**

Mortgage paragraph 20 provides the borrower may not commence an action "that arises

from the other party's actions pursuant to this Security Instrument" without first notifying the

lender and providing a "reasonable time period to take corrective action."  (Smith Decl., Ex. F

(Mortgage ¶ 20).)  This provision has been extended to FDCPA claims where the claims arise from

a lender's or servicer's actions performed pursuant to the mortgage.  *See Wortman v. Rushmore

Loan Mgmt. Servs. LLC*, No. 19-cv-2860, 2019 WL 5208893, at *3 (N.D. Ill. Oct. 16, 2019);

*Charles v. Deutsche Bank Nat'l Trust Co.*, No. 15-cv-21826, 2016 WL 950968, at *3 (S.D. Fla.

Mar. 14, 2016) (dismissing statutory claims, including FDCPA, for lack of pre-suit notice); *see

also Kurzban v. Specialized Loan Servicing, LLC*, No. 17-cv-20713, 2018 WL 1570370 (S.D.Fla.

Mar. 30, 2018) (dismissing RESPA and FDCPA claims for failing to give pre-suit notice).  To the

extent the § 1692e claims are premised on the breach letter and/or foreclosure action—both of

which arise out of actions taken pursuant to the mortgage—the claims should be dismissed for

failure to provide notice under mortgage paragraph 20.

## B.      Section 1692g Claim Fails as a Matter of Law

The Del Rios complain Shellpoint failed to include certain § 1692g disclosures within its

"notices, statements, and letters."  (Am. Compl. ¶ 68.)  But § 1692g disclosures are only required

within 5 days of "<u>the</u> initial communication" unless the required disclosures were already included

in "<u>the</u> initial communication."  15 U.S.C. § 1692g(a) (emphasis added).

17

The Del Rios fail to allege when the initial communication was received or whether that initial communication contained the § 1692g disclosures. They have not stated a claim. *See, e.g, Taylor v. Ocwen Loan Servicing, LLC*, No. H-12-2929, 2013 WL 33539455, at*4 (S.D. Tex. July 3, 2013) (dismissing claim where plaintiff failed to plausibly allege the initial communication).

The Del Rios oddly claim the mortgage statements and breach letters are "classified as <u>an</u> 'initial communication." (Am. Compl. ¶¶ 31, 34 (emphasis added).) But, "there can be only <u>one</u> 'initial communication' between a debt collector and a consumer, and any communication that follows the 'initial communication' is necessarily *not* an 'initial' communication." *Peterson v. Portfolio Recovery Assocs., LLC*, 430 F. App'x 112, 114 (3d Cir. 2011). "Section 1692g(a) merely requires [certain disclosures] to be sent to a consumer on or before five days after an initial communication is sent by the debt collector. There is nothing in the statute which requires follow-up letters to contain [those disclosures.]" *Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150, 158 (E.D.N.Y. 2005). Because the Del Rios have not identified the initial communication, they have not stated a § 1692g(a) claim. *See Ehrich v. RJM Acquisitions LLC*, No. 09-cv-2696, 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009) ("Any letters after [five days following the initial communication] are irrelevant for purposes of . . . § 1692g(a)."); *Taylor*, 2013 WL 33539455, at*4.

The Del Rios also oddly claim the March 29 letter fails to identify the "creditor." (Am. Compl. ¶¶ 69-71.) But earlier in the complaint, they concede the letter said Shellpoint was servicing for BoNYM. (*Id.* ¶¶ 35, 40.) This claim should be prejudicially dismissed.

## C. <u>GBL § 349 Claim Fails as a Matter of Law</u>

The Del Rios claim defendants' threats to foreclose and foreclosure filing were deceptive because the foreclosure was barred by the statute of limitations. (Am. Compl. ¶¶ 77-79.)

18

To state a GBL claim, a plaintiff must show: **(1)** the challenged act or practice was consumer-oriented; **(2)** the act was misleading in a material way; and **(3)** plaintiff suffered an injury as a result of the deceptive act. *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014). In reviewing whether the act was deceptive or misleading, § 349 requires a finding "that a reasonable consumer in like circumstances would consider the misrepresentation <u>material</u>." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 189-90 (E.D.N.Y. 2018).

