UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                             :

ALFRED DEL RIO A/K/A ALFREDO DEL   :
RIO and OLIVIA DEL RIO,                :
                             :

                    Plaintiffs,   :           19-CV-10312 (VSB)
                             :

          - against -         :           **OPINION & ORDER**
                             :

                             :

McCABE, WEISBERG & CONWAY, LLC,  :
et al.,                          :
                             :

                    Defendants.  :
                             :
-------------------------------------------------------X

<u>Appearances</u>:

Alexander Kadochnikov
Shiryak, Bowman, Anderson Gill & Kadochnikov, LLP
Kew Gardens, NY
*Counsel for Plaintiffs*

Jordan M. Smith
Akerman LLP
New York, NY
*Counsel for Defendants Newrez LLC d/b/a Shellpoint Mortgage Servicing
and the Bank of New York Mellon*

Candidus K. Dougherty
Swartz Campbell LLC
Philadelphia, PA
*Counsel for Defendant McCabe, Weisberg & Conway, LLC*

<u>VERNON S. BRODERICK</u>, United States District Judge:

       Before me are the motions to dismiss the Amended Complaint and to strike class claims

filed by the Bank of New York Mellon ("BoNYM"), Newrez LLC d/b/a Shellpoint Mortgage

Servicing ("Shellpoint"), and McCabe, Weisberg & Conway, LLC ("McCabe") (collectively,

"Defendants"). Because I find that Plaintiffs fail to plead allegations sufficient to demonstrate

(1) that Defendants' foreclosure action was "false, deceptive, or misleading" and (2) that Defendant Shellpoint failed to comply with § 1692g of the Fair Debt Collection Practices Act ("FDCPA"), Plaintiffs' claims under the FDCPA against all Defendants are hereby dismissed. Because I further decline to exercise supplemental jurisdiction over Plaintiffs' state law claim, Defendants' motions to dismiss are hereby GRANTED.

## I.    **Factual Background**[1]

On or about February 13, 2007, Plaintiffs Alfred Del Rio and Olivia Del Rio (the "Plaintiffs") entered into a mortgage agreement in the principal amount of $536,000 to purchase or improve the subject premises known as 5910 Tyndall Avenue, Bronx, New York 10471. (Am. Compl.[2] ¶ 17.)  The mortgage agreement consolidated two previous mortgages.  (*Id.*) Subsequently, BoNYM obtained the note of the mortgage, at which time Plaintiffs had already defaulted on the loan.  (*Id.* ¶ 18.)  On August 24, 2009, BoNYM or its predecessor-in-interest commenced a foreclosure action against the Plaintiffs (the "2009 Action"); the mortgage was declared in default and accelerated so that all amounts were due.  (*Id.*)  On September 14, 2015, the 2009 Action was terminated with a voluntarily discontinuance.  (*Id.* ¶¶ 19, 61–62.)

From November 2018 to October 2019, Shellpoint sent monthly statements to Plaintiffs, indicating the payments due on this mortgage.  (*Id.* ¶ 30.)  On March 29, 2019, Shellpoint sent two letters to Plaintiffs, including a notice of default which stated that Plaintiffs "must pay all amounts due" in order to "cure this default."  (*Id.* ¶¶ 33–37.)  Both letters stated that Shellpoint was "acting as servicer on behalf of" BoNYM.  (*Id.* ¶¶ 35, 40.)  On August 29, 2019, McCabe

---

[1] The facts contained in this section are based upon the factual allegations set forth in Plaintiffs' First Amended Class Complaint ("Amended Complaint") filed on January 29, 2020.  (Doc. 34.)  I assume the allegations therein to be true in considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiffs' Amended Complaint.

filed a foreclosure action (the "2019 Action") on behalf of its client BoNYM against Plaintiffs. (*Id.* ¶ 41.)  McCabe initiated this action under the direction of BoNYM and/or Shellpoint.  (*Id.* ¶ 22.)  Defendants did not notify Plaintiffs whether the 2019 Action was time-barred.  (*Id.* ¶ 27.)

Plaintiffs subsequently filed the instant action against BoNYM, McCabe, and Shellpoint, alleging violations of FDCPA, 15 U.S.C. § 1692, and New York State General Business Law ("NYGBL") § 349.  Specifically, Plaintiffs allege that Defendants tried to collect on the debt through "false, deceptive or misleading" means, because they failed to notify Plaintiffs that the 2019 Action was barred by the statute of limitations.  (*Id.* ¶¶ 56–59.)  Such illegal conduct caused Plaintiffs severe emotional distress and anxiety.  (*Id.*)  Plaintiffs also assert class claims under Fed. R. Civ. Pro. 23(b)(2) and (3) on behalf of all persons who received similar letters from Defendants and were subject to similar time-barred foreclosure actions.  (*Id.* ¶¶ 44–53.)