For the reasons explained in Part A.3., *supra*, the "challenged acts," *i.e.*, the breach notice, New York 90-day notice, and foreclosure filing, were not misleading or deceptive because movants have a good faith basis to argue the statute of limitations did not run and that the Del Rios are estopped from contesting foreclosure due to their bankruptcy surrender.

The GBL claim is also barred by the *Noerr-Pennington* doctrine, which "generally immunizes from liability a party's commencement of a prior court proceeding." *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002). While traditionally arising in the antitrust context, the doctrine has been applied to bar GBL claims based on a defendant's demand and default letter arising from a good faith foreclosure suit. *Singh v. NYCTL 2009-A Trust*, 683 F. App'x 76, 77-78 (2d Cir. 2017) (summary order). It should be similarly applied here.

While there is an exception for "sham" activities, *i.e.*, where the litigation is "objectively baseless," *Singh*, 683 F. App'x at 78, that exception is not applicable here because there is a good faith basis to seek to foreclose. *See* Part A.3., *supra*.

In addition to the *Noerr-Pennington* doctrine, the alleged improper acts also enjoy absolute litigation privilege. "In the context of a legal proceeding, statements made by parties and their attorneys in the context of litigation are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation." *Grasso v. Mathew*, 164 A.D.2d 476, 479, 564

N.Y.S.2d 576, 578 (N.Y.A.D. 3d Dep't 1991); *see also Frechtman v. Gutterman*, 115 A.D.3d 102, 106, 979 N.Y.S.2d 58, 63 (N.Y.A.D. 1st Dep't 2014). The privilege applies to statements made in "pending or contemplated litigation," *Caplan v. Winslett*, 218 A.D.2d 148, 153 (N.Y.A.D. 1st Dep't 1996), and "extend[s] to all pertinent communications among the parties, counsel, witnesses, and the court." *Frechtman*, 115 A.D.3d at 107.

New York courts prescribe a "fairly broad and encompassing standard for determining whether absolute privilege exists." *Int'l Publ'g Concepts, LLC v. Locatelli*, 9 N.Y.S.3d 593 (Sup. Ct. 2015). It applies equally "[w]hether a statement was made in or out of court, was on or off the record, or was made orally or in writing." *Id.* at 107. "As long as the subject of an out-of-court communication relates to pending or contemplated litigation, and is made in connection with a judicial proceeding . . . it furthers an interest of social importance and should be protected." *Caplan*, 218 A.D.2d at 153 (internal citations omitted).

The policy behind the litigation privilege—allowing attorneys to vigorously represent their clients without the threat of civil liability for statements in a judicial proceeding—is not unique to defamation or tort claims. Other courts agree and apply the privilege to bar statutory claims, including claims under state consumer protection statutes. *See e.g.*, *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 524 (D.N.J. 2012) (applying litigation privilege to bar plaintiff's claims for violation of New Jersey Consumer Fraud Act); *Beaulieu v. Bank of Am., N.A.*, No. 1:14-cv-00023, 2014 WL 4843809, at *9 (D. Me. Sept. 29, 2014) ("Maine recognizes an absolute common law privilege to attorneys and witnesses for relevant communications and testimony made preliminary to and during the course of litigation."); *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) ("We hold that the litigation privilege applies in all causes of action, whether for common-law torts or statutory violations.").

The litigation privilege precludes the Del Rios from basing their § 349 claims on any allegations made in the prior foreclosure complaint, which plainly is made in a court pleading and relevant to the lawsuit. The privilege extends to the breach letter and the 90 day pre-foreclosure notice too because those letters were required pre-foreclosure steps and pertinent to the foreclosure. *See Caplan v*, 218 A.D.2d at 153; *Frechtman*, 115 A.D.3d at 107.

## IV. ARGUMENT SUPPORTING STRIKING CLASS ALLEGATIONS

The Del Rios' class certification allegations should be stricken pursuant to rule 12(f). Striking class allegations is appropriate where a defendant "demonstrate[s] from the face of the [c]omplaint that it would be impossible to certify the alleged class regardless of the facts the [p]laintiffs may be able to obtain during discovery." *Mayfield v. Asta Funding*, 95 F.Supp. 3d 685, 696 (S.D.N.Y. 2015). While sometimes denied as premature, "[c]ourts in this district have held that a motion to strike class allegations . . . may be addressed prior to the certification of the class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear." *Jaffe v. Capital One Bank*, No. 09 CIV. 4106 (PGG), 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010) (internal quotations omitted); *see also Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 Civ. 6198(LAK)(JCF), 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008). As shown below, striking the allegations now rather than wasting this court's and the parties' time and resources is appropriate. *See Jaffe*, 2010 WL 691639, at *10.