## II.   <u>Procedural History</u>

Plaintiffs filed the complaint on November 6, 2019.  (Doc. 1.)  BoNYM and Shellpoint were served on November 12, 2019, (Docs. 13, 14); McCabe was served on November 18, 2019, (Doc. 12).  Shellpoint and BoNYM filed a joint motion to dismiss the complaint and to strike class claims on January 8, 2020, (Doc. 26); McCabe filed its motion to dismiss the complaint and to strike class claims on the same day, (Doc. 30).  On January 29, 2020, Plaintiffs filed the Amended Complaint.  (Doc. 34.)  On February 18, 2020, Defendant BoNYM and Shellpoint jointly filed their motion to dismiss the Amended Complaint and to strike class claims, (Doc. 41); and McCabe filed its motion to dismiss the Amended Complaint and to strike class claims on the same day, (Doc. 44).  On March 20, 2020, Plaintiffs filed their opposition to the motions to dismiss.  (Doc. 55.)  Defendants BoNYM and Shellpoint filed their reply on April 17, 2020, (Doc. 59); McCabe filed its reply on the same day, (Doc. 61).

### III.   Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *Kassner*, 496 F.3d at 237.  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*  A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

### IV.   Discussion

#### A.   *The FDCPA Claim*

##### 1.  15 U.S.C. § 1692e Claims

Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Plaintiffs claim that Defendants violated this section when they failed to notify Plaintiffs that the 2019 Action was barred by the statute of limitations.  (Am. Compl. ¶¶ 56–59.)  In response, Defendants have raised several arguments why FDCPA does not apply to them, including that BoNYM is not a "debt collector," that the 2019 Action was a security enforcement out of the statute's reach, (*see* Doc. 43 at 5–9), and that Plaintiffs are not "consumers" under the statute, (*see* Doc. 46 at 9–11).

I need not address these arguments, however, because even assuming that FDCPA applies to Defendants' 2019 Action, a recent opinion issued by the New York Court of Appeals, *Freedom Mortgage Corp. v. Engel*, 37 N.Y.3d 1 (2021), squarely demonstrates that the 2019 Action was not time barred.[3]

"Under New York law, the statute of limitations for a mortgage foreclosure action is six years from the due date for each unpaid installment or from the time the mortgagee is entitled to demand full payment, or from the date the mortgage debt has been accelerated." *CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 201 (S.D.N.Y. 2018) (internal quotation marks and citations omitted); *see also* N.Y. C.P.L.R. § 213(4). "[O]nce a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt." *Id.* (quoting *Wells Fargo Bank, N.A. v. Burke*, 943 N.Y.S.2d 540, 542 (2nd Dep't 2012)). Accordingly, "a cause of action to recover the entire balance of the debt accrues at the time the loan is accelerated, triggering the six-year statute of limitations to commence a foreclosure action." *Engel*, 37 N.Y.3d at 21. A valid acceleration of the debt must be made by an "'unequivocal overt act' that discloses the noteholder's choice, such as the filing of a verified complaint seeking foreclosure and containing a sworn statement that the noteholder is demanding repayment of the entire outstanding debt." *Id.* at 22 (citing *Albertina Realty Co. v. Rosbro Realty Corp.*, 258 N.Y. 472, 476 (1932)).

---

[3] Defendants Shellpoint and BoNYM point to caselaw suggesting that an FDCPA claim arising out of the debt collector's filling a lawsuit cannot succeed unless it can be shown that the debt collector lacks a "good faith basis" in filing the lawsuit against the debtor. This argument relates to scienter. "It is well established that the FDCPA imposes strict liability on debt collectors," *Lee v. Kucker & Bruh, LLP*, 958 F. Supp. 2d 524, 528 (S.D.N.Y. 2013), and it "does not require a consumer to plead *mens rea* to state a claim," *Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 441 (2d Cir. 2018). Although a debt collector can "avoid liability upon its proof that the violation was not intentional or that its actions were taken in good faith," *id.*, at this stage, I do not evaluate the sufficiency of any evidence, but only look at Plaintiffs' pleadings. *Kassner*, 496 F.3d at 237. Therefore, I do not address here whether Defendants had a good faith basis when they filed the 2019 Action; I simply find—as discussed below—that the 2019 Action was not "false, deceptive, or misleading" under FDCPA.