Alternatively, pursuant to rule 23(d)(1)D), this Court should require the Del Rios to amend their pleading to eliminate class allegations.

## A. Pled Class Lacks Standing

Putative class members are subject to the same Article III standing requirements as the named plaintiff. They must have suffered an "'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable

by a favorable decision." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). "[N]o class may be certified that contains members lacking Article III standing." *Id.* at 264; *Calvo v. City of N.Y.*, No. 14-CV-7246, 2017 WL 4231431, at *3 (S.D.N.Y. Sept. 21, 2017) (same).

The Del Rios define a putative class of "all persons who were <u>potentially</u> subjected to letters from Shellpoint and time-barred foreclosure actions from [BoNYM] and McCabe . . . ." (Am. Compl. ¶ 44 (emphasis added).) By including as class members those "potentially subjected to" the alleged improper acts, the Del Rios have necessarily included class members who may not have received or been parties to the threatened litigation. Such people clearly have suffered no "injury in fact" traceable to the challenged actions in this case. The class action allegations should be stricken. *See Denney*, 443 F.3d 253; *see also Flecha v. Medicredit, Inc.*, 946 F.3d 762, 762 (5th Cir. 2020) (even putative class members that received the letter at issue may not have standing if they did not read it); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (striking the class in part because the definition necessarily included individuals without standing).

## B.    Class Not Ascertainable on its Face

To certify a class in this Circuit, it must be ascertainable, which means it must be "defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Brecher v. Republic of Argentina*, 806 F.3d 22, 25 (2d Cir. 2015). "Where it is facially apparent from the leadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F. 3d 443, 445 (5th Cir. 2007).

### 1.    Vague Class Not Certifiable.

Not only does the "potentially subjected to" qualification create a standing issue, it means the class is not ascertainable as a matter of law. Tor the Court to determine class membership, it

must look into Shellpoint's, BoNYM's, and McCabe's "minds" to determine whether they were "potentially" going to threaten to foreclose or to actually foreclose despite knowing the debt is time barred. Such subjective criteria will make it administratively impossible for the Court to identify class members using objective criteria. *See, e.g., In re Initial Public Offerings Securities Litig.*, 471 F.3d 24, 44-45 (2d Cir. 2006) (recognizing that the number of individualized determinations, including a subjective determination as to state of mind, creates an ascertainability issue); *Weiner v. Snapple Bev. Corp.*, No. 07-cv-8742, 2010 WL 3119452, at *13 (S.D.N.Y. Aug. 5, 2010) (denying certification; plaintiffs "failed to prove that it would be administratively feasible to ascertain the members of the putative class using objective criteria"); *Schilling v. Kenton County, KY*, No. 10-cv-143, 2011 WL 293759, at *6 (E.D. Ky. Jan. 27, 2011) (dismissing class claims, in part, because the class definition was insufficiently definite to ascertain class membership); *see also Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 618-19 (S.D. Fla. 2009) (declining to certify a class requiring individual knowledge determinations).

Even if the class were limited to the breach letter and the filing of an alleged time-barred foreclosure, individualized issues plainly predominate. The Del Rios' own claims prove it. Without limiting all individual inquiries, their own case confirms issues as to acceleration, deceleration, tolling, and bankruptcy surrender will require mini-trials to determine whether the statute of limitations has run, regardless of whether defendants "knew" it ran. *See, e.g., Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677, 684 (M.D. Fla. Nov. 2, 2015) ("[E]ven if Plaintiff were able to establish, on a class-wide basis, that Defendants had a routine practice of sending consumers letters in the form of Exhibit A in an attempt to collect on time-barred debts, significant issues of liability would still remain because the Court would still be required to conduct individualized inquiries as to whether each class member's debt was actually time-barred.").