After the debt is accelerated, the creditor can revoke the acceleration (or "de-accelerate"
the loan).  A revocation (or "de-acceleration") "returns the parties to their pre-acceleration rights
and obligations," which means it "reinstat[es] the borrowers' right to repay any arrears and
resume satisfaction of the loan over time via installments."  *Id*. at 28.  Following the de-
acceleration, a payment default again entitles the creditor "to accelerate the maturity of the then-
outstanding debt, at which point a new foreclosure claim on that outstanding debt would accrue
with a six-year limitations period."  *Id*.  However, if a creditor wants to revoke its acceleration of
the debt, it must do so by "an affirmative act" of revocation.  *Id*. at 28–29; *see also NMNT Realty
Corp. v Knoxville 2012 Trust*, 58 N.Y.S.3d 118, 120 (2nd Dep't 2017); *Federal Natl. Mtge. Assn.
v Rosenberg*, 119 N.Y.S.3d 441, 443 (1st Dep't 2020).

Before *Engel*, the New York Court of Appeals never addressed whether the voluntary
discontinuance of a foreclosure action constitutes an "affirmative act" that revokes a prior
acceleration.  *See U.S. Bank Tr., N.A., as Tr. for LSF9 Master Participation Tr. v. Adhami*, No.
18-CV-530(PKC)(AKT), 2019 WL 486086, at *5 (E.D.N.Y. Feb. 6, 2019).  The guidance from
New York state's intermediate appellate courts on this issue had been "limited."  *Id*.  While some
courts found that such discontinuance "raise[s] a triable issue of fact" as to whether the
acceleration is revoked, *NMNT Realty*, 58 N.Y.S.3d at 120, others found it "insufficient, in itself,
to evidence an affirmative act to revoke the election to accelerate the mortgage debt," *U.S. Bank
Trust, N.A. v. Aorta*, 89 N.Y.S.3d 717, 719 (2nd Dep't. 2016).  The majority of the courts,
however, found that such discontinuance does constitute an affirmative act of revocation.  *See
Adhami*, 2019 WL 486086, at *10 ("[T]en of the thirteen New York trial courts that have
considered this issue have found that withdrawing the prior foreclosure action is an affirmative
act of revocation that tolls the statute of limitations.") (collecting cases) (internal quotation marks

omitted).  In *Engel*, the Court of Appeals definitively settled the issue, and ruled that "where the maturity of the debt has been validly accelerated by commencement of a foreclosure action, the noteholder's voluntary withdrawal of that action revokes the election to accelerate, absent the noteholder's contemporaneous statement to the contrary."  37 N.Y.3d at 20.

In this case, the 2009 Action was an "unequivocal overt act" that accelerated the mortgage.  *See Albertina Realty Co.*, 258 N.Y. at 476.  However, the 2009 Action was discontinued on September 14, 2015 by BoNYM's voluntary discontinuance.  (Am. Compl. ¶ 19.)  Under *Engel*, such "voluntary withdrawal of that action revokes the election to accelerate," since Plaintiffs do not allege any "noteholders' contemporaneous statement to the contrary."  *See Engel*, 37 N.Y.3d at 20.  When Plaintiffs again defaulted in March 2019, BoNYM became entitled "to accelerate the maturity of the then-outstanding debt, at which point a new foreclosure claim on that outstanding debt would accrue with a six-year limitations period."  *Id.*  Defendants initiated the second foreclosure action in August 2019, well within the six-year period.  (Am. Compl. ¶ 41.)  Therefore, the 2019 Action was not time-barred.  *See also Onewest Bank, N.A. v. Simon*, No. 14 CV 6622 (RJD), 2021 WL 2400993, at *2 (E.D.N.Y. June 10, 2021) (finding that the foreclosure action was not time-barred because the voluntary discontinuance had deaccelerated the loan in light of *Engel*).

At the time when Defendants filed the 2019 Action, the Court of Appeals had not issued *Engel*.  However, the majority of the courts that had examined this issue would have found that the 2019 Action was not time-barred and would have ruled in favor of Defendants, see *Adhami*, 2019 WL 486086, at *10; at the very least, the law was not settled.  Therefore, even viewing the pleading in the light most favorable to Plaintiffs, *Kassner*, 496 F.3d at 237, I cannot find that Defendants were being "false, deceptive, or misleading" simply based on the fact that they failed

to remind Plaintiffs that they may have a statute of limitations defense.[4]

## 2. 15 U.S.C. § 1692g Claims

Separately, Plaintiffs allege that Defendant Shellpoint violated 15 U.S.C. § 1692g by failing to include in their "initial communication" certain statutorily required information, including the identity of the creditor and certain rights of the debtor within a thirty-day period under § 1692g(a)(2)–(5).  (Am. Compl. ¶¶ 68–69.)