23

## 2. Shellpoint "Letter" Class Overbroad.

As to Shellpoint, the Del Rios seek a proposed class of "all persons who were potentially subjected to letters from Shellpoint . . . in the state of New York." (Am. Compl. ¶ 44.) It is clear from the face of the complaint that this class—of every person who "potentially" received <u>any</u> "letter" from Shellpoint in New York—is essentially boundless and does not fit the Del Rios' case theory. Shellpoint services thousands of loans in New York, the vast majority of which are current and have no statute of limitations concerns, which means there will be thousands of mini-trials to determine whether those people that "potentially" received any "letter" from Shellpoint have a claim. Such a vague and boundless class subjects to Shellpoint to potential unlimited discovery and should be stricken. *See Sandoval v. Ali*, 34 F.Supp.3d 1031, 1044 (N.D. Cal. 2014) (striking overbroad class that failed to relate to plaintiff's case theory).

Such a vague, overbroad class is not ascertainable as a matter of law. *See Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 91 n.2 (2d Cir. 2018) ("[C]lass was 'identified by subject matter, timing, and location,' which made it 'objectively possible' to ascertain members.") (quoting *In re Petrobras Sec.*, 862 F.3d 250, 267–70 (2d Cir. 2017)); *In re MERS Litigation*, MDL 09-2119, 2015 WL 9268189, at *3 (D. Ariz. Dec. 21, 2015) ("The class cannot be overbroad, amorphous, or vague, but must be susceptible to a precise definition.").

## C. Rule 23(b)(2) Class Necessarily Fails

"A class is typically certified under Rule 23(b)(2) when 'class-wide injunctive or declaratory relief is necessary to redress group injuries, such as infringements on civil rights, and is commonly relied on by litigants seeking institutional reform through injunctive relief.'" *Larsen v. JBC Legal Grp., P.C.*, 235 F.R.D. 191, 197 (E.D.N.Y. 2006) (quoting Manual for Complex Lit. § 21.142 (4th ed. 2004)). "[T]o certify a class pursuant to 23(b)(2) (rather than 23(b)(3)), the plaintiff must primarily be seeking either injunctive or declaratory relief." *Id.* Where both

declaratory and monetary relief are requested, "the declaratory relief must predominate." *Id.*

Because injunctive relief is not available to private litigants under FDCPA, rule 23(b)(2) class certification is inappropriate in FDCPA cases. *Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp. 2d 293, 298 n. 2 (E.D.N.Y. 2005); *Vega v. Credit Bureau Enters.*, 02-cv-1550, 2005 WL 711657, at *5 (E.D.N.Y. Mar. 29, 2005) (23(b)(2) is inappropriate in a FDCPA case); *Goldberg v. Winston & Morrone, P.C.*, No. 95-cv-9282, 1997 WL 139526, at *4 (S.D.N.Y. Mar. 26, 1997).

The Second Circuit has never granted rule 23(b)(2) class certification in an FDCPA case. *Larsen*, 235 F.R.D. at 197. Because the Del Rios may not certify FDCPA claims under rule 23(b)(2), the request for class certification under rule 23(b)(2) must be stricken.

## V. <u>CONCLUSION</u>

This complaint fails to state a claim because the subject mortgage foreclosure is not inescapably barred by time. It is an open question, and no FDCPA or GBL claim can proceed based on a party's good faith litigation position. Holding otherwise will lead to an avalanche of litigation following any debt collector suit with a potentially viable defense—even when currently pending as is the case here—regardless of the underlying case merits.

And, the fact there is a disagreement on the applicability of the statute of limitations as to the Del Rios' claims confirms as matter of law that class certification would be improper. The class allegations should be stricken.

/s/ Jordan M. Smith, Esq.
Jordan M. Smith
**AKERMAN LLP**
666 Fifth Avenue, 20th Floor
New York, NY 10103
Phone: (212)880-3800; Fax: (212)905-6447
Email: Jordan.smith@akerman.com

*Counsel for Defendants Shellpoint and BoNYM*

51805319;1

## CERTIFICATE OF SERVICE

I, Jordan Smith, an attorney, hereby certify that on this 18th day of February, 2020, a true and correct copy of this document was served via ECF upon all parties registered to receive service via ECF in this case.

/s/ Jordan M. Smith, Esq.