Plaintiffs claim that each of the monthly statements sent by Shellpoint, as well as its notice of default in March 2019, constitute "initial communication" that triggers § 1692g.  (*Id.* ¶¶ 31, 34.)  While "FDCPA does not offer a definition of 'initial communication,'" *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017), Section 1692g(a) does require the initial communication be "in connection with the collection of any debt."  The Second Circuit has held that the monthly statements that mortgage loan servicers are required to send by law "do not reflect attempts to collect on the debt."  *Hill v. DLJ Mortg. Capital, Inc.*, 689 F. App'x 97, 98 (2d Cir. 2017) (dismissing the FDCPA claim that was premised on monthly statements sent in compliance with the Truth in Lending Act).  Although monthly statements might trigger FDCPA if they contain "debt-demand language," *id.*; *see e.g. Evans et al. v. Select Portfolio Servicing, Inc. et al.*, No. 18-CV-5985 (PKC)(SMG), 2020 WL 5848619, at *9 (E.D.N.Y. Sept. 30, 2020) (monthly statement that stated "[t]his is an attempt to collect a debt" supported FDCPA claim), Plaintiffs do not allege that Shellpoint used such "debt-demand language."  The statements from Shellpoint "indicate[d] . . . that monthly payments were required and that amounts were due on

---

[4] In determining whether a representation is false, deceptive or misleading under FDCPA, courts use the "least sophisticated consumer" standard.  *See Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008). Here, because the 2019 Action was arguably not time-barred, it cannot be argued that even the least sophisticated consumer could have been misled by Defendants' failure to mention the possibility of a statute of limitations defense.

the mortgage," (Am. Compl. ¶30); they did not contain anything beyond what monthly statements normally would contain.  Therefore, Shellpoint's monthly statements do not give rise to FDCPA claims.

As for the March 2019 notice of default, Plaintiffs allege that the notice demanded Plaintiffs to "cure this default" and "pay all amounts due."  (*Id*. ¶ 36.)  I find that such language sufficiently pleads that the notice of default was a communication "in connection with the collection of [the] debt."  § 1692g(a).  However, the requirement under § 1692g(a) is that the debt collector send a written notice with the required information to the debtor "[w]ithin five days after the initial communication . . . unless the [] information is contained in the initial communication."  In other words, if the initial communication does not contain the required information, it can be cured with a written notice that contains such information within five days.  All Plaintiffs have alleged is that the notice of default failed to identify the creditor and remind them of their rights.  Even assuming that the notice constitutes "initial communication," the factual allegations are insufficient to plausibly plead a § 1692g claim because Plaintiffs never mention whether a subsequent written notice was sent and, if so, what information it contained.

Therefore, the § 1692g claim should be dismissed.

### B.    *The NYGBL Claim*

Since Plaintiffs' federal claims are dismissed, the only remaining claim is the state law claim under NYGBL § 349.  (Am. Compl. ¶ 74–84.)  Although federal courts have supplemental jurisdiction over state law claims if they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III,"  28 U.S.C. § 1367(a), a court should nevertheless decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has original jurisdiction."  *Id*.  Where, as

here, all federal law claims are dismissed before trial, the "traditional values of judicial economy, convenience, fairness, and comity" weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 532 (S.D.N.Y. 2008) (declining to exercise supplemental jurisdiction over plaintiffs' NYGBL claims when the FDCPA claims had been dismissed).[5]

### V.    Conclusion

For reasons above, Defendants' motions to dismiss are hereby GRANTED.  Since Plaintiffs' substantive claims upon which the class claims are based have all been dismissed, I need not address Defendants' motions to strike class claims.  The Clerk is respectfully directed to close the case.


SO ORDERED.

Dated: November 16, 2021
        New York, New York

Vernon S. Broderick
United States District Judge

---

[5] I note that Plaintiffs are not without recourse to redress their grievances; they can file the state law claim in a state court.  In fact, it seems that Plaintiffs have already filed the same NYGBL counterclaim against BoNYM in the 2019 Action.  (*See* Doc. 46 at 9 and Doc. 45 Ex. C.